## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

### Alexandria Division



| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 1:19-CR-59 |
| v. | Count 1: 18 U.S.C. § 793(c)<br>Obtaining National Defense<br>Information |
| DANIEL EVERETTE HALE, | |
| *Defendant.* | Count 2: 18 U.S.C. § 793(e)<br>Retention and Transmission<br>of National Defense Information |
| | Count 3: 18 U.S.C. § 793(e)<br>Causing the Communication of<br>National Defense Information |
| | Count 4: 18 U.S.C. § 798(a)(3)<br>Disclosure of Classified<br>Communications Intelligence<br>Information |
| | Count 5: 18 U.S.C. § 641<br>Theft of Government Property |

### SUPERSEDING INDICTMENT

### May 2019 Term – At Alexandria

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

**A.    The Defendant and His Access to Classified National Defense Information**

1.      Defendant DANIEL EVERETTE HALE, age 31, is a resident of Nashville,

Tennessee.

2.      From July 2009 through in or about July 2013, HALE was enlisted in the United

States Air Force, where after receiving language and intelligence training, he became a Language

Analyst. While serving on active duty, HALE was assigned to work at the National Security Agency (NSA) from December 2011 to May 2013. HALE deployed in support of a Department of Defense Joint Special Operations Task Force from March 2012 to August 2012, at Bagram Airfield, Afghanistan, working for most of that time as an Intelligence Analyst responsible for identifying, tracking, and targeting threat networks and targets. In connection with his active duty service and work for NSA, HALE held a TOP SECRET//SENSITIVE COMPARTMENTED INFORMATION (TS//SCI) security clearance, and had access to classified national defense information.

3.      From December 2013 until August 2014, HALE was employed by a defense contractor known as Leidos. While working for Leidos, HALE was assigned to the National Geospatial-Intelligence Agency (NGA), in Springfield, Virginia, where he worked as a Political Geography Analyst. HALE was required to receive and maintain a TOP SECRET//SCI security clearance in order to work at NGA.

4.      Over his many years holding a security clearance, HALE received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials. HALE received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. HALE knew that unauthorized removal and retention of classified materials and transportation and storage of those materials in unauthorized locations risked disclosure and transmission of those materials, and therefore could cause injury to the United States or be used to the advantage of a foreign nation. In particular, HALE had been advised that the unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally

2

grave damage to the national security of the United States, and unauthorized disclosure of

SECRET information reasonably could be expected to cause serious damage to the national

security of the United States, and that violation of the rules governing the handling of classified

information could result in criminal prosecution.

5.     HALE's work at NGA required the use of classified government computer

systems and networks that provided access to classified national defense information. HALE

was notified that these computers were monitored for "personnel misconduct (PM), law

enforcement (LE), and counterintelligence (CI) investigations" by a banner that HALE had to

acknowledge by clicking on the "OK" button every time he logged on to his computer.

6.     Because HALE held a security clearance and was assigned to NGA as a cleared

defense contractor, the United States government entrusted HALE with access to closely held

classified national defense information.

**B.     Background on Classified Information**

7.     Classified information is defined by Executive Order 13526, 75 Fed. Reg. 707

(Jan. 5, 2010) as information in any form that (1) is owned by, produced by or for, or under the

control of the United States government; (2) falls within one of more of the categories of

information set forth in the order; and (3) is classified by an original classification authority who

determines that its unauthorized disclosure reasonably could be expected to result in damage to

the national security that the original classification authority can identify and describe.

8.     Under Executive Order 13526, the designation SECRET (S) shall be applied to

information, the unauthorized disclosure of which could reasonably be expected to cause serious

damage to the national security. The designation TOP SECRET (TS) shall be applied to

information, the unauthorized disclosure of which could reasonably be expected to cause

3

exceptionally grave damage to national security. NOFORN stands for "No Foreign Dissemination" and denotes that dissemination of that information is limited to United States persons. ORCON stands for "Originator Controlled," which denotes that the information should not be further disseminated to any third party without the concurrence of the original classification authority.

9.     Executive Order No. 13526 also provides that specified officials may create special access programs upon a finding that the vulnerability of, or threat to, specific information is exceptional, and the normal criteria for determining eligibility for access applicable to information classified at the same level are not sufficient to protect the information from unauthorized disclosure. Special access programs pertaining to intelligence sources, methods, or analytical processes are called SCI programs. One such SCI control system is SI information, which refers to "Special Intelligence." SI protects information relating to technical and intelligence information derived from the monitoring of foreign communication signals by someone other than the intended recipients. The term COMINT describes communications intelligence.

10.     Pursuant to Executive Order No. 13526, classified information can generally only be disclosed to those persons who have been granted an appropriate level United States government security clearance and who possess a valid need to know to perform a lawful and authorized government function. Additionally, classified information only may be processed and retained in and on facilities approved for processing and storage at the appropriate classification level. Classified information may not be removed from official premises without proper authorization.

4

## C.   HALE's Communications with an Online News Outlet

11.   In April 2013, HALE used his unclassified NSA work computer to search the internet for information on a reporter (the Reporter).  Among the results of his search was information pertaining to a scheduled appearance of the Reporter on or about April 29, 2013 at a Washington, D.C. restaurant/bookstore (Bookstore).

12.   On or about April 29, 2013, HALE attended a book tour event at the Bookstore, where he met with the Reporter.  The next day, on or about April 30, 2013, HALE used his TOP SECRET NSA computer to search for classified information concerning individuals and issues about which the Reporter wrote.

13.   In May 2013, HALE sent a text to a close friend and confidant (Confidant) stating "[the Reporter] wants me to tell my story about working with drones at the opening screening of his documentary about the war and the use of drones."

14.   On or about June 8, 2013, HALE sat next to the Reporter at a public event at the Bookstore to promote the Reporter's book (Book 1).  After the event, HALE texted a friend that he was then with the Reporter and headed to a restaurant.

15.   On or about June 9, 2013, the Reporter sent HALE an email with a link to an article about Edward Snowden in an online publication.  That same day, Hale texted a friend that the previous night he had been hanging out with journalists who were focused on his story.  Hale wrote that the evening's events might provide him with "life long connections with people who publish work like this."

16.   On or about July 14, 2013, HALE called the Reporter.  Three days later, the Reporter sent HALE an email with the subject line, "did you try calling me?"  The body of the email consisted of "I'm around."  A few hours later, HALE called the Reporter again.

17.     On or about July 19, 2013, HALE sent a text message to the Confidant stating that he was going to New York to meet with the Reporter and two other journalists. The next day, the same day HALE separated from the Air Force, HALE sent an email to the Reporter stating he would take a train to New York City the following week. HALE told the Reporter he would text him when he arrived so they could determine where to meet. Later the same day, HALE emailed the Reporter about watching a "plug" about the Reporter's book on television. Attached to the email was a link to a news article entitled, "Court rules journalists can't keep their sources secret," about the Fourth Circuit Court of Appeals ruling that a "New York Times journalist . . . must testify in the trial of a former Central Intelligence Agency officer accused of leaking classified national defense information to the media."

18.     On or about July 23 and 24, 2013, HALE was in New York City.

19.     On or about July 25, 2013, HALE sent the Reporter an email with a copy of his resume attached and subject line, "Hale – unclass resume." The resume stated that HALE was looking for positions "within the Intelligence Community . . . [and was] [e]specially interested in Counter Terrorism, Counter Intelligence, Electronic Warfare, or stand up and maintenance of SIGINT oriented missions." HALE listed his "Active TS/SCI clearance & counter intelligence (CI) polygraph" and "4 years active duty Air Force" where he "[p]rocessed numerous documents critical to National Defense." As part of his duties as an Intelligence Analyst, HALE highlighted his experience operating "payloads on remotely piloted vehicles (RPV) used to support real-time kill/capture operations – over 1540 hours, over 200 specific mission" and his experience as a "[b]ack–up Intelligence De-confliction Officer for Operation Enduring Freedom's (OEF) intelligence, surveillance and reconnaissance (ISR) platforms – 80 hours, monitored 750 on-

going missions." Finally, HALE listed his experience working with original classification authorities to declassify information to be used against detainees in trial.

20.     On or about August 18, 2013, the Reporter called HALE. The call lasted approximately 35 minutes.

21.     On or about September 20, 2013, the Reporter asked HALE to "[j]ust set up a [Jabber] account [so] we can chat on encrypted." Jabber is a free instant messaging program that uses encryption to protect the content of the messages.

22.     In November 2013, HALE texted the Reporter to ask whether he would "be in D.C. this weekend for the anti drone summit."

23.     Between in and about September 20, 2013, and February 27, 2014, HALE and the Reporter had at least three encrypted conversations via Jabber.

**D.     HALE Prints Multiple Classified Documents Unrelated to His Assigned Work at NGA That Are Published by the Reporter's News Outlet**

24.     On or about February 27, 2014, HALE sent a text message to the Reporter asking, "Are you able to get on chat?"

25.     On or about February 28, 2014, HALE used a classified work computer assigned to him by NGA to print five documents marked as SECRET and one document marked as TOP SECRET, which were unrelated to his work at NGA.

26.     Approximately four hours after printing the six documents, HALE and the Reporter had the following conversation via text message:

> HALE:  Can you be here Monday?
>
> The Reporter:  Where?
>
> The Reporter:  I am out in LA for oscars. Back Tuesday.
>
> HALE:  Right, I understand, do you have time to stop by DC?

The Reporter: Let me see if I can change flight.

HALE: Please do and lemme know.

27.    Each of the six classified documents that HALE printed on February 28, 2014, was later published by the Reporter's Online News Outlet.

28.    HALE continued to print documents from his TOP SECRET computer unrelated to his work as an NGA contractor that were later published by the Reporter's Online News Outlet.

29.    While employed as a cleared defense contractor for NGA, HALE printed from his TOP SECRET computer 36 documents, including four duplicates. Nine documents related to HALE's work at NGA, but 23 did not.

30.    Of the 23 documents unrelated to his work that he printed at NGA, HALE provided at least 17 to the Reporter and/or the Reporter's Online News Outlet, which published the documents in whole or in part.

31.    Eleven of the published documents were marked as SECRET or TOP SECRET (the Classified Documents). Relevant original classification authorities have since determined that the documents were correctly marked at the appropriate classification level at the time they were printed, and that they remain classified at the same level today.

32.    The table displayed on the next page lists the 23 printed documents, unrelated to HALE's work at NGA, with the print job numbers assigned by NGA, the dates of printing, initial publication dates, and classifications:

| Document | NGA Print Job# | Date Printed | Date of Initial Publication | Classification |
|----------|----------------|--------------|------------------------------|----------------|
| A | 10&11 | February 28, 2014 | October 2015 | SECRET |
| B | 12 | February 28, 2014 | October 2015 | SECRET |
| C | 13 | February 28, 2014 | October 2015 | SECRET |
| D | 14&15 | February 28, 2014 | October 2015 | SECRET |
| E | 16 | February 28, 2014 | October 2015 | TOP SECRET |
| F | 17 | February 28, 2014 | October 2015 | SECRET |
| G | 18 | April 3, 2014 | April 2015 | TOP SECRET |
| H | 19 | April 19, 2014 | N/A | TOP SECRET |
| I | 20 | April 20, 2014 | August 2014 | SECRET |
| J | 21 | April 20, 2014 | December 2015 | SECRET |
| K | 22 | April 20, 2014 | April 2015 | TOP SECRET |
| L | 23&24 | April 30, 2014 | July 2014 | UNCLASSIFIED |
| M | 25 | May 14, 2014 | August 2014 | SECRET |
| N | 26 | May 14, 2014 | August 2014 | UNCLASSIFIED |
| O | 27 | May 15, 2014 | December 2016 | UNCLASSIFIED |
| P | 28 | May 15, 2014 | December 2016 | UNCLASSIFIED |
| Q | 29 | May 15, 2014 | December 2016 | UNCLASSIFIED |
| R | 30 | May 15, 2014 | December 2016 | UNCLASSIFIED |
| S | 31 | June 20, 2014 | N/A | SECRET |
| T | 32 | June 27, 2014 | N/A | UNCLASSIFIED |
| U | 33 | July 31, 2014 | N/A | SECRET |
| V | 34 | August 5, 2014 | N/A | SECRET |
| W | 35&36 | August 5, 2014 | N/A | UNCLASSIFIED |

33.     The 11 Classified Documents that were published by the Reporter's Online News

Outlet, and later in a book authored by the Reporter, are described in further detail below:

- DOCUMENT A – A PowerPoint presentation on counterterrorism operations classified SECRET//SCI

- DOCUMENT B – A document describing a military campaign targeting Al-Qaeda overseas classified SECRET

- DOCUMENT C - A March 2013 PowerPoint on military operations classified SECRET

- DOCUMENT D – A PowerPoint presentation on counterterrorism operations classified SECRET

- <u>DOCUMENT E</u> – Information gathered by NSA on specific named targets classified TOP SECRET

- <u>DOCUMENT F</u> – A PowerPoint slide outlining the effects of the military campaign targeting Al-Qaeda overseas classified SECRET

- <u>DOCUMENT G</u> – PowerPoint presentation outlining U.S. military technical capabilities classified TOP SECRET

- <u>DOCUMENT I</u> – A report listing the accomplishments of an intelligence agency tasked with preventing terrorist attacks classified SECRET

- <u>DOCUMENT J</u> – A PowerPoint presentation classified SECRET

- <u>DOCUMENT K</u> – An intelligence report on an Al-Qaeda operative classified TOP SECRET

- <u>DOCUMENT M</u> – Information on the Terrorist Identities Datamart Environment classified SECRET

34. HALE did not have a "need to know" the classified information contained in the 11 Classified Documents he printed.

35. All of the Classified Documents HALE printed bore standard markings indicating they contained highly classified information of the United States, including SECRET, and TOP SECRET, as well as SCI information.

36. At the time HALE obtained the documents, he knew that they had been or would be obtained, taken, made, or disposed of unlawfully.

37. HALE was never authorized to remove the Classified Documents from NGA and retain or transmit them, and neither the Reporter nor any of the employees at the Reporter's Online News Outlet were entitled to receive or possess them.

38.     The documents provided to the Reporter by HALE and published by the Reporter's Online News Outlet were compiled and published in a book authored by the Reporter (Book 2).

**E.      Evidence Stored in HALE's Home**

39.     On August 8, 2014, HALE possessed Document T on his home computer.  HALE also possessed two thumb drives.  The first thumb drive contained one page of Document A that HALE had attempted to delete.  This page was marked "SECRET."  The second thumb drive contained the "Tor" software and "Tails" operating system.

40.     Tor and Tails were recommended by the Reporter's Online News Outlet in an article published on the Reporter's Online News Outlet's website, which provided readers with instructions on how to anonymously "leak" documents to the Reporter's Online News Outlet. The article published by the Reporter's Online News Outlet explained that the Tor browser allows users to anonymously surf the web by "hiding your real IP address from the websites that you visit.  If your network is being monitored, the eavesdroppers will only know that you are using Tor but not what you're doing."  The article went on to explain that the Tails operating system, which can be installed via a USB stick, will prevent someone who has hacked into your computer from "spy[ing] on everything you do."  It "strip[s] metadata from a variety of types of documents...[and] leaves no traces that it was ever run on your computer."

41.     On or about August 8, 2014, HALE's cell phone contact list included the contact information for the Reporter.

**COUNT 1**
**(18 U.S.C. § 793(c)—Obtaining National Defense Information)**

THE GRAND JURY FURTHER CHARGES THAT:

42.     The General Allegations within Paragraph 1 through 41 of this Indictment are re-alleged and incorporated by reference.

43.     Beginning on or about February 28, 2014, and continuing to on or about May 14, 2014, in the Eastern District of Virginia and elsewhere, the defendant, DANIEL EVERETTE HALE, for the purpose of obtaining information respecting the national defense, unlawfully obtained documents connected with the national defense, namely:

| Document | Date Printed | Date of Initial Publication | Classification |
|----------|--------------|-----------------------------|----------------|
| A | February 28, 2014 | October 2015 | SECRET |
| B | February 28, 2014 | October 2015 | SECRET |
| C | February 28, 2014 | October 2015 | SECRET |
| D | February 28, 2014 | October 2015 | SECRET |
| E | February 28, 2014 | October 2015 | TOP SECRET |
| F | February 28, 2014 | October 2015 | SECRET |
| G | April 3, 2014 | April 2015 | TOP SECRET |
| I | April 20, 2014 | August 2014 | SECRET |
| J | April 20, 2014 | December 2015 | SECRET |
| K | April 20, 2014 | April 2015 | TOP SECRET |
| M | May 14, 2014 | August 2014 | SECRET |

knowing and having reason to believe at the time he obtained Documents A-G, I-K, and M that they had been or would be obtained, taken, made, or disposed of by any person contrary to the provisions of Title 18, United States Code, Chapter 37.

(In violation of Title 18, United States Code, Section 793(c).)

## COUNT 2
### (18 U.S.C. § 793(e)—Retention and Transmission of National Defense Information)

THE GRAND JURY FURTHER CHARGES THAT:

44.    The General Allegations within Paragraph 1 through 41 of this Indictment are incorporated by reference.

45.    Beginning on or about February 28, 2014, and continuing to on or about December 17, 2015, in the Eastern District of Virginia and elsewhere, the defendant, DANIEL EVERETTE HALE, having unauthorized possession of, access to, and control over the following documents related to the national defense, willfully: (a) retained the documents and failed to deliver them to the officer or employee of the United States entitled to receive them; and (b) communicated, delivered, and transmitted such documents to a person not entitled to receive them.  Specifically, HALE retained the following documents relating to the national defense, and transmitted them to the Reporter and/or the Reporter's Online News Outlet:

| Document | Date Printed | Date of Initial Publication | Classification |
|---|---|---|---|
| A | February 28, 2014 | October 2015 | SECRET |
| B | February 28, 2014 | October 2015 | SECRET |
| C | February 28, 2014 | October 2015 | SECRET |
| D | February 28, 2014 | October 2015 | SECRET |
| E | February 28, 2014 | October 2015 | TOP SECRET |
| F | February 28, 2014 | October 2015 | SECRET |
| G | April 3, 2014 | April 2015 | TOP SECRET |
| I | April 20, 2014 | August 2014 | SECRET |
| J | April 20, 2014 | December 2015 | SECRET |
| K | April 20, 2014 | April 2015 | TOP SECRET |
| M | May 14, 2014 | August 2014 | SECRET |

(In violation of Title 18, United States Code, Section 793(e).)

## COUNT 3
### (18 U.S.C. § 793(e)—Causing the Communication of National Defense Information)

THE GRAND JURY FURTHER CHARGES THAT:

46.    The General Allegations within Paragraph 1 through 41 of this Indictment are incorporated by reference.

47.    Beginning on or about February 28, 2014, and continuing to on or about December 17, 2015, in the Eastern District of Virginia and elsewhere, the defendant, DANIEL EVERETTE HALE, having unauthorized possession of, access to, and control over documents related to the national defense of the United States, namely:

| Document | Date Printed | Date of Initial Publication | Classification |
|----------|--------------|-----------------------------|----------------|
| A | February 28, 2014 | October 2015 | SECRET |
| B | February 28, 2014 | October 2015 | SECRET |
| C | February 28, 2014 | October 2015 | SECRET |
| D | February 28, 2014 | October 2015 | SECRET |
| E | February 28, 2014 | October 2015 | TOP SECRET |
| F | February 28, 2014 | October 2015 | SECRET |
| G | April 3, 2014 | April 2015 | TOP SECRET |
| I | April 20, 2014 | August 2014 | SECRET |
| J | April 20, 2014 | December 2015 | SECRET |
| K | April 20, 2014 | April 2015 | TOP SECRET |
| M | May 14, 2014 | August 2014 | SECRET |

did willfully communicate, deliver, transmit and cause to be communicated, delivered, and transmitted, and attempt to communicate, deliver and transmit and cause to be communicated, delivered, and transmitted the same to persons not entitled to receive them, through the publication, dissemination, and distribution to the general public of articles and books concerning Classified Documents A-G, I-K, and M.

(In violation of Title 18, United States Code, Section 793(e).)

## COUNT 4
### (18 U.S.C. § 798(a)(3)—Disclosure of Classified Communication Intelligence Information)

THE GRAND JURY FURTHER CHARGES THAT:

48.    The General Allegations within Paragraph 1 through 41 of this Indictment are incorporated by reference.

49.    Beginning on or about February 28, 2014, and continuing to in or about October 2015, in the Eastern District of Virginia and elsewhere, the defendant, DANIEL EVERETTE HALE, did willfully communicate, furnish, transmit, and otherwise make available to an unauthorized person any classified information concerning the communication intelligence activities of the United States, namely:

| Document | Date Printed | Date of Initial Publication | Classification |
|---|---|---|---|
| A | February 28, 2014 | October 2015 | SECRET |
| D | February 28, 2014 | October 2015 | SECRET |
| E | February 28, 2014 | October 2015 | TOP SECRET |
| K | February 28, 2014 | April 2015 | TOP SECRET |

(In violation of Title 18, United States Code, Sections 798(a)(3).)

## COUNT 5
### (18 U.S.C. § 641—Theft of Government Property)

THE GRAND JURY FURTHER CHARGES THAT:

50.    The General Allegations within Paragraph 1 through 41 of this Indictment are incorporated by reference.

51.    Between on or about February 28, 2014, and continuing to in or about December 2016, in the Eastern District of Virginia, and elsewhere, the defendant, DANIEL EVERETTE HALE, did knowingly and unlawfully steal and convert to his own use or the use of another, and without authority, conveyed and disposed of records and things of value of the United States, namely:

| Document | Date Printed | Date of Initial Publication | Classification |
|---|---|---|---|
| A | February 28, 2014 | October 2015 | SECRET |
| B | February 28, 2014 | October 2015 | SECRET |
| C | February 28, 2014 | October 2015 | SECRET |
| D | February 28, 2014 | October 2015 | SECRET |
| E | February 28, 2014 | October 2015 | TOP SECRET |
| F | February 28, 2014 | October 2015 | SECRET |
| G | April 3, 2014 | April 2015 | TOP SECRET |
| I | April 20, 2014 | August 2014 | SECRET |
| J | April 20, 2014 | December 2015 | SECRET |
| K | April 20, 2014 | April 2015 | TOP SECRET |
| L | April 30, 2014 | July 2014 | UNCLASSIFIED |
| M | May 14, 2014 | August 2014 | SECRET |
| N | May 14, 2014 | August 2014 | UNCLASSIFIED |
| T | June 27, 2014 | N/A | UNCLASSIFIED |

The aggregate value of said records and things of value being more than $1,000.

(All in violation of Title 18, United States Code, Section 641.)

A TRUE BILL: *Pursuant to the E-Government Act, the original of this page has been filed under seal in the Clerk's Office.

_____

FOREPERSON OF THE GRAND JURY

G. Zachary Terwilliger
United States Attorney
Eastern District of Virginia

John C. Demers
Assistant Attorney General
National Security Division
U.S. Department of Justice

_____

Gordon D. Kromberg
Alexander P. Berrang
Assistant United States Attorneys

_____

Heather M. Schmidt
Senior Trial Attorney
Counterintelligence-Export Control Section
National Security Division
U.S. Department of Justice