# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | No. **1:19-cr-59** |
| v.   ) | |
| ) | Hon. **Liam O'Grady** |
| **DANIEL EVERETTE HALE,** ) | |
| ) | Motion Hr'g: **Oct. 18, 2019** |
| Defendant. ) | |

## MOTION TO DISMISS COUNT 5 (18 U.S.C. § 641)

Defendant, Daniel Everette Hale, respectfully moves this Court to dismiss Count 5 of the Superseding Indictment, Dkt. No. 12, because 18 U.S.C. § 641, theft of government property, does not reach the conduct the government alleges occurred in this case. Although the Fourth Circuit has ruled that § 641 can apply to Espionage Act cases, the defense submits this motion for purposes of preserving the legal issue. *See United States v. Fowler*, 932 F.2d 306, 310 (4th Cir. 1991). *See also United States v. Morison*, 844 F.2d 1057, 1076-77 (4th Cir. 1988). For the reasons that follow, *Fowler* is wrongly decided because § 641 applies to acts of theft or conversion that deprive the government of an item of value. Conduct such as that alleged here, copying and passing documents and information to a member of the news media, does not fit the bill. Therefore, § 641 does not and should not reach the conduct alleged in the indictment. Were it otherwise, the Espionage Act, 18 U.S.C. §§ 793 *et seq.*, would be superfluous. Accordingly, *Fowler* should be overturned, and Count 5 should be dismissed.

## I. Fourth Circuit legal background

In 1988, the Fourth Circuit held that the theft of documents provided to a defense publication in exchange for remuneration to the defendant could properly be considered a violation of 18 U.S.C. § 641. *See Morison*, 844 F.2d at 1061, 1077 (for personal profit, defendant stole classified photographs (the physical items) marked as such, and mailed them to a defense publication). Three years after *Morison*, the Fourth Circuit went further, rejecting the defendant's contention that because he only took copies of documents, § 641 did not reach his conduct. *Fowler*, 932 F.2d at 309-10 (defendant provided employer with documents, copies of documents and information assimilated into reports). *Morison* pointedly had considered only the "actual theft and deprivation" of documents for personal gain, drawing a substantive distinction between the facts before it, which resulted in a "deprivation of the government of its own tangible property," and those involving "copying" in which "possession was not disturbed." *Morison*, 844 F. 2d at 1077. But *Fowler* stretched § 641 to include transmission or copying of information even when the government was not "actually depriv[ed]" of the document or information as a result. *See* 932 F.2d at 309-10 (citing *Carpenter v. United States*, 484 U.S. 19, 25 (1987)).

*Fowler* went too far, and should be overruled. First, *Fowler*'s interpretation of § 641 renders the statute almost limitless in scope and, thus, constitutionally overbroad and vague—this is a subject of the defense's contemporaneously filed constitutional motion. But even setting aside the constitutional infirmity, *Fowler* was wrongly decided because it is at odds with § 641's text and common law roots.

## II. 18 U.S.C. § 641 by its text and common law origin does not apply to providing information to news media

Section 641 reads, in relevant part:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or

> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted

> Shall be fined under this title or imprisoned not more than ten years, or both . . .

The text of § 641 makes clear that the statute targets a taking with intent to deprive the rightful owner of his possessory interest in the item taken. The language does not employ broadly applicable verbs that rope in the type of conduct at issue in this case. Rather, the text is targeted to criminal taking: Embezzling, stealing, purloining, and knowingly converting to one's own use are all ways of describing unlawful taking of another's property. *See, e.g.*, *Morissette v. United States*, 342 U.S. 246, 271-72 (1952) (§ 641 derived from congressional effort to collect "larceny-type" offenses in single statute to "reach all [ ] instances" "under which one may obtain wrongful advantages from another's property").[1] And criminal taking, whatever verb is used, connotes a corresponding deprivation of property by its owner as a result: "Stealing, larceny, and its variants and equivalents . . . are invasions of rights of

---

[1] *Morissette* held that criminal intent was a necessary element of the offense. *See* 342 U.S. at 273.

3

property."[2] *See id.* at 260. *Morisette* allowed that the drafters of § 641 were trying to reach "gaps and loopholes between [the] offenses" of theft and conversion, but concluded that they meant to do so as others codifying similar conduct had done, "without departing from the[ir] common-law tradition . . . ." *Id.* at 273. Further emphasizing that § 641 is bound to deprivation of property, the statute requires that the item taken not only be a thing of value, but that its value be clearly determinable: Whether the offense constitutes a misdemeanor or a felony turns on the dollar value of the thing taken. *See* 18 U.S.C. § 641 (if value of property does not exceed $1,000, maximum penalty is not more than 1 year imprisonment).

The Ninth Circuit has rejected the application of § 641 to intangible items entirely, noting that doing so avoids entanglements between § 641 and the First Amendment. *See United States v. Tobias*, 836 F.2d 449, 451 (9th Cir. 1988) (reaffirming holding in *Chappell v. United States*, 270 F.2d 274, 278 (9th Cir. 1959), that § 641 does not apply to intangible items). But even the Circuits that have agreed that the taking of information can be the subject of a § 641 taking, have stopped short of *Fowler*'s overreaching interpretation by pinning their decisions to dollar amounts and recognizing that the First Amendment likely limits § 641's reach. *See United States v. Girard*, 601 F.2d 69, 70 (2d Cir. 1979) (involving actual sale of DEA informant information for $500 per name); *id.* at 71-72 (recognizing First Amendment

---

[2] *But see Fowler*, 932 F.2d at 310 (holding § 641 applicable to copies of documents, even though no permanent deprivation of property because documents contain intangible information (citing *Morison*, 844 F.2d at 1076-77; *Carpenter v. United States*, 484 U.S. 19 (1987)).

4

implications); *United States v. Jeter*, 775 F.2d 670, 682 (6th Cir. 1985) (affirming conviction under "selling" prong of § 641 because items at issue, carbon copies of grand jury transcripts, prohibited from disclosure by law and could be assessed a dollar value by cost of real transcript and amount defendant received); *id.* at 682 (recognizing First Amendment implications but noting not at issue in instant case). In fact, *Jeter* elided the question whether intangible information could be the subject of the "taking" portion of § 641, basing its ruling instead on the statute's "unauthorized selling" prong. *See id.* at 680.

Consider the allegations in this case: No deprivation of possessory interest is alleged; the government retains the information at issue. The allegation is that Mr. Hale "printed" certain documents, or portions of documents, and shared them with a reporter, implicitly conceding that the government retains the information allegedly disclosed. *See* Superseding Indictment ¶¶ 24-38. No personal gain is alleged. The government says the information was passed to a reporter for publication without alleging that Mr. Hale received remuneration. Nor does the indictment provide any basis for concluding that the information has financial value. Though the government charged Count 5 as a felony, it has offered no basis for its valuation.[3]

It is critical to remember that, unlike the Espionage Act, § 641 is not limited to classified or national defense information. Thus, interpreting the statute to reach copies of documents and intangible information means that obtaining and

---

[3] The defense is requesting this information as part of its contemporaneously filed Motion for Bill of Particulars.

5

communicating *any* government information—if § 641 applies to information, it contains no limit on what type of information—to a third party without authorization is a criminal taking, even if the government retains the same documents or information. Such an interpretation strays far from § 641's common law origins in property law. It is nearly limitless and, therefore, at odds with the narrow set of verbs the statute employs. As a result, the *Fowler* reading renders § 641 ripe for abuse. Turning, as it would, on whether the disclosure is considered authorized, not on the type of information or the potential for harm, application could sway with personal or political animus.

This case is a good example. The government's real complaint is not that it was deprived of financially valuable documents, but rather that it was deprived of the secrecy shielding the information in those documents. Secrecy, however, is an abstract concept not even within the liberal scope of *Fowler*'s interpretation of what could entail government property under § 641. Section 641 prohibits the taking of a thing, not the taking of a thing's secrecy. *That* is the purview of the Espionage Act, which governs the deprivation of secrecy. Contorting § 641 to cover a deprivation of secrecy supplants the Espionage Act and renders it redundant to the theft statute:

> In sum, because a criminal prohibition against the unauthorized disclosure of classified information would be inconsistent with the existing pattern of criminal statutes governing the disclosure of classified information and because Congress has always refused to enact a statute like § 641 applicable to the disclosure of classified information, I would hold that § 641 cannot be interpreted to punish the unauthorized disclosure of classified information.

6

*United States v. Truong Dinh Hung*, 629 F.2d 908, 928 (4th Cir. 1980) (Winter, J., concurring). *But see Fowler*, 932 F.2d at 309-10 (considering and rejecting Judge Winter's position in *Truong Dinh Hung*).

There is ample evidence that § 641 was not meant to have such breathtaking sweep. For example, in 2001, Congress attempted to pass a statute that would criminalize, as a felony, the disclosure of classified information by government employees. This would have been entirely redundant if § 641 already reached that conduct. *See* Intelligence Authorization Act for Fiscal Year 2001, H.R. 4392, 106th Cong. *See also Seatrain Shipbuilding Corp. v. Shell Oil Co.*, 444 U.S. 572, 596 (1980) (later congressional statement or action can illuminate past congressional intent). It is noteworthy, too, that, in vetoing the legislation then-President Bill Clinton cited its broad wording as a threat to the free flow of ideas between government officials. *See* Message on Returning Without Approval to the House of Representatives Intelligence Authorization Legislation for Fiscal Year 2001, 3 Pub. Papers 2466-67 (Nov. 4, 2000). This would have been an empty rebuke if § 641 contained the same type of broad language about which the President was concerned. In a similar vein, the U.S. Attorney's Manual's "Policies for the Prosecution of Espionage, Export and Other Internal Security Offenses" does not mention 18 U.S.C. § 641. *See* USAM § 9-90.300.[4] While the Manual's list is perhaps not exhaustive, its omission of § 641 is

---

[4] Available online at <https://www.justice.gov/archives/usam/archives/usam-9-90000-national-security#9-90.300>. The included listing of "Key National Defense and National Security Provisions" is available online at <https://www.justice.gov/jm/criminal-resource-manual-2057-synopses-key-national-defense-and-national-security-provisions>.

another piece of evidence that the theft statute has not been interpreted to cover the types of information disclosure governed by the Espionage Act.

Here, even the government appears caught in its own web. It alleges Mr. Hale took information while implicitly conceding his taking did not deprive the government of its possession and making no factual allegation at all as to the value of the item allegedly taken. In *Morison*, the Fourth Circuit rightly drew a line between depriving an owner of possession and copying intangible information. *See* 844 F.2d at 1077 (explicitly excluding reliance on two cases that involved copying where "defendant's possession in both cases was not disturbed"). The former satisfies § 641; the latter should not.

Accordingly, notwithstanding the Fourth Circuit's decision in *United States v. Fowler*, the defense submits that 18 U.S.C. § 641 does not cover the type of conduct alleged in this case. Therefore, Count 5 should be dismissed.

Respectfully submitted,

DANIEL EVERETTE HALE

By Counsel,
Geremy C. Kamens
Federal Public Defender

By: <u>/s/ Cadence Mertz</u>
Todd M. Richman
Va. Bar No. 41834
Cadence A. Mertz
Va. Bar No. 89750
Tor B. Ekeland
Admitted *pro hac vice*
Counsel for Mr. Hale
1650 King Street, Suite 500
Alexandria, VA   22314
703-600-0840 (tel)
703-600-0880 (fax)
Cadence_Mertz@fd.org

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 16, 2019, I filed the foregoing via the CM/ECF system, which will electronically serve a copy upon counsel of record.

                                        /s/ Cadence Mertz
                                        Cadence A. Mertz
                                        Va. Bar No. 89750
                                        Assistant Federal Public Defender
                                        Office of the Federal Public Defender
                                        1650 King Street, Suite 500
                                        Alexandria, VA   22314
                                        703-600-0840 (tel)
                                        703-600-0880 (fax)
                                        Cadence_Mertz@fd.org