**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:19cr59 |
| v. | ) | The Honorable Liam O'Grady |
| DANIEL EVERETTE HALE, | ) | Motions Hearing: October 18, 2019 |
| *Defendant.* | ) | |

**GOVERNMENT'S MOTION *IN LIMINE* CONCERNING CHALLENGES TO
OFFICIAL CLASSIFICATION DETERMINATION**

The United States, by its undersigned counsel, hereby moves this Court for an order precluding the presentation of evidence, direct or cross-examination, argument, or comment at trial or before the jury concerning the propriety of classification determinations made by U.S. classification authorities in accordance with Presidential Executive Order 13526.

**INTRODUCTION**

The government believes the defense intends to question certain U.S. Intelligence Community (USIC) trial witnesses about the perceived misclassification of information at issue in this trial, as well as within the U.S. government at large. This Court and others have made clear it is not proper for the Court or the defense to challenge a government agency's classification determination. Such determinations are **exclusively** a function of the Executive Branch. It follows, therefore, that the defense cannot challenge the classification of the documents at issue in this case or make general allegations of misclassification of information within the U.S. government at large.

Section 798 of Title 18 of the U.S. Code requires the government prove the defendant

communicated, furnished, transmitted or otherwise made available "classified information . . . concerning the communication intelligence activities of the United States." While the government must prove that the information is (1) classified and (2) concerns the communications intelligence activities of the United States, "the propriety of classification is irrelevant. The fact of classification of a document or documents is enough to satisfy the classification element of [§ 798]." *United States v. Boyce*, 594 F.2d 1246, 1251 (9th Cir. 1979) (affirming § 798 conviction of a Central Intelligence Agency contractor and rejecting defendant's attempt to challenge classification determination or propriety of classification). In other words, the testimony of a government official that a document was classified at the time of the offense is sufficient to prove the classification element of § 798.

In the case of 18 U.S.C. § 793(c) and (e), the statutes does not criminalize obtaining, retaining, transmitting, or causing the communication of classified documents. Rather, § 793(c) criminalizes obtaining documents "connected to the national defense." Similarly, § 793(e) criminalizes retaining and transmitting documents "related to the national defense," and causing documents "related to the national defense" to be communicated, disseminated, and distributed. To prove that information is "connected to" or "related to" the national defense, the government must prove the disclosure of the information had the potential to harm the U.S. national security and that the information was closely held by the government. *See*, *e.g.*, *United States v. Rosen*, 599 F. Supp. 2d 690, 695 (E.D. Va. 2009). Thus, classified information could be found by the jury not to constitute national defense information (NDI). Conversely, a jury could well find that certain government information, while not classified, did constitute NDI. Classified information therefore is only a potentially supportive factor, but not a determinative factor, in determining whether information relates to, or is connected to, the national defense.

For the reasons set forth below, the United States respectfully requests the Court grant this Motion and preclude the defendant from challenging the U.S. government's classification determinations at trial.

## LEGAL AUTHORITY AND ARGUMENT

**A.    The Executive Branch Has Sole Responsibility for Classification Determinations**

Article II, Section 2 of the Constitution provides that the "President shall be Commander-in-Chief of the Army and Navy of the United States." The Supreme Court has recognized that the President's "authority to classify and control access to information bearing on national security . . . flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant." *Department of Navy v. Egan*, 484 U.S. 518, 527 (1988). The President has sought to protect sensitive information and to ensure its proper classification throughout the Executive Branch by issuing a series of Executive Orders establishing a classification system and delegating this responsibility to the heads of agencies.[1] *Id*.

Thus, the current classification system is an executive function, governed by Executive Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), which "prescribes a uniform system for classifying, safeguarding, and declassifying national security information." *United States v. Morison*, 844 F.2d 1057, 1074 (4th Cir. 1988). Executive Order 13526 describes the policies and procedures by which information essential to the nation's security and foreign relations is protected from unauthorized use, dissemination, handling, and storage. This Executive Order defines classified information as information in any form that:

---

[1] Relevant to this case, the President has delegated the authority to be an "original classification authority" (OCA), that is an individual who determines which information is classified and must be protected.

>(1) is owned by, produced by or for, or under the control of the United States government;
>
>(2) falls within one or more of the categories set forth in Section 1.4 of the Executive Order (including intelligence sources and methods, cryptology, military plans, weapons systems and vulnerabilities or capabilities of systems, installations, projects, or plans relating to the national security); and
>
>(3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

As the government advises those to whom it entrusts classified information, classification reflects a determination that, if disclosed without proper authorization, the information could cause exceptionally grave damage to the national security ("Top Secret"), serious damage to the national security ("Secret"), or damage to the national security ("Confidential"). *Id.* Classification markings also limit the population entitled to receive the classified information. *Morison*, 844 F.2d at 1074–75.

In *United States v. Marchetti*, 466 F.2d 1309, 1317 (4th Cir. 1980) (per curiam), the Fourth Circuit explained the rationale supporting this deference to Executive Branch classification determinations:

>The CIA is one of the executive agencies whose activities is closely related to the conduct of foreign affairs and to the national defense. Its operations, generally, are an executive function beyond the control of the judicial power. If in the conduct of its operations the need for secrecy requires a system of classification of documents and information, the process of classification is part of the executive function beyond the scope of judicial review.

Executive Branch agencies exercising original classification authority are uniquely positioned to assess the damage to the national security of information in light of the global context for such information. Courts and defendants do not have the same access to this global

perspective. *See*, *e.g.*, *United States v. Snepp*, 897 F.2d 138, 141 n.2 (4th Cir. 1990) ("Courts must avoid second-guessing the CIA's decision to classify information because they have only a limited knowledge of foreign intelligence matters."); *see also El-Masri v. United States*, 479 F.3d 296, 305, 307 (4th Cir. 2007) ("The executive branch's expertise in predicting the potential consequences of intelligence disclosures is particularly important given the sophisticated nature of modern intelligence analysis, in which the significance of one item of information may frequently depend upon knowledge of many other items of information, and what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." (citation and quotations omitted)).

**B.     Proper Classification of a Document Is Not an Element of 18 U.S.C. § 798**

Whether the documents at issue in the § 798 charge were properly classified is not an element of the crime. *Boyce*, 594 F.2d at 1251. Under § 798, the government must prove (1) the defendant communicated, transmitted, or otherwise made available classified information; (2) the classified information concerned the communication intelligence activities of the United States; and (3) the defendant did so willfully.

It is well-settled that neither judicial review of, nor defense challenges to, classification decisions by Executive Branch officials is permitted. *See*, *e.g.*, *El-Masri*, 479 F.3d at 305 ("'[T]he courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications . . . .'" (quoting *Marchetti*, 466 F.2d at 1318)); *United States v. Smith*, 750 F.2d 1215, 1217 (4th Cir. 1984) ("[T]he government . . . may determine what information is classified. A defendant cannot challenge this classification. A court cannot question it."); *United States v. Rosen*, 520 F. Supp. 2d 786, 790

5

(E.D. Va. 2007) ("It is not open to the court to question or second-guess the classification status of any document. . . ."); *see also United States v. Moussaoui*, 65 F. App'x 881, 887 n.5 (4th Cir. 2003) ("Nevertheless, Intervenors maintain that we need not defer to the classification decisions of the Government. Implicit in this assertion is a request for us to review, and perhaps reject, classification decisions made by the executive branch. This we decline to do."); *United States v. Fondren*, 63 F. Supp. 3d 601, 608 (E.D. Va. 2014) ("The Petitioner simply cannot defend himself from charges of illegally transmitting a classified report by arguing that the information should not have bene classified."); *United States v. Kiriakou*, 1:12-cr-00127-LMB, Dkt. 62 (E.D. Va. Aug. 8, 2012) ("Regardless of whether the 'government itself acknowledges that it over-classifies a great deal of information,' as defendant argues, . . . the classification system is the purview of the executive branch; accordingly, the Court declines to second-guess the CIA's classification decisions.") (citation omitted).

In *Scarbeck v. United States*, 317 F.2d 546 (D.C. Cir. 1962), which involved the criminal prosecution of a U.S. foreign service officer for communicating classified information to representatives of a foreign government, the D.C. Circuit held that, under 50 U.S.C. § 783, the government was not required to establish the propriety of a classification determination, holding that the executive's determination is not reviewable as part of the criminal prosecution, *id*. at 557-560. The Court of Appeals explained the "absurdity" of challenging an Executive Branch decision:

> Merely to describe such a litigation is enough to show its absurdity. Yet appellant is urging that . . . he can present proof that his superior officer had no justification for classifying the document, and can obtain an instruction from the court to the jury that one of their duties is to determine whether the document, admittedly classified, was of such a nature that the superior was justified in classifying it. The trial of the employee would be converted into a trial of the superior.

6

> The Government might well be compelled either to withdraw the prosecution or to reveal policies and information going far beyond the scope of the classified documents transferred by the employee. The embarrassments and hazards of such a proceeding could soon render [50 U.S.C. § 783] an entirely useless statute.

*Id.* at 559-60. *See also United States v. Truong Dinh Hung*, 629 F.2d 908, 920 (4th Cir. 1980) (expressly adopting *Scarbeck* in a prosecution for conspiracy to violate 50 U.S.C. § 783); *Boyce*, 594 F.2d at 1251 ("propriety of the classification is irrelevant [in a 18 U.S.C. § 798 trial]. . . . The fact of classification of a document or documents is enough to satisfy the classification element of the offense").

C.  **Whether a Document is Properly Classified Has No Bearing on Whether the Charged Documents Constitute NDI under 18 U.S.C. § 793(c) and (e)**

"NDI . . . is not synonymous with 'classified;' information that is classified by the executive branch of government may or may not qualify as NDI." *Rosen*, 599 F. Supp. 2d at 694. For the 18 U.S.C. § 793(c) and (e) charges, the jury will not be required to determine whether the documents the defendant obtained, retained, transmitted, or caused the communication of were classified. Rather, the jury will decide a separate question: whether the information related to the national defense, a term separately defined by case law. *See*, *e.g.*, *Gorin v. United States*, 312 U.S. 19 (1941); *see also Rosen*, 599 F. Supp. 2d at 695 ("In short, the government designates what information is labeled and treated as classified, while a court or jury determines what information qualifies as NDI. . . .").

The Espionage Act does not define the term "information relating to the national defense." The task of crafting its definition has, therefore, been left to the courts. In *Gorin*, the Supreme Court defined "information relating to the national defense" as "a generic concept of broad connotations, referring to the military and naval establishments and related activities of national preparedness." *Gorin*, 312 U.S. at 28. The Fourth Circuit has followed *Gorin* in

adopting a similarly broad view of the bounds of information "relating to the national defense," stating that, "Congress intended 'national defense' to encompass a broad range of information and rejected attempts to narrow the reach of the statutory language." *Truong Dinh Hung*, 629 F.2d at 918 (citing Harold Edgar & Benno C. Schmidt, Jr., *The Espionage Statutes and Publication of Defense Information*, 73 Colum. L. Rev. 929, 972–74 (1973)).

In addition, to prove the documents the defendant obtained, retained, transmitted, or caused the communication of contained NDI, the government must prove the following: first, that the documents and information were closely held by the government, and second, that the release of the documents or information had the potential to damage the national security. *Morison*, 844 F.2d at 1071–72 (upholding jury instruction below stating government must show (1) potential damage to the United States or usefulness to an enemy, and (2) that the information was "closely held" to meet its burden on NDI element); *Rosen*, 599 F. Supp. 2d at 695 (national defense information "is that information which, as of the time of an alleged unauthorized disclosure, is found by the jury beyond a reasonable doubt (i) to have been closely held by the government and (ii) to be potentially damaging to the United States if disclosed without authorization."). In determining whether information is "closely held," a jury may look to whether the information at issue was "lawfully available to the public," and whether the government "made [an] effort to guard such information." *See United States v. Dedeyan*, 584 F.2d 36, 40 (4th Cir. 1978). In determining whether something could have caused damage to national security, and relates to the national defense, the jury can consider the classification of the information.

Courts examining the contours of NDI have found that the formal classification of information is one factor to consider in assessing whether the information at issue qualified as

NDI. *See id.* (upholding ruling below and quoting lower court's statement that the fact of classification tends "to show or make more probable that the document does, in fact relate to the national defense"); *United States v. Squillacote*, 221 F.3d 542, 578 (4th Cir. 2000) ("[T]here is a special significance to our government's own official estimates of its strengths and weaknesses, or those of a potential enemy. When those estimates are included in an official document closely held by the government, those estimates carry with them the government's implicit stamp of correctness and accuracy."); *see also Rosen*, 599 F. Supp. 2d at 695 ("The executive branch has the authority to classify and hold closely information the unauthorized disclosure of which is deemed by the government to have the potential to damage the national security."). The jury's inquiry into NDI, however, does not begin and end with whether the information is classified.

Thus, the defense may ask USIC witnesses whether, at the time of the unlawful conduct, the information under consideration was closely held or had been disclosed publicly by the government. The defense likewise may question witnesses on their bases for determining the potential risk of harm from disclosure of specific information. Conversely, whether some employees within the USIC misclassify information is entirely unrelated to the government's charges here. *See* Fed. R. Evid. 401 (evidence is relevant when it "has any tendency to make a fact more or less probable" and such "fact is of consequence in determining the action"). Whether certain non-testifying individuals have ever improperly marked government information as classified does not make it any less likely that the documents and information *at issue here* are NDI. And, given that the defense has no standing to challenge an OCA's classification determination, the defense may not reference an unfounded allegation of misclassified information in an attempt to undercut an OCA's classification finding. *Cf. Snepp*, 897 F.2d at 141 n.2.

9

**CONCLUSION**

For the foregoing reasons, the government moves this Court to preclude the presentation of evidence, direct or cross-examination, argument, or comment at trial or before the jury concerning the propriety of classification determinations made by United States classification authorities in accordance with Presidential Executive Order 13526.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:         /s/
Heather M. Schmidt
Senior Trial Attorney
National Security Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Tel.: (202) 233-2132
Fax: (202) 233-2146
Heather.Schmidt@usdoj.gov

By:         /s/
Gordon D. Kromberg
Alexander P. Berrang
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: gordon.kromberg@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that I have caused an electronic copy of the *GOVERNMENT'S MOTION TO PRECLUDE CHALLENGES TO CLASSIFICATION LEVEL AND REFERENCES TO PURPORTED "MISCLASSIFICATION"* to be served via ECF upon counsel for Defendant Daniel Hale.

/s/
Alexander P. Berrang
Assistant United States Attorney
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Tel: (703) 299-3700
Fax: (703) 299-3981
Alexander.P.Berrang@usdoj.gov