# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-59 |
| | ) | |
| DANIEL EVERETTE HALE, | ) | Hon. Liam O'Grady |
| | ) | |
| Defendant. | ) | Motion Hr'g: Oct. 18, 2019 |

## DEFENDANT'S CONSOLIDATED RESPONSE TO: i) MOTION FOR JUDICIAL NOTICE; ii) MOTION CONCERNING CHALLENGES TO CLASSIFICATION; AND iii) MOTION TO EXCLUDE CERTAIN EVIDENCE ARGUMENT OR COMMENT AT TRIAL

Defendant Daniel Hale, through counsel, hereby responds as follows to the government's: i) Motion for Judicial Notice (dkt. # 49); ii) Motion *in Limine* Concerning Challenges to Official Classification Determination (dkt. # 57); and iii) Motion *in Limine* to Exclude Certain Evidence, Argument or Comment at Trial (dkt. # 56). Defendant does not oppose the government's Motion for Judicial Notice, which asks the Court to take judicial notice of the classification system and Executive Order governing it, but opposes the government's two motions *in limine*, which are premature.

Through its motions *in limine*, the government seeks to foreclose certain arguments by the defense at trial. *But the government has produced over five terabytes of discovery just since the motions were filed.* The defense has had no meaningful opportunity to review that material, or much of the nearly one terabyte of classified material that was also produced since the motions were filed. Until

defense counsel has reviewed all discovery, and had sufficient time to consult with its retained expert and the defendant about it, counsel will not be able to forecast what defenses will be raised at trial, or how those defenses might implicate the arguments the government now seeks to foreclose the defense from raising.  The government's concern about having an unbiased jury hear the equities of the charges it has leveled against Mr. Hale is not a basis in itself to foreclose the defense from making arguments that it can otherwise show to be relevant to defenses raised at trial. Rulings on those motions should be made much closer to trial, once the defense team has had sufficient opportunity to review the evidence and explain how its trial defenses might render those arguments relevant under applicable law and the Rules of Evidence.

I.      Motion for Judicial Notice

As noted, the defense does not oppose the Court taking judicial notice of Executive Order 13526, which governs classification.  The defense agrees that many provisions of the Executive Order will be relevant at trial.  *See, e.g.*, Executive Order 13526 (Dec. 29, 2009) § 1.7(a) (in no case shall material be classified, or maintain its classification status, to conceal violations of law or to prevent embarrassment to a person, organization or agency).

II.     Motion Concerning Challenges to Official Classification Determination

The relief sought in the government's motion concerning official classification determinations seeks to foreclose Mr. Hale from challenging official classification determinations at trial.  As an initial matter, it is important to note that the issue of

whether a classification determination is appropriate is a separate question from whether a particular document has in fact been classified by an Executive Branch agency pursuant to Executive Order 13526 (or a predecessor Order).  For example, the Executive Order requires properly-classified documents to contain various markings, including the identity of the classifying agency and the name and position of the original classification authority who made the classification determination, a concise statement of the basis for classification that, "at a minimum," cites the portion of the Executive Order permitting classification, "portion markings" denoting which portions of the document are classified and at what level, and declassification instructions including the date on which a document is to be reviewed for declassification.  *See* Executive Order 13526 § 1.6.  While the Order also provides that "information assigned a level of classification" may be treated as classified in the absence of all the requisite markings, *id.* § 1.6(f), the absence of required "portion" markings on a multi-page document may render it impossible to determine which "information" was assigned a "level of classification," and thus to apply § 1.6(f). Accordingly, the right to challenge an official classification determination is distinct from the right to challenge the fact of classification, i.e., whether a particular document was in fact put through the classification process required by the Executive Order.  Neither the government's argument, nor the authority it cites, forecloses a challenge to the latter, i.e., *whether* a particular document was the basis of an official Agency classification determination.

That said, the defense agrees in large part with the government's motion *in limine*.  The government is correct that classification of documents under the governing Executive Order is a purely Executive function, and that most of the charges do not turn on whether the documents are classified, but on whether they constitute National Defense Information ("NDI").  In order to constitute NDI, documents or information must be "closely held" by the government (meaning that the government has taken measures to prevent public dissemination) and "potentially damaging" to the United States or useful to an enemy if released.  *United States v. Morison*, 844 F.3d 1057, 1071-72 (4th Cir. 1988).  Accordingly, to the extent the charges turn on whether documents are NDI, their classified status is only circumstantial evidence tending to establish (but not necessarily establishing, depending on other evidence) that: i) the government closely holds certain information; ii) its purported reasons for doing so are based in national security, and iii) the defendant was aware of those facts.

One of the counts in this case, however, turns not on whether the documents are NDI, but on whether they are in fact classified.  *See* Superseding Indictment, Count Four (charging violation of 18 U.S.C. § 798(a)(3) with respect to four specific documents).  There is no Fourth Circuit precedent deciding whether § 798 is satisfied merely by classification or whether it requires proper classification.  The legislative history of § 798 supports the conclusion that the offense requires proper classification.  Moreover, two distinct strains of Constitutional law – the Due Process Clause and

the First Amendment – can be satisfied only by permitting an improper-classification defense with respect to the four documents at issue in Count Four.

The legislative history of § 798 is straightforward. Both the House and Senate Reports accompanying the legislation state that "the classification must be in fact in the interests of national security." *See* H.R. Rep. No. 81-1895 at 3 (attached as Exh. A); S. Rep. No. 81-111 at 3 (attached as Exh. B). This language "suggests that the appropriateness of the classification [under § 798] is a question of fact for the jury." Harold Edgar & Benno C. Schmidt, Jr., *The Espionage Statutes and Publication of Defense Information*, 73 Colum. L. Rev. 929, 1065 (1973). Only one case – decided 40 years ago by the Ninth Circuit – appears to have addressed whether § 798 requires proper classification (as opposed to merely classification). *See United States v. Boyce*, 594 F.2d 1246, 1251 (9th Cir. 1979). And while *Boyce* holds that the propriety of classification is irrelelvant to establish a § 798 violation, it does so based on no more than a few sentences of analysis. And it neither considers the legislative history quoted above nor any Constitutional concerns. Accordingly, whether § 798 requires proper classification, or merely classification, appears to be an open question, and one of first impression in this Circuit.

On that question, § 798's legislative history is consistent with developments under the Due Process Clause since *Boyce* was decided. Specifically, the Supreme Court and the Fourth Circuit have clarified that the Due Process Clause prohibits the government from being both the fact-finder and the prosecutor. In *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987), the Court rejected exactly this type

of wishful duality by the Executive Branch.  As the Fourth Circuit recently reiterated, "when an [administrative determination] is alleged to be an *element in a criminal prosecution,* the defendant in that prosecution must, as a matter of due process, be able to challenge the element . . . if he did not have a prior opportunity to do so." *United States v. Villareal Silva,* 931 F.3d 330, 335 (4th Cir. 2019) (considering challenge to expedited removal decision in prosecution under 8 U.S.C. § 1326, and holding unconstitutional a provision barring court from considering the validity of the removal).  On its face, *Villareal Silva* is nearly identical to the situation presented here: the criminal offense in *Villareal Silva* requires only a removal, as opposed to a valid removal[1] – much like the government claims that § 798 requires only classification, as opposed to proper classification – yet the Fourth Circuit held that Due Process requires that Executive Branch determination to be subject to judicial review where it is an element of a criminal offense.[2]

Finally, as already noted in Defendant's Motion to Dismiss (dkt. # 53), if the government prevails in its argument that § 798 does not require proper classification,

---

[1]    Certain types of removals are subject to collateral attack in the course of a § 1326 prosecution, *see* § 1326(d), but the removal at issue in *Villareal-Silva* was statutorily exempted from such collateral attacks by 8 U.S.C. § 1225(b)(1)(D).  The Fourth Circuit held *that* provision unconstitutional in *Villareal-Silva* pursuant to *Mendoza-Lopez.*

[2]    Executive Order 13526 provides no mechanism for Mr. Hale to have earlier challenged the Executive Branch classification determinations that may be at issue here.  That is because any challenges: i) may be brought only by a person with authorized access to the information in question, see Executive Order 13526 § 1.8(a), which the government says is not the case here, *see* Superseding Indictment ¶ 34; and ii) classification determinations may be challenged pursuant to the Executive Order only within the Executive Branch.  *See* Executive Order 13526 § 1.8.

that would only exacerbate the First Amendment concerns presented by this case.  If improper classification determinations can support a § 798 conviction, the government would be permitted to restrict speech and the press, with the threat of criminal sanctions, in the case of a decades-old document that the entire intelligence community has already agreed is ready for declassification (because there is agreement that its unauthorized disclosure could cause no conceivable harm) simply because the actual declassification has not yet occurred.  Or the government could classify information, improperly, solely to protect the Executive Branch from embarrassment, and criminalize any attempt by the press to write about the substance of its obviously improper classification determination for as long as the Executive chooses to maintain the document's classified status.[3]

As these examples illustrate, a statute that restricts speech and the press, and that would permit conviction in the absence of any showing that the restriction is in fact necessary to further a compelling government interest, is unconstitutional. Accordingly, a holding that § 798 is satisfied by the mere fact of classification, even if that is correct as a matter of statutory interpretation, would lend strong support to the finding that § 798 is unconstitutional on First Amendment grounds.

III.   <u>Motion to Exclude Certain Evidence, Argument or Comment at Trial</u>

In this motion, the government seeks to foreclose the defense from raising the following at trial: i) the supposed good motives of the defendant; ii) any speculative,

---

[3]   These examples may seem far-fetched in the abstract.  But recent events in the news suggest that they may not be all that unlikely to occur.

non-evidence-based claim that another individual committed the offenses charged; iii) a claim of unfair prosecution because "everybody leaks classified information;" and iv) the punishment the defendant may face upon conviction.

Two of these may be dealt with easily.  Rules of evidence and ethics already prevent the defense from making speculative, non-evidence-based factual defenses and arguments about punishment.  The government has no basis for contending that defense counsel intends to violate settled restrictions governing arguments at trial, and thus no good-faith basis to seek relief from the Court on these grounds.  Moreover, any ruling on these issues in the absence of facts demonstrating that the defense intends to make otherwise-impermissible arguments would be entirely advisory, and thus improper.  *See, e.g., Maryland v. United States,* 360 F.Supp.3d 288, 316 (D. Md. 2019) ("'it is quite clear that the oldest and most consistent thread in federal law of justiciability is that the federal courts will not give advisory opinions.'") (quoting and citing *Flast v. Cohen,* 392 U.S. 83, 96 (1968)).  Accordingly, the motion *in limine* on these grounds should be denied.

Nonetheless, should the Court believe such an order would be appropriate, the defense respectfully requests that the Court also order that the government not: i) comment on the defendant's failure to testify at trial, if he chooses not to testify; ii) express personal opinions about the defendant's guilt or credibility; iii) vouch for the credibility of government witnesses; iv) allude to an oath of office taken by any government witnesses, or their personal or professional integrity, to bolster the government's case; v) make any factual argument to the jury absent a non-speculative

evidentiary basis; or vi) make any statements designed to inflame the passions of the jurors.

Next, with respect to evidence of "good motive," the government is correct that the offenses charged do not require an intention to harm the United States, *see* Dkt. 56 at 4-8, and that proof of willfulness (which is required for three of the four Espionage-Act counts charged in the Superseding Indictment) generally requires proof only that the defendant knew his conduct was unlawful. *Id.* at 10. There are other potential trial defenses, however, to which Mr. Hale's intentions could be relevant, and – as noted at the outset – it would be improper to foreclose such arguments before the defense has had an opportunity to review a vast quantity of the evidence and to formulate trial defenses.

By way of example, Count One, which lacks a willfulness element, requires the defendant to have acted with knowledge or reason to believe that any person would obtain or dispose of the documents he allegedly obtained contrary to the provisions of the Espionage Act, in violation of 18 U.S.C. § 793(c). One trial defense Mr. Hale might present is that, as long as his intentions were purely to inform the public of information relevant to public discourse – and not to profit, as the defendant in *Morison* did, or to harm the United States, as in prosecutions under 18 U.S.C. § 794 – that he had no reason to believe that his or the recipient's use of the information would violate the Espionage Act. Similarly, Mr. Hale's motives might be relevant to a defense that he intentionally selected any documents he obtained to include only those that he believed were relevant to public discourse and *not* potentially damaging

to national security.   If Mr. Hale presents such a defense at trial, it would be impossible to meaningfully explain to a jury the defendant's culling process, and his calculations regarding which documents to obtain, if the jury is not aware of his purpose in obtaining them.   Of course, in that event it would ultimately be the jury's determination whether the documents were *in fact* "potentially damaging" to the United States and thus NDI.   But Mr. Hale's understanding of the potential for damage, as a person with knowledge, would be relevant to that determination, much as a government witness's testimony about potential damage would be relevant.

Accordingly, it is premature to rule upon the government's motion *in limine* to the extent it seeks to prohibit evidence of the defendant's motive because the defense should be permitted to admit motive evidence to the extent that trial defenses make such evidence relevant and otherwise admissible.

Finally, with respect to a potential defense that "'everybody leaks classified information' and the defendant is being unfairly prosecuted," *see* Dkt. 56 at 1, the defense agrees that the fairness of the prosecution – and whether it rises to the level of unconstitutional selective prosecution or viewpoint-based discrimination – is a question for the courts and not the jury.   Accordingly, the defense has no intention of arguing to the jury, as the government puts it, that because "everybody leaks," "the defendant is being unfairly prosecuted."

But the relief sought in the government's Motion is actually far more broad than that.   Specifically, the government seeks to prevent the defense from making any arguments about other people leaking, about any instances or examples of other

people leaking, or about the prevalence of classified-information leaks.  Dkt. 56 at 15. To the extent the government seeks this sort of relief, its request is premature because, as stated at the outset, the defense has just received vast amounts of discovery and is not in a position to state what trial defenses it may raise and how such arguments may be relevant to those defenses.  There appear to be many potential trial defenses that could make instances of other leaking relevant.  By way of example, specific instances of classified-information leaks may be relevant to the extent they contain information similar to that at issue in this case, because once information is well-known to America's enemies (whether through official means or otherwise), the government is less able to show that a further release of the same information is "potentially damaging" to national security, and thus NDI.  Moreover, Count Five in this case alleges a violation of § 641, which requires a showing that the information at issue have a value of at least $1,000.  The government's claimed valuation could be substantially undercut by any showing that the information was already in the public domain, whether through official publication or prior leaks.

Accordingly, there are a number of ways that the defense could make other instances of leaking relevant and admissible at trial.  The Court should not therefore foreclose the defense from presenting such evidence, as long as it is later shown to be relevant and otherwise admissible, in the factual vacuum of the government's motion *in limine*.

**<u>CONCLUSION</u>**

For the foregoing reasons, defendant respectfully submits that this Court should: i) grant the government's motion for judicial notice as unopposed; ii) grant in part the government's motion regarding challenges to classification determinations, but deny the motion to the extent it seeks to prevent challenges to classification determinations with respect to the four documents at issue in Count Four of the Superseding Indictment; and iii) deny the government's motion concerning certain evidence, argument or comment at trial.

Respectfully submitted,

DANIEL EVERETTE HALE

By Counsel,
Geremy C. Kamens
Federal Public Defender


By:     /s/ Todd M. Richman
Todd M. Richman
Va. Bar No. 41834
Cadence A. Mertz
Va. Bar No. 89750
Assistant Federal Public Defenders
1650 King Street, Suite 500
Alexandria, VA   22314
703-600-0845 (T)
703-600-0880 (F)
Todd_Richman@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 30, 2019, I filed the foregoing via the CM/ECF system, which will electronically serve a copy upon counsel of record.

<u>/s/ Todd M. Richman</u>
Todd M. Richman
Va. Bar No. 41834
Assistant Federal Public Defender
1650 King Street, Suite 500
Alexandria, VA   22314
703-600-0845 (T)
703-600-0880 (F)
Todd_Richman@fd.org