# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

|                               |     |                                   |
| ----------------------------- | --- | --------------------------------- |
|                               | )   |                                   |
| UNITED STATES OF AMERICA      | )   | Criminal No. 1:19cr59             |
|                               | )   |                                   |
| v.                            | )   | The Honorable Liam O'Grady        |
|                               | )   |                                   |
| DANIEL EVERETTE HALE,         | )   | Motions Hearing: October 18, 2019 |
|                               | )   |                                   |
| *Defendant.*                  | )   |                                   |
|                               | )   |                                   |

## GOVERNMENT'S OPPOSITION TO
## <u>DEFENDANT'S MOTION TO DISMISS THE INDICTMENT</u>

Entrusted with some of the nation's most highly sensitive secrets, Defendant Daniel Everette Hale exploited the access bestowed upon him to steal documents containing the very type of information he was supposed to protect. Hale retained and disclosed documents pertaining to the means, sources, and methods of the country's defense and intelligence gathering capabilities. His disclosures had the potential to harm the nation's security.[1] Now, he tries to shirk responsibility for his brazen conduct, claiming constitutional deficiencies in statutes that courts have upheld for decades. This Court should reject Hale's gambit. He engaged in thievery, not protected speech, and a jury should be given the opportunity to hold him accountable for his criminal conduct.

---

[1] As discussed below, in a prosecution brought in the Fourth Circuit under 18 U.S.C. § 793, the government must prove that the defendant's disclosures were potentially harmful to the United States or might be useful to an enemy of the United States. The government need not allege or prove actual harm. *United States v. Morison*, 844 F.2d 1057, 1076 (4th Cir. 1988).

## INTRODUCTION

Hale's argument for dismissal of the superseding indictment is long on First Amendment academic musings and short on precedential court decisions.  This tack is a product of the relief Hale requests.  Hale, a former government employee and contractor, who swore to protect and defend the Constitution against all enemies foreign and domestic, broke the trust placed in him by the United States.  He is now asking this Court to do something extraordinary: excuse his audacious theft by disregarding settled Supreme Court and Fourth Circuit precedent and declaring as unconstitutional a set of statutes that have been in Title 18 of the U.S. Code for decades.  This request is meritless, and the Court should deny it as such.

At the core of Hale's Motion are two arguments.  One is that the indictment charges Espionage Act offenses that are unconstitutionally vague.  The other is that all of the offenses charged in this case are unconstitutionally overbroad in that they reach a substantial amount of speech protected by the First Amendment.  Before addressing these arguments, however, it is first necessary to dispense with three claims Hale weaves into his Motion.

*First*, the instant prosecution is not about whether the Espionage Act applies to journalists.  Hale, however, asserts that this case will require the Court to render a decision as to "whether the act of publication by a journalist is criminal under the Espionage Act."  (Def.'s Mot. at 4, Dkt. 53.)  This is not so.  None of the charged offenses requires the government to prove that a journalist ran afoul of any provision of the Espionage Act.

Hale's misapprehension of the nature of his prosecution appears to rest upon his misunderstanding of Count One of the superseding indictment, which charges § 793(c).  Hale claims § 793(c) requires proof that a journalist violated the Espionage Act.  Yet, as reflected in the government's response to the defense's request for a bill of particulars, the elements of

2

§ 793(c) require no such proof.  Rather, the government must establish beyond a reasonable

doubt that: (1) Hale, for the purpose of obtaining information respecting the national defense,

obtained documents connected with the national defense; and (2) Hale did so knowing or having

reason to believe that, at the time he obtained them, he would obtain or dispose of them contrary

to the Espionage Act, *i.e.*, Hale would willfully communicate, deliver, transmit, or cause them to

be communicated, delivered, or transmitted, to a reporter and the general public.  In short, it is

Hale's conduct, not a journalist's, that is at issue in Count One.

  ***Second***, the defense repeatedly suggests that the First Amendment rights of journalists

and their sources are absolute.  (Def.'s Mot. at 5.)  This is not true either.  The Supreme Court

again and again has ruled the First Amendment does not confer a special status upon journalists

or those who provide them information.  Neither reporters nor their sources enjoy greater access

to information than the general public.  *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448

U.S. 555, 577 (1980) (press's access to criminal trials is coextensive with general public's).

They are not immune from governmental demands for information in their possession.  *See*

*Zurcher v. Stanford Daily*, 436 U.S. 547, 567 (1978) (government may search newsrooms);

*Branzburg v. Hayes*, 408 U.S. 665, 689–90 (1972) (reporters must comply with grand jury

subpoenas); *United States v. Sterling*, 724 F. 3d 482, 499 (4th Cir. 2013) (rejecting notion of a

reporter's privilege).  They are not entitled to steal documents, engage in illegal wiretapping, or

otherwise violate the law in pursuit of news.  *See Bartnicki v. Vopper*, 532 U.S. 514, 532 n.19

(2001); *Branzburg*, 408 U.S. at 691.

  It also is axiomatic that the press, like the general public, cannot disseminate unprotected

speech with impunity.  The First Amendment, as the Fourth Circuit has explained, does not

"insulate [a] speaker from responsibility for his actions simply because he may have

disseminated his message to a wide audience." *Rice v. Paladin Enter.*, 128 F.3d 233, 248 (4th

Cir. 1997).  The government thus may prosecute those who publish instructions on how to make

illegal drugs, *United States v. Barnett*, 667 F.2d 835, 842–43 (9th Cir. 1982), or those who

advise others how to prepare false tax forms, *United States v. Kelley*, 769 F.2d 215, 217 (4th Cir.

1985), or those who teach others how to make explosive devices for purposes of civil disorder,

*United States v. Featherston*, 461 F.2d 1119, 1122 (5th Cir. 1972).  First Amendment protection

is equally lacking for certain information pertaining to the national defense, such as "the

publication of the sailing dates of transports or the number and location of troops," which the

Supreme Court observed in *Near v. Minnesota*, 283 U.S. 697 (1931), is of a nature that "[n]o one

would question . . . a government might prevent . . . the publication of," *id.* at 716.

*Third*, academic musings as to whether the prosecution of a government employee or

contractor, like Hale, comports with the intent of the Congress that enacted the statutes may be

interesting thought exercises but are irrelevant to the case at hand.  Divining the intent of a

bicameral legislature comprised of hundreds of members is inherently difficult.  "[L]egislative

history is itself often murky, ambiguous, and contradictory," and "[j]udicial investigation of

legislative history has a tendency to become, to borrow Judge Leventhal's memorable phrase, an

exercise in 'looking over a crowd and picking out your friends.'" *Exxon Mobil Corp. v.

Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).[2]

The legislative history that Hale highlights is no different.  Relying on a law review

article's recitation of the legislative record in 1950, Hale points to statements by two U.S.

Senators and opinions penned by a congressional research service and the Attorney General as

evidence that Congress would not have wanted him prosecuted under the Espionage Act.  And,

---

[2] Internal quotations and citations are omitted throughout this Response.

in a separate motion, he contends that legislation proposed decades after the enactment of 18

U.S.C. § 641 in 1948, as well as the omission of the statute from a particular U.S. Attorney's

Manual, establishes the impropriety of this prosecution.  Yet, skepticism abounds as to whether

any of these sources is actually illuminative of congressional intent.  *See Bruesewitz v. Wyeth*

*LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is

not a legitimate tool of statutory interpretation."); *Chrysler Corp. v. Brown*, 441 U.S. 281, 311

(1979) ("[R]emarks of a single legislator, even the sponsor, are not controlling in analyzing

legislative history."); *United States v. Charleston Cty. Sch. Dist.*, 960 F.2d 1227, 1233 (4th Cir.

1992) (per curiam) ("[R]eliance upon legislators' statements and candidate speeches in divining

the intent of a legislative body is a step to be taken cautiously and the statements of individual

legislators should not be given controlling effect."); *United States v. Le*, 306 F. Supp. 2d 589,

592 (E.D. Va. 2004) (Ellis, J.) ("[I]nternal DOJ guidelines do not create any substantive or

procedural rights for a defendant.").  Indeed, reliance on such legislative history has the perverse

effect of subverting Congress's will inasmuch as they "may give unrepresentative committee

members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to

attempt strategic manipulations of legislative history to secure results they were unable to

achieve through the statutory text."  *Exxon Mobil Corp.*, 545 U.S. at 568.

      The authoritative source for understanding the reach of the charged statutes is instead the

statutory text and judicial interpretations of it.  Since 1950, Congress has amended § 793 three

times (1986, 1994, and 1996)—Pub. L. 104-294, § 607(b); Pub. L. 103-322, § 330016(1)(L) &

Pub. L. 103-359, § 804(b)(1); Pub. L. 99-399—§ 798 two times (1994 and 1996)—Pub. L. 104-

294, § 602(c); Pub. L. 103-322, § 330016(1)(L)—and § 641 three times (1994, 1996, and 2004)

—Pub. L. 108-275, § 4; Pub. L. 104-294, § 606(a); Pub. L. 103-322 § 330016(1)(H) & (L).  All

the while, these statutes have withstood repeated constitutional challenges on both vagueness and First Amendment grounds.

The Fourth Circuit itself has ruled three times that §§ 793(e) and (f) are neither unconstitutionally vague nor overbroad. *See Morison*, 844 F.2d at 1073 (rejecting vagueness and First Amendment challenges to 18 U.S.C. § 793 by a naval intelligence officer who transmitted classified satellite photographs of Soviet naval preparations to a British periodical); *United States v. Truong Dinh Hung,* 629 F.2d 908, 919 (4th Cir. 1980) (rejecting overbreadth challenge based on lack of evil intent to prove willfulness); *United States v. Dedeyan*, 584 F.2d 36, 39 (4th Cir. 1978) (rejecting vagueness and overbreadth challenges to the term "relating to the national defense" as used in § 793(f)); *see also United States v. McGuinness,* 35 M.J. 149, 152–53 (C.M.A. 1992) (rejecting a vagueness challenge to the term "unauthorized" as used in § 793(e)).

The Fourth Circuit also has rejected First Amendment and vagueness challenges to 18 U.S.C. § 641.  In *United States v. McAusland*, 979 F.2d 970 (4th Cir. 1992), the Court held the absence of a Federal Acquisition Regulation prohibiting the disclosure of confidential bidding information did not make § 641 vague as applied to the defendants' conduct given the existence "public regulations" and "unpublished [Department of Defense] regulations" that "prohibited disclosure of information in the proposals," as well as "legends" on documents "restricting disclosure" and the "[d]efendants' behavior and conduct" that "indicated they knew the disclosure was without authority," *id.* at 975.  *See also United States v. Girard*, 601 F.2d 69, 71–72 (2nd Cir. 1979); *United States v. Jeter*, 775 F.2d 670, 682 (6th Cir. 1985).

It thus is telling that Congress has not seen a need to substantially revise the statutory text of the charged statutes. *Cf. Lorillard v. Pons*, 434 U.S. 575, 580 (1978) ("Congress is presumed

to be aware of . . . judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.").

Nor has Congress amended the statutes in the face of the supposed shift in Espionage Act prosecutions from "spying" to "leakers."  (Def.'s Mot. at 16.)  This is perhaps because prosecuting the willful retention and disclosure of classified national defense information is not as novel as the defense suggests.  *See, e.g.*, *Sterling*, 724 F. 3d 482; *Morison,* 844 F.2d 1057; *United States v. Hitselberger*, 991 F. Supp. 2d 101 (D.D.C. 2013); *United States v. Kiriakou*, 898 F. Supp. 2d 921 (E.D. Va. 2012) (Brinkema, J.); *United States v. Kim*, 808 F. Supp. 2d 44 (D.D.C. Aug. 24, 2011); *United States v. Rosen*, 445 F. Supp. 2d 602 (E.D. Va. 2006) (Ellis, J.).  Indeed, the Fourth Circuit in *Morison* rejected a similar argument that a prosecution for furnishing classified documents to a periodical editor was out of step with the legislative history of the Act, finding that the drafters of the Act designed § 794, which carries higher maximum penalties than § 793, to "cover[] 'classic spying,'" 844 F.2d at 1065, whereas § 793(e) was written to "cover [the] much lesser offense" of making "disclosure[s] to *any* person 'not entitled receive' the information," *id.* at 1066.

Moreover, the defense's bifurcation of spies and leakers is dubious at best.  While spies typically pass classified national defense information to a specific foreign government, leakers, through the internet, distribute such information without authorization to the entire world.  Such broad distribution of unauthorized disclosures may actually amplify the potential damage to the national security in that every country gains access to the compromised intelligence.  A foreign military officer from Russia confirmed as much when he explained, "I was amazed—and Moscow was very appreciative—at how many times I found very sensitive information in American newspapers.  In my view, Americans tend to care more about scooping their

competition than about national security, which made my job easier."  Stanislav Lunev, *Through the Eyes of the Enemy* 135 (Regnery Publishing, Inc.) (1998).

*      *      *

In sum, this prosecution is not novel and the constitutional challenges Hale has raised have been previously raised and consistently rejected.  Hale exploited the trust the government placed in him and wantonly disclosed sensitive documents, including documents that contained classified national defense information that potentially could have damaged the nation's security.  Courts have consistently found the provisions of the Espionage Act and § 641 are neither unconstitutionally vague nor overbroad, and Hale's conduct is easily within the heartland of the charged statutes.

**ANALYSIS**

Turning to the primary arguments in Hale's Motion, he appears to raise four constitutional challenges to the charged statutes: (1) the Espionage Act charges are facially vague, (2) the Espionage Act charges are vague as applied to Hale, (3) all of the charges are prohibited by the First Amendment as applied to Hale, and (4) all of the charges are facially invalid under the First Amendment's overbreadth doctrine.  As explained below, Hale lacks standing to raise a facial vagueness challenge and all of his challenges are meritless.

**I.      The Espionage Act Charges Are Not Unconstitutionally Vague**

The void-for-vagueness doctrine is a component of the Fifth Amendment right to due process.[3]  *United States v. Williams*, 553 U.S. 285, 304 (2008).  A statute is unconstitutionally

---

[3] Hale cites to a 1972 Supreme Court decision for the proposition that a statute also can be unconstitutionally vague if it "abut[s] upon sensitive areas of basic First Amendment freedoms."  (Def.'s Mot. at 25).  Subsequent Supreme Court precedent has criticized the merging of vagueness challenges with First Amendment claims.  The former is an "outgrowth . . . of the Fifth Amendment," *Williams*, 553 U.S. at 304, and evaluating whether a law applies to a substantial amount of protected expression in the context of a vagueness challenge renders "the

8

vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* In challenging a statute on vagueness grounds, a defendant can mount an as-applied challenge—*i.e.*, an assertion that a statute is impermissibly vague as applied to him—or a facial challenge—*i.e.*, a claim that a statute is too vague to be applied to anyone, not just the defendant. Markedly, the latter challenge is unavailable to those who have engaged in "some conduct that is clearly proscribed" by the statute at issue. *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

In analyzing a vagueness challenge, courts are not to expect statutes to provide "[p]erfect clarity and precise guidance." *Williams*, 553 U.S. at 304; *United States v. Saunders*, 828 F.3d 198, 207 (4th Cir. 2016) ("[A] statute need not spell out every possible factual scenario with 'celestial precision' to avoid being struck down on vagueness grounds."). This is because, "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). As a result, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306.

It is true that a statute that "interferes with the right of free speech or of association" is subject to "a more stringent vagueness test." *Humanitarian Law Project*, 561 U.S. at 19. Still, a defendant bears the burden of demonstrating a law is unconstitutionally vague as applied to the

---

doctrines . . . substantially redundant," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 20 (2010). Hale's arguments seem to run afoul of this admonishment in that his overbreadth argument is based, in part, on a claim that some of the elements of the Espionage Act charges are unduly vague. The government, conversely, will address the issues of vagueness and overbreadth separately.

facts of his specific case, as opposed to vague in some hypothetical situation.  In other words, the

mere fact that close cases can be envisioned does not render a statute unconstitutionally vague.

Close cases are to be addressed by the requirement of proof beyond a reasonable doubt, not by

the doctrine of vagueness.  *Williams*, 553 U.S. at 305–06.  Moreover, the Supreme Court has

long held in the context of a federal statute, federal courts have a duty, if it is fairly possible, to

construe the statute to provide clarity and to avoid unconstitutional vagueness.  *See, e.g.*, *United

States v. X-Citement Video, Inc.*, 513 U.S. 64, 69 (1994).

      **A.**      **Hale Had Fair Notice that His Conduct Violated the Law**

      Fair notice of a criminal statute exists where "the accused is charged with violating a

right which has been made specific either by the express terms of the Constitution or laws of the

United States *or by decisions interpreting them*."  *United States v. Lanier*, 520 U.S. 259, 267

(1997) (emphasis added).  Here, Hale cannot credibly claim he did not have fair warning given

prevailing case law.

      As an initial matter, Hale's experience in the intelligence community nullifies any

argument Hale thought he was permitted to make unauthorized disclosures of U.S. government

documents to a journalist or the public.  The government will establish at trial that Hale signed at

least eight non-disclosure agreements with the U.S. government as a condition of him being

granted access to classified information.  These agreements imposed a number of express

limitations upon Hale, including a prohibition on communication with the press and a

requirement to submit his writings for prepublication review if they were intended for public

disclosure and contained classified information.  Hale, in other words, relinquished any rights he

might otherwise have had with respect to the classified documents entrusted to him, and such

waivers have been repeatedly upheld since at least 1980.  *See United States v. Aguilar*, 515 U.S.

593, 606 (1995) ("As to one who voluntarily assume[s] a duty of confidentiality, governmental

restrictions on disclosure are not subject to the same stringent standards that would apply to efforts to impose restrictions on unwilling members of the public."); *Snepp v. United States*, 444 U.S. 507, 509 n.3 (1980) (finding secrecy agreement with a former CIA employee enforceable and observing that "even in the absence of an express agreement . . . the CIA could have acted to protect substantial government interests by imposing reasonable restrictions on employee activities that in other context might be protected by the First Amendment."); *Alfred A. Knopf, Inc. v. Colby*, 509 F.2d 1362, 1370 (4th Cir. 1975) (holding that a government employee subject to a secrecy agreement has "effectively relinquished his First Amendment right" to publish classified information).

Nor can Hale make a convincing claim that the terms of the charged Espionage Act statutes are insufficiently clear. This is so for two reasons.

First, statutes with scienter requirements are resistant to vagueness challenges. *Saunders*, 828 F.3d at 207 ("A *scienter* requirement alone tends to defeat vagueness challenges to criminal statutes."). All of the Espionage Act provisions charged here require the government to prove at least one *mens rea*. To establish a violation of § 793(e) and § 798(a)(3), the government must prove that Hale acted willfully; a term to which the Fourth Circuit has consistently applied the same meaning. *See Morison*, 844 F.2d at 1071–72; *Truong Dinh Hung*, 629 F.2d at 919. As for § 793(c), the government must prove not one, but two scienters: Hale acted "*for the purpose*" of obtaining information respecting the national defense" and *knew* or *had reason to believe* that, at the time he acted, he would "obtain[] . . . or dispose[]" of the document contrary to another provision of the Espionage Act.[4]

---

[4] It is unclear whether Hale is claiming that the "for the purpose" language is § 793(c) is unconstitutionally vague. If he is, such an argument is unavailing. Although the government is not aware of a court analyzing "for the purpose of" in the context of § 793(c), courts have upheld

Second, the statutory terms of the charged Espionage Act provisions have well-established meaning. The Supreme Court, Fourth Circuit, and this District have consistently rejected defense arguments that the various provisions of the Espionage Act contain statutory language that is impermissibly vague. *See, e.g.*, *Gorin v. United States*, 312 U.S. 19, 27–28 (1941) (finding phrase "national defense," as used in a related espionage statute, is not unduly vague); *United States v. Ford*, 288 F. App'x 54, 56 (4th Cir. 2008) (per curiam) (restating holding in *Morison* that "[i]t is difficult to conceive of any language more definite and clear than § 793(e)'s prohibition against retention of classified information pursuant to unauthorized possession"); *Dedeyan*, 584 F.2d at 39 (finding phrase "relating to the national defense," as used in § 793(f)(2), is not "vague in the constitutional sense"); *Rosen*, 445 F. Supp. 2d at 622–23 (rejecting vagueness challenges to phrases "information relating to the national defense" and "entitled to receive" as used in § 793).[5] Hale's blanket (and unsupported) assertion that the

---

vagueness challenges to 21 U.S.C. § 856(a)(1), a similarly worded statute that makes it unlawful to knowingly open or maintain a place "for the purpose of" manufacturing, distributing, or using controlled substances. *See United States v. Clavis*, 956 F.2d 1079, 1094 (11th Cir. 1992) ("The presence of the two intent elements, 'knowingly' and 'for the purpose' does much to eliminate the contention of vagueness or unfairness in application."), *modified on other grounds by* 977 F.2d 538 (11th Cir. 1992); *United States v. Lancaster*, 968 F.2d 1250, 1253 (D.C. Cir. 1992) ("The 'casual' drug user does not run afoul of this prohibition because he does not maintain his house for the purpose of using drugs but rather for the purpose of residence, the consumption of drugs therein being merely incidental to that purpose."). Further, at least one court has declined to find as vague the even broader statutory phrase "for any other purpose." *United States v. Persichilli*, 608 F.3d 34, 39 (1st Cir. 2010) (finding the phrase "for any other purpose," as used in 42 U.S.C. § 408(a)(7)(C), to be "expansive but not at all vague" because the phrase just means that the act "must be purposeful and not inadvertent").

[5] The government is unaware of a reported case addressing the issue of whether §§ 793(c) or 798(a)(3) are unconstitutionally vague. Yet, given Hale's experience with the classification system and the similarity between those provisions and the other Espionage Act provisions that courts have analyzed, there is no reason to think that §§ 793(c) or 798(a)(3) are any less clear than §§ 793(e) or (f).

terms of the charged statutes are unconstitutionally vague fails to confront this overwhelming precedent.

Markedly, the only statutory term Hale specifically identifies as too vague is not a term but rather the "potential harm" gloss the *Morison* court imposed upon the phrase "information relating to the national defense."[6]  *See* 844 F.2d at 1076 (finding district court's instructions "reasonably narrowed" the term "national defense" by requiring proof that the disclosure concerned a matter that had been "closely held" and "would be potentially damaging to the United States or might be useful to an enemy of the United States").  Specifically, he argues the *Morison* gloss is too vague because it does not specify a quantum or likelihood of harm.  Yet, as the Fourth Circuit implicitly recognized in *United States v. Squillacote*, 221 F.3d 542 (2000), the *Morison* gloss likely is not required, *id.* at 580 n.23 (explaining that the *Morison* gloss "arguably offer[s] more protection to defendants than required by *Gorin*," a decision concluding the scienter included in the predecessor statute to the provisions at issue here defeated the argument that the statute was unconstitutionally vague).  It is nonsensical that a judicial gloss that was crafted to narrow the reach of an already clear statute somehow renders the statute unconstitutionally vague.

Hale's vagueness challenge is particularly unpersuasive in light of the documents he disclosed and his own experience in intelligence operations.  Many of the documents Hale stole

---

[6] Hale's overbreadth argument includes the claim that § 798(a)(3) violates the due process clause by making an element of the offense whether the communication intelligence activities at issue were classified.  As discussed below, the case law in the Fourth Circuit is settled on this point: courts should not "second-guess the [Executive Branch's] classification decisions."  *United States v. Kiriakou*, No. 1:12-CR-127, 2012 WL 3263854, at *6 (E.D. Va. Aug. 8, 2012) (Brinkema, J.).  If Hale thought the documents he disclosed were improperly classified, he could have challenged their status in accordance with agency procedures.  *See* Exec. Order No. 13526, 3 C.F.R. 303 (2009).  He did not.

contained highly sensitive information and were marked either SECRET, a classification level that applies to information that if lost or compromised could cause serious damage to the security of the United States, or TOP SECRET, a classification level that applies to information the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security. *See* Exec. Order No. 13526, 3 C.F.R. 298–99. Even if the classification system is not entirely accurate, as Hale claims, his training places him on notice that the government considers information contained in classified documents important to national security. *See Morison*, 844 F.2d at 1074 (rejecting vagueness challenge to § 793(d) based in part on defendant's knowledge that information was classified as "Secret"); *Dedeyan,* 584 F.2d at 40–41 (finding that a document related to the national defense based on its content, notwithstanding its improper classification); *Kiriakou,* 898 F. Supp. 2d at 925 (finding that defendant, "a government employee trained in the classification system[,] . . . could appreciate the significance of the information" within the documents and was thus sufficiently placed on notice for purposes of a vagueness challenge); *Rosen*, 445 F. Supp. 2d at 623 ("[W]hile the language of the statute, by itself, may lack precision, the gloss of judicial precedent has clarified that the statute incorporates the executive branch's classification regulations, which provide the requisite constitutional clarity."); *Hitselberger*, 991 F. Supp. 2d at 106 (similar); *Kim*, 808 F. Supp. 2d at 53 (similar).

And, of course, if Hale believes that the documents he stole were not potentially damaging to the United States, then he is free to make that argument to the jury.

**B.      The Charged Espionage Act Statutes Are Neither Standardless Nor Encourage Seriously Discriminatory Enforcement**

Hale also asserts that §§ 793(c), 793(e), and 798(a)(3) are unduly vague because they are not enforced uniformly. He claims that the number of leak prosecutions are "rare in comparison

to the frequency of classified-information leaks." (Def.'s Mot. at 27). Hale also complains that the government's prosecution of unauthorized disclosure of classified documents amounts to "viewpoint discrimination." (*Id.* at 29.) This argument is meritless, too.

The *mens rea* in the charged statutes eliminate any concern that Hale's prosecution is arbitrary. *See Gonzales v. Carhart*, 550 U.S. 124, 150 (2007) ("The scienter requirements narrow the scope of [an] [a]ct's prohibition and limit prosecutorial discretion."). And, as discussed above, numerous courts have rebuffed arguments that the terms of the statutes are so vague as to be standardless.

Further, to the extent there is a delta between the number of unauthorized disclosures in the media and the number of prosecutions for such disclosures, such a discrepancy does not mean the government's enforcement of the Espionage Act is arbitrary. Often, it is difficult, if not impossible, to determine who engaged in an unauthorized disclosure given the number of government employees with authorized access to the information. Even if the perpetrator's identity can be ascertained, charges may not be instituted if the intelligence community determines the prosecution of the unauthorized disclosure could cause more damage to the national security through official acknowledgement of the classified information rather than by simply not acknowledging it. As the *Kim* court recognized, "[t]he difficulty in establishing a violation [of the Espionage Act], combined with the sensitive nature of classified information and the procedures that must be followed in using such information in a trial, are the most likely reasons for the dearth of prosecutions." 808 F. Supp. 2d at 55. "Our justice system's reliance on prosecutorial discretion means that [a] [d]efendant cannot be set free merely because others have escaped prosecution for similar acts." *Id.*

*     *     *

15

Since 1988, the Fourth Circuit has made clear that unauthorized disclosures of classified information to the press are not protected speech and are punishable under § 793(e). *Morison*, 844 F.2d at 1068 (rejecting argument that "Congress intended to exempt 'leaks to the press'" from § 793(e) and observing that "[a]ctually we do not perceive any First Amendment rights to be implicated here"). The government entrusted Hale with access to sensitive documents, and he knowingly and willfully chose to breach that trust by making unauthorized disclosures. The plain language of the charged statutes undoubtedly apply to Hale's conduct.

**C.     Because Hale Engaged in Clearly Proscribed Conduct, He Cannot Raise a Facial Vagueness Challenge to the Charged Espionage Act Statutes**

Hale's void-for-vagueness challenge begins and ends with his as-applied vagueness challenge. Because he cannot meet his burden of establishing that §§ 793(c), 793(e), and 798(a)(3) are unconstitutionally vague as applied to his specific set of facts, he lacks standing to raise a facial vagueness challenge to those statutes. As the Supreme Court has held, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Hoffman Estates*, 455 U.S. at 495. Markedly, this "rule makes no exception for conduct in the form of speech." *Humanitarian Law Project*, 561 U.S. at 20. To hold otherwise would make the vagueness doctrine under the Due Process Clause of the Fifth Amendment and the overbreadth doctrine of the First Amendment "substantially redundant." *Id.* Accordingly, for the reasons stated in the preceding section, Hale's conduct was clearly proscribed and he cannot mount a facial vagueness challenge to the statutes.

## II.     The First Amendment Does Not Protect Hale's Theft of U.S. Government Documents

To the extent Hale is arguing §§ 793(c), 793(e), 798(a)(3), and 641 infringe upon the exercise of his First Amendment rights, this contention is easily dispensed with.

As the D.C. Circuit, sitting *en banc*, has observed, "[t]here are many federal provisions that forbid individuals from disclosing information they have lawfully obtained," including § 793(d), and "[t]he validity of these provisions has long been assumed." *Boehner v. McDermott*, 484 F.3d 573, 578 (D.C. Cir. 2007). Moreover, the Supreme Court has repeatedly sustained civil liability and criminal penalties on the disclosure of information, even if it was obtained lawfully. *See, e.g.*, *Aguilar*, 515 U.S. at 605–06 (First Amendment not a bar to conviction of federal judge under 18 U.S.C. § 2232(c) for disclosing information about wiretap he had learned from federal judge who had authorized wiretap); *Cohen v. Cowles Media Co.*, 501 U.S. 663, 670–71 (1991) (First Amendment not a defense to breach of contract brought by individual who provided information to newspaper under promise of confidentiality but whose identity was divulged by newspaper); *Snepp*, 444 U.S. at 509–10 (First Amendment not a bar to enforcement of reasonable confidentiality restrictions on former CIA employees); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) (First Amendment does not permit civil litigants to disseminate, in advance of trial, information acquired through pretrial discovery); *Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562, 575–79 (1977) (First Amendment does not shield television station from civil liability for filming and broadcasting a performance without permission even though performance occurred in a public setting).

Hale is not "simply a member of the general public who happened to lawfully acquire possession of" classified documents. *Aguilar*, 515 U.S. at 605–06. He was employed in the intelligence community, granted a clearance, and entrusted with access to classified national

defense information.  He had a duty not to misappropriate that information and he cannot use the

First Amendment to insulate his crime.  *See Boehner*, 484 F.3d at 579 ("[T]hose who accept

positions of trust involving a duty not to disclose information they lawfully acquire while

performing their responsibilities have no First Amendment right to disclose that information.");

*Morison*, 844 F.2d at 1069–70 (observing that it is "beyond controversy that a recreant

intelligence department employee who had abstracted from the government files secret

intelligence information and had wilfully transmitted or given it to one 'not entitled to receive

it' . . . is not entitled to invoke the First Amendment as a shield to immunize his act of thievery.

To permit the thief thus to misuse the Amendment would be to prostitute the salutary purposes of

the First Amendment."); *Kim*, 808 F. Supp. 2d at 57 (similar).

Hale seems to argue that his disclosures amount to a criticism of the government.  This,

too, is factually and legally wrong.  As will be shown at trial, Hale stole highly classified

information about intelligence sources and methods.  It does not appear Hale took issue with the

sources and methods of this intelligence collection, but rather how this intelligence was used by

the government.  Rather than exercising his First Amendment right to criticize the government's

actions using unclassified information, Hale decided to steal and disclose the classified

information he knew from his training could potentially damage the national security of the

United States.

Even if the documents at issue contain information that could be used to criticize the

government, the First Amendment does not permit Hale to retain and disclose them without

authorization.  The Supreme Court has made clear the First Amendment has limits.  "Speech

integral to criminal conduct" is one of the "few limited areas" in which First Amendment

jurisprudence "historic[ally] and traditional[ly]" have "permitted restrictions upon the content of

speech." *United States v. Stevens*, 559 U.S. 460, 468 (2010).  And, with respect to such speech, the Supreme Court has long rejected the notion that the First Amendment immunizes it.  *See Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949) ("But it has never been deemed an abridgment of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed."); *Frohwerk v. United States*, 249 U.S. 204, 206 (1919) ("[T]he First Amendment while prohibiting legislation against free speech as such cannot have been, and obviously was not, intended to give immunity for every possible use of language."); *Rice*, 128 F.3d at 244 ("Were the First Amendment to bar or to limit government regulation of . . . speech brigaded with action, the government would be powerless to protect the public from countless of even the most pernicious criminal acts and civil wrongs."); *accord Haig v. Agee*, 453 U.S. 280, 308–09 (1981) (holding that defendant's "repeated disclosures of intelligence operations and names of intelligence personnel" are "clearly not protected by the Constitution").

And, as noted previously, Hale expressly waived in writing his right to disclose the national security information he obtained while in his government position.  This fact, alone, is fatal to his as-applied First Amendment defense given that "[c]ourts have uniformly held that government employees who sign such nondisclosure agreements lack protection under the First Amendment." *Kim*, 808 F. Supp. 2d at 57.  And, "because prior restraints on speech are the most constitutionally suspect form of a government restriction, it follows . . . that Congress may constitutionally subject to criminal prosecution anyone who exploits a position of trust to obtain and disclose [national defense information] to one not entitled to receive it." *Rosen*, 445 F. Supp. 2d at 636; *cf. Overbey v. Mayor of Baltimore*, 930 F.3d 215, 224 n.9. (4th Cir. 2019) (distinguishing a nondisparagement clause in a settlement agreement reached in a police brutality

case, which was deemed unenforceable, from an agreement, as in *Snepp*, that permits the government "to hold a private speaker liable for the unauthorized disclosure of classified information").

The Court thus should reject any claim by Hale that the instant prosecution violates the First Amendment as applied to his conduct.

## III. The Charged Statutes Are Not Overbroad

To ensure protected speech is not chilled, the Supreme Court has developed an "overbreadth" doctrine under which "a statute is facially invalid if it prohibits a substantial amount of protected speech." *Williams*, 553 U.S. at 292. Unlike void-for-vagueness challenges, the First Amendment overbreadth doctrine "is one of the few exceptions to" the principle that "a person to whom application of a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *New York v. Ferber*, 458 U.S. 747, 767–68 (1982).

A criminal statute runs afoul of the overbreadth doctrine if its "overbreadth [is] *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. The Supreme Court has cautioned, however, against the overzealous application of the doctrine:

> The scope of the First Amendment overbreadth doctrine, like most exceptions to established principles, must be carefully tied to the circumstances in which facial invalidation of a statute is truly warranted. Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment, we have recognized that the overbreadth doctrine is strong medicine and have employed it with hesitation, and then only as a last resort.

*Ferber*, 458 U.S. at 769.  Accordingly, "the mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge."  *Williams*, 553 U.S. at 303.  Rather, the challenging party bears the burden to prove substantial overbreadth "from the text of [the law] and *from actual fact*," *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (emphasis added).

### A.     Hale Has Failed to Identify Substantial Overbreadth from the Text of the Charged Statutes or from Actual Fact

In order to assess the "legitimate sweeps" of the charged statutes, it is first necessary to understand what conduct they criminalize.  *Williams*, 553 U.S. at 293 ("[I]t is impossible to determine whether a statute reaches too far without first knowing what the statute covers.").  The conduct prohibited by the statutes, as charged in this case, can be summarized as follows:

- Section 793(c) makes it a crime for anyone, with the purpose of obtaining information respecting the national defense, to receive or obtain documents connected with the national defense, and knowing or having reason to believe at the time he received or obtained them they had been (or would be) obtained, taken, made, or disposed of contrary to law.

- Section 793(e) makes it a crime for anyone with unauthorized possession of, access to, or control over a document relating to the national defense to willfully: (1) retain that document and fail to deliver it to an officer or employee of the United States entitled to receive it; (2) communicate, deliver, or transmit such a document to a person not entitled to receive it; or (3) cause such a document to be communicated, delivered, or transmitted to a person not entitled to receive it.

- Section 798(a)(3) makes it a crime for anyone to knowingly and willfully communicate, furnish, transmit, or otherwise make available to an unauthorized person information that is classified and concerns the intelligence activities of the United States or any foreign government.

- Section 641 makes it a crime for anyone to, without legal authorization, knowingly convey or dispose of a record or thing of value that belongs to the United States and has a value that exceeds $1,000.

As with the void-for-vagueness analysis, the presence of a scienter requirement in each of the charged statutes defeats Hale's overbreadth challenge.  "[T]he Supreme Court has made it clear that a strict *mens rea* is a key factor in policing overbreadth and ensuring that [the] 'unwitting' . . . are not punished for protected speech."  *United States v. Tagg*, 886 F.3d 579, 589 (6th Cir. 2018); *see also Williams*, 553 U.S. at 294 (declining to find a statute criminalizing the pandering or solicitation of child pornography was overbroad, in part, because it "include[d] a scienter requirement"); *United States v. Chappell*, 691 F.3d 388, 399 (4th Cir. 2012) (finding that a "*mens rea* requirement [can] . . . properly limit[] the scope of [a] statute and thereby undercut[] [a defendant's] claim of substantial overbreadth").  Here, the statutes' requirements of willful or knowing conduct place upon the government high scienter burdens.

Further, it is evident from the plain language of these statutes that their "legitimate sweeps" are immense.  They criminalize theft of our nation's secrets—*i.e.*, national defense information, classified signals intelligence information, and other sensitive information valued at more than $1,000—by the very people entrusted to protect them.  They also criminalize misappropriation of such information by those who are outside the government.  These statutes are narrowly and sensibly tailored, however, to punish only those who act with the requisite criminal intent.  *See Morison*, 844 F.2d at 1073 ("We find no basis in this case for the invalidation of the statutes for either vagueness or overbreadth or for voiding the defendant's conviction under 793(d) and (e)."); *Truong Dinh Hung*, 629 F.2d at 919 (upholding § 793(e) against an overbreadth challenge in light of willfulness requirement); *United States v. Drake*, 818

F. Supp. 2d 909, 921 (D. Md. 2011) (affirming *Morison*'s holding that § 793(e) is not

overbroad); *Rosen*, 445 F. Supp. at 643 (rejecting overbreadth challenge to §§ 793(d) and (e)).

Hale claims that the charged statutes criminalize activity that amounts to the freedoms of

speech, press, and the right to petition the government.  Yet, he has failed to carry his burden of

proving there are a substantial number of unconstitutional applications of the statutes.  Hale

provides no "actual fact[s]" in support of his overbreadth arguments, which is fatal to his claim.

*Cf. Chappell*, 691 F.3d at 396 ("The statute's legitimate sweep is considerable, and it is difficult

to show a 'substantial' number of unconstitutional applications when appellant does not point to

even one, at least not to one that actually took place.").

The charged statutes do not curtail the First Amendment rights of people, like Hale, who

have been granted access to classified information.  Such individuals still can publically criticize

the government or report allegations of waste, fraud, and abuse.  *See United States v. Marchetti*,

466 F.2d 1309, 1317 (4th Cir. 1972); *Drake*, 818 F. Supp. 2d at 920.  They just cannot disclose

classified documents or information in the process of exercising those rights, which is a

reasonable limitation given the government's "compelling interest in protecting both the secrecy

of information to our national security and the appearance of confidentiality so essential to the

effective operation of our foreign intelligence service." *Snepp*, 444 U.S. at 509 n.3; *United*

*States v. Gowadia*, No. Crim 05-00486, 2006 WL 2520599, at *4 (D. Haw. Aug. 28, 2006)

("[D]efendant does not have a First Amendment right to communicate classified national defense

information."); *see also Haig*, 453 U.S. at 308–09 (finding no First Amendment violation where

government revoked passport of a former CIA employee due, in part, to his disclosure of

intelligence operations and names of intelligence personnel).

There also is no question that these statutes can be constitutionally applied to those outside of the government, such as members of the press.  For example, §§ 793(c), 793(e), and 641 could be constitutionally applied to punish journalists who steal classified information. Journalists, like everyone else, do not have a First Amendment right to steal documents.  *See Bartnicki*, 532 U.S. at 532 n.19 (observing that the First Amendment does not "confer[] a license on either the reporter or his news sources to violate criminal laws"); *Cohen*, 501 U.S. at 669 ("The press may not with impunity break and enter an office or dwelling to gather news."); *Branzburg*, 408 U.S. at 691 ("Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of news."); *Zemel v. Rusk*, 381 U.S. 1, 17 (1965) (observing that the First Amendment "right to speak and publish does not carry with it the unrestrained right to gather information" such that "the prohibition of unauthorized entry into the White House diminishes the citizen's opportunities to gather information he might find relevant to his opinion of the way the country is being run, but that does not make entry into the White House a First Amendment right"); *cf. Smith v. Daily Mail Publishing Co.*, 443 U.S. 97, 103 (1979) (construing earlier decisions to "suggest strongly that if a newspaper *lawfully* obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need to further a state interest of the highest order" (emphasis added)).

The same is true of § 798(a)(3).  It prohibits the knowing and willful dissemination of a distinct type of information: the highly sensitive activities of the United States relating to the procedures and means by which communications are intercepted.  Such information is on par with the types of speech the Supreme Court has recognized are categorically outside the First

Amendment.  *See Haig*, 453 U.S. at 308–09 ("[R]epeated disclosures of intelligence operations and names of intelligence personnel" are "clearly not protected by the Constitution."); *Near*, 238 U.S. at 716 ("No one would question but that a government might prevent . . . the publication of the sailing dates of transports or the number and location of troops.").  Accordingly, there are a substantial number of constitutionally permissible applications of § 798(a)(3).

In short, there is a "well-established line of decisions holding that generally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news."  *Cohen*, 501 U.S. at 669.  This is particularly true in the context of a statute like § 793(e) that is not a "pure speech" provision but rather "one which [is] in the shadow of the First Amendment."  *Morison*, 844 F.2d at 1073.  The First Amendment simply is "no bar to the imposition of civil (or criminal) liability for speech acts which the plaintiff (or the prosecution) can establish were undertaken with specific, if not criminal, intent."  *Rice*, 128 F.3d at 248; *see also* T.S. Ellis III, *National Security Trials: A Judge's Perspective,* 99 Va. L. Rev. 1607, 1625 (2013) ("[N]either journalists nor anyone else has a First Amendment right to receive unauthorized disclosures of [national defense information] or to make unauthorized disclosures of NDI to foreign governments, sympathetic journalists, or indeed anyone.").

Hale speculates the charged statutes chill the publication of information that is over-classified, either because it is merely embarrassing or no longer is worthy of classification.  But, again, he fails to identify any specific instance of the government prosecuting someone for disclosing information that was merely embarrassing or no longer met the definition of classified or national defense information.  Moreover, "perceived failures of the classification system" are irrelevant "to the constitutional analysis."  *United States v. Kiriakou*, 2012 WL 3263854, at *6.

This is because "courts . . . are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classification . . . ." *El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007).  "[W]hat may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned items of information in its proper context." *Id.*

*       *       *

In sum, Hale has not made a sufficient showing that the statutes at issue reach a substantial amount of constitutionally protected activity.  If there are applications of the charged statutes that infringe upon First Amendment rights, then they can be remedied through as-applied challenges.  But, the legitimate reach of the statutes "dwarfs its arguably impermissible applications," and the number of hypothetical inappropriate applications amount to, at most, no more than "a tiny fraction of the [instances] within the statute's reach."  *Ferber*, 458 U.S. at 773. This Court thus should not apply the "strong medicine" of a wholesale invalidation of the statutes.

### B.       There Is No Basis for Overriding Long Standing Precedent Upholding the Constitutionality of 18 U.S.C. § 793(e) and § 641

If the Court were to agree with Hale that the statutes are overbroad, it would have to disregard long-standing precedent in this Circuit at least with respect to §§ 793(e) and 641. There is no basis, however, for doing so.

Early decisions involving the espionage statutes declined to extend any First Amendment protection to the conduct prohibited therein.  *See Schenck v. United States*, 249 U.S. 47 (1919); *Abrams v. United States*, 250 U.S. 616 (1919).  Then, in *Morison*, the Fourth Circuit considered an overbreadth challenge to §§ 793(d) and (e) and articulated three circumstances in which the overbreadth doctrine could be applied properly: (1) when the governmental interest sought to be

26

implemented is too insubstantial or insufficient in relation to the curtailing of First Amendment freedoms; (2) when the means employed had little relation to the asserted governmental interest; and (3) when the means employed do relate to a substantial governmental interest but less drastic means could have been used to achieve that interest.  844 F.2d at 1075.  The Fourth Circuit found the statutes at issue did not fall into the first two categories and the latter category did not apply because the district court's instructions "reasonably narrowed" the terms "national defense" and "one not entitled to receive" so as to "remove[] any legitimate overbreadth objection."  *Id.* at 1076. Multiple district courts in this Circuit have subsequently affirmed the force of this precedent.  *See Kiriakou*, 2012 WL 3263854, at *8 (refusing to "reconsider the precedent set in *Morison* and *Rosen*"); *Drake*, 818 F. Supp. 2d at 922 (finding no reason to override "clear precedent in this circuit that Section 793(e) is neither unconstitutionally vague nor overbroad"); *Rosen*, 445 F. Supp. 2d at 643 ("So construed, the statute is narrowly and sensibly tailored to serve the government's legitimate interest in protecting the national security, and its effect on First Amendment freedoms is neither real nor substantial as judged in relation to this legitimate sweep.").

Although the government is unaware of a reported case addressing an overbreadth challenge to § 793(c), application of the *Morison* gloss to § 793(c) also would cure any perceived overbreadth.

As for § 641, the Fourth Circuit, joining with the Second and Sixth Circuits, has held that the "'statute's plainly legitimate sweep in regulating conduct . . . is not so substantially overbroad that any overbreadth that may exist cannot be cured on a case by case basis.'" *McAusland*, 979 F.2d at 976 (quoting *Girard*, 601 F.2d at 72, and citing *Jeter*, 775 F.2d at 682).

Hale has not identified a subsequent decision that calls the foregoing precedent into doubt.  Although he highlights a number of recent Supreme Court decisions, they are easily distinguishable from the case at hand.  *United States v. Stevens*, 559 U.S. 460 (2010), concerns whether animal cruelty videos are categorically unprotected speech, *Citizens United v. FEC*, 558 U.S. 310 (2010), is about restrictions on political speech by corporations, *Texas v. Johnson*, 491 U.S. 397 (1989), is about the legality of flag burning, and *Snyder v. Phelps*, 562 U.S. 443 (2011), arises from a civil suit filed against a group of picketers who had displayed offensive signs.  In short, none of these decisions purports to address the limits of the First Amendment in the context of national security.

Further, none of the decisions identified by the defense expressly repudiates existing Supreme Court or Fourth Circuit jurisprudence regarding the government's legitimate interest in protecting the nation's security.  Accordingly, even if *Stevens*, *Citizens United*, *Johnson*, or *Snyder* could be viewed as being inconsistent with older First Amendment jurisprudence—like *Gorin*, *Near*, or *Haig*—lower courts may not presume Supreme Court precedent is overruled by implication.  *See Agostini v. Felton*, 521 U.S. 203, 237 (1997); *United States v. Danielczyk*, 683 F.3d 611, 615 (4th Cir. 2012); *see also Scheiber v. Dolby Labs., Inc.*, 293 F.3d 1014, 1018 (7th Cir.2002) (an appellate court has "no authority to overrule a Supreme Court decision no matter . . . how out of touch with the Supreme Court's current thinking the decision seems.").  Most importantly, this Court is bound by *Morison* as it is directly applicable, controlling Fourth Circuit precedent that itself is premised on *Gorin*.

## CONCLUSION

Hale used his access to classified national defense information to engage in brazen theft. His unauthorized disclosures put our country at risk for harm, and neither the First nor Fifth Amendment excuses his conduct.  For the reasons stated, we ask the Court to deny Hale's Motion to Dismiss the Indictment.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:                 /s/

Alexander P. Berrang
Gordon Kromberg
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: Alexander.P.Berrang@usdoj.gov
Email: Gordon.Kromberg@usdoj.gov

By:                 /s/

Heather M. Schmidt
Senior Trial Attorney
National Security Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Tel.: (202) 233-2132
Fax: (202) 233-2146
Email: Heather.Schmidt@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2019, I electronically filed the foregoing

GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE

INDICTMENT with the Clerk of Court using the CM/ECF system, which will send a

notification of such filing (NEF) to counsel of record.


                                                                           /s/

Alexander P. Berrang
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: (703) 299-3700
Fax: (703) 837-8242
Alexander.P.Berrang@usdoj.gov