**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **No. 1:19-cr-59** |
| v. | ) | |
| | ) | **Hon. Liam O'Grady** |
| **DANIEL EVERETTE HALE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>REPLY IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT</u>

The government's opposition to Mr. Hale's Motion to Dismiss the Indictment makes compelling, well-supported and legally persuasive arguments in response to several points the Motion does not make.  When the government responds to the substance of the Motion, its arguments consistently lack those qualities.

The principal fallacy in the government's response is its near total reliance on the existence of scienter elements in the charged statutes to save them from their facial ambiguities and overbreadth.  The government argues, for example, that "the presence of a scienter requirement in each of the charged statutes" establishes that "[t]hese statutes are narrowly and sensibly tailored . . .  to punish only those who act with the requisite criminal intent."  Opp. (dkt. # 73) at 22.  This  ignores the purpose of narrow tailoring, which is to require that statutes touching upon protected First Amendment activity are designed to achieve a compelling government interest without criminalizing more conduct than necessary to achieve that interest. Requiring intent is beside the point.  A statutory element requiring intent to burn a

flag in violation of a ban on flag burning, for example, would not make such a ban any less unconstitutional.  The government's nearly exclusive reliance on *mens rea* as a supposed cure-all for constitutional infirmities infects all of its arguments. Accordingly, for the reasons stated in the Motion to Dismiss, and further explained below, the Superseding Indictment should be dismissed.

## ARGUMENT

### I.     The Government is Wrong with Respect to all Three of Its Preliminary Points

The government begins by "dispens[ing] with three claims Hale weaves into his Motion."  Opp. at 2.  It is wrong with respect to all three.

*First,* the government asserts that the Motion to Dismiss misconstrues Count One of the Superseding Indictment.  As will be shown in greater detail in defendant's forthcoming motion to compel production of grand jury materials, it appears that the government is positing a different construction of Count One than the grand jury obviously intended (and was likely instructed).  The Grand Jury Clause of the Fifth Amendment, however, prohibits the government from putting a different offense before the trial jury than that on which the grand jury indicted.  *See Stirone v. United States*, 361 U.S. 212, 218-19 (1960) (fatal variance occurred where trial jury convicted based on interference with commerce in steel, but grand jury had indicted based on commerce in sand); *United States v. Floresca,* 38 F.3d 706, 710-14 (4th Cir. 1994) (*en banc*) (same, where trial jury convicted under different subsection of witness tampering statute than that under which grand jury had indicted); *United States v. Ameyapoh*, 293 F.Supp.3d 568, 572-75 (E.D.Va. 2018) (TSE) (same, where trial jury

convicted for assault on a CBP officer but indictment specified assault on an ICE officer).  Accordingly, production of the government's presentation to the grand jury with respect to Count One will be necessary to assure that Mr. Hale is not put to trial on a different offense than that on which he was indicted.

The evidence that the government is changing theories on Count One is abundant.  A plain reading of the Indictment as a whole makes clear what it charges: that Mr. Hale obtained national defense information ("NDI") knowing that a reporter would later obtain that same NDI in violation of the Espionage Act.  And that is what Count One charges: obtaining NDI knowing that it had been or would be obtained by any person in violation of the Act.  The government now contends, however, that the second part of the charge (that the NDI had been or would be obtained, taken, made or disposed of by any person in violation of the Act) refers to Mr. Hale's own conduct. Specifically, the government says, Count One charges that he obtained the NDI knowing that he would "dispose of" it in violation of the Act by giving it to the reporter. Opp. at 3.  By this reading, the government assures the Court, "it is Hale's conduct, not a journalist's, that is at issue in Count One."  *Id.*  That reading, however, is inconsistent not only with a plain reading of the indictment but with the language of Count One and of the underlying statute.  That is clear by looking to the four verbs charged in that portion of Count One – "obtained, taken, made or disposed of."  Those are the four operative verbs in the relevant portion of the charged statute.  *See* 18 U.S.C. § 793(c).

The government now claims that those verbs refer to what Mr. Hale himself did, by communicating the NDI to a reporter in violation of § 793(e), after first obtaining the NDI.  Opp. at 3; *see also* Opposition to Motion for Bill of Particulars (dkt. # 68) at 7 (claiming that the "any person" referred to in Count One is Mr. Hale, and that the object offense alleged in Count One is Mr. Hale's alleged violation of § 793(e)).  But the verbs in § 793(e) are not violated by obtaining, taking, making or disposing of NDI.  Rather, § 793(e) criminalizes "communicating," "transmitting" or "delivering" NDI.  The government attempts to shoehorn Mr. Hale's alleged transmission of documents to the reporter into an allegation that he "disposed of" the documents by giving them to the reporter.  Opp. at 3.  This defies common sense, for several reasons.  As an initial matter, the drafters of § 793 used the verb "disposed of" in Subsection (c), but the verbs "communicate, deliver or transmit" in subsection (e).  Had they intended the term "disposed of" to mean a communication, delivery or transmission, it stands to reason that they would simply have used the same verbs in the different subsections.  Moreover, nowhere does the Indictment charge any conduct that could fairly be construed as Mr. Hale having "disposed of" the NDI he obtained.  Communicating it to another person, which is what the indictment alleges, is simply not synonymous with disposing of it.  No one would say, for example, that by texting a photo to a friend, or sharing a document by email, one had "disposed of" the photo or document.  But that is what the government now contends Count One means.  Its alleged reading is nonsensical and almost certainly contrary to what the grand jury indicted on in Count One.

*Second,* the government takes issue with the defendant's supposed claim that the First Amendment rights of journalists and their sources are "absolute." Opp. at 3. This is tilting at windmills. Tellingly, the government does not quote the word "absolute" from the Motion to Dismiss because the defense never argued that First Amendment rights of journalists and their sources are absolute. Rather, the motion argues that where legislation inhibits or chills freedoms protected by the First Amendment, the legislation must be narrowly tailored to achieve a compelling government interest. There is a difference between arguing for compliance with a balancing test and arguing for an "absolute" constitutional right. The government has no meaningful response to the claim that the Espionage Act provisions charged here are not narrowly tailored to achieve a compelling government interest, so it takes on and soundly defeats an argument about the "absolute" nature of the First Amendment that the defense never made.

*Third,* the government argues that whether Congress intended the statutes at issue here to apply to defendants like Mr. Hale is "interesting" but "irrelevant." Opp. at 4. Again, the government is wrong. When a federal court "construes a statute, it is explaining its understanding of what the statute has meant continuously since the date when it became law." *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 313 n.12 (1994). In other words, the meaning of a federal statute, both civil and criminal, is tied to what the statute meant at the time of enactment. That explains why, for example, the Supreme Court looks to dictionaries and other writings that date to the time that a statute was enacted to determine the meaning of statutory terms. *See,*

*e.g., Whitfield v. United States*, 135 S. Ct. 785, 788 (2015) (looking to dictionaries, newspapers, and other writings dating to 1934, when statute was enacted, to discern the meaning of the word "accompany").

And in the case of the Espionage Act provisions charged here, the government and the Fourth Circuit have both acknowledged that the language of the statute itself does not answer all the relevant questions. *See* Opp. at 1 n. 1 (citing *Morison*'s narrowing of the statutory term NDI).[1] That is because the facial breadth of the statue is absurd. For example, without *Morison*'s gloss on the term NDI, anyone who publishes a story about a public congressional hearing relating to the military would be communicating NDI in apparent violation of the Act. *See* § 793(d). Accordingly, there can be no disputing that courts must go beyond the plain statutory language to interpret the Espionage Act. Nor can there be any legitimate dispute that congressional intent with respect to the provisions at issue here is dispositive as to that interpretation, and that legislative history can provide strong evidence of congressional intent. *See, e.g., Stiltner v Beretta U.S.A. Corp.*, 74 F.3d 1473, (4th Cir. 1996) (if plain language of statute is unclear, court must determine congressional

---

[1] The government later suggests that *Morison's* gloss may be unnecessary, citing dicta in *United States v. Squillacote*, 221 F.3d 542, 580 n.23 (2000), suggesting that the gloss on the term NDI is "arguably" unnecessary. Opp. at 13. This argument reveals the danger of relying on dicta. *Squillacote* relied in that passage on *Gorin's* observation about the scienter requirement before it, which assured that the provisions at issue in *Gorin* did not sweep within their ambit innocent or protected conduct. But *Gorin* involved the "classic spying" offenses, which require that one act with knowledge that the NDI "is to be used" to harm the United States. *See Gorin v. United States*, 312 U.S. 19, 27-28 (1941). The statutes charged here require no such wrongful intent – they merely require that one be aware that the Executive Branch seeks to prohibit one's conduct.

intent by reference to legislative history and other rules of statutory construction). On that point, other than wrongly claiming that legislative intent is irrelevant – and unremarkably observing that congressional intent can be difficult to discern – the government never substantively disputes the voluminous evidence of congressional intent set forth in the Motion to Dismiss. Reviewing that history is not just an "interesting thought exercise," but necessary to understanding the lawful scope of the provisions charged here.

## II.    The Espionage Act Provisions Charged Here Are Unconstitutionally Vague

The government never disputes that the Espionage Act provisions charged here, even as judicially modified, require no more than a minimal but conceivable risk that the unauthorized communication of the information at issue could cause some *de minimis* amount of harm to national security. By never challenging or grappling with that reality, the government effectively concedes that a conviction under those provisions requires no more. The starting point for this Court's vagueness analysis, then, should be whether a statute that requires so little to cabin the type of speech or press activity it restricts implicates any of the concerns addressed by the void-for-vagueness doctrine. *See* Motion to Dismiss (dkt. # 53) at 25 (vagueness requires invalidation where statute fails to provide notice of what conduct is proscribed, permits arbitrary enforcement, and/or chills protected First Amendment activity).

The government's principal response is that the *mens rea* element of each offense resolves any vagueness concern. *See* Opp. at 11. But the presence of a *mens*

*rea* element, in the face of statutory overbreadth, does little to resolve vagueness concerns. That is because the *mens rea* required by these statutes (knowledge that the Executive seeks to prohibit disclosure of information it marks secret) does nothing to diminish vagueness. All the government needs to show to establish willfulness is that the defendant knew the government sought to keep the information secret, which provides no way of determining the outer limit of what information the government may lawfully keep secret.

For example, were the government to improperly classify evidence of a military bribery scandal solely to shield high-ranking officers from prosecution, a reporter who learned of the improper classification would be on notice that the government considered publication of the information criminal, and would therefore act "willfully" in publishing it. In that case, a prosecution would succeed as long as the government could identify *any conceivable risk of minimal harm* that would result from disclosure – such as a claimed but minimal decrease in military readiness that would be occasioned by the wrongdoers' incarceration.[2] In other words, because the *mens rea* required under these statutes is merely knowledge of a prohibition, as opposed to an intent to engage in inherently wrongful conduct, the presence of *mens rea* does

---

[2] The statutes at issue here are, for this reason, similar to the "habitual drunkard" statutes invalidated by the *en banc* Fourth Circuit in *Manning v. Caldwell*, 930 F.3d 264 (4th Cir. 2019) (*en banc*). Those statutes first required an interdiction proceeding to declare a person subject to the law before criminal prohibitions could apply – so there was no question of notice – but the court still found the prohibitions void for vagueness because they specify "*no* standard of conduct." 930 F.3d at 278. And importantly, the *Manning* court did not determine whether the conduct of the individual plaintiffs before it could lawfully be proscribed, but invalidated the statutory scheme for its facial vagueness regardless.

nothing to resolve the vagueness concerns raised in the Motion to Dismiss.  This is exactly the kind of result that Due Process and First Amendment jurisprudence so jealously guards against.

Moreover, as argued in more detail in Defendant's Reply in support of his Motion to Dismiss for Selective or Vindictive Prosecution (filed provisionally as classified), it appears that arbitrary enforcement – one of the risks of a vague criminal prohibition – is exactly what occurred here.  Specifically, the FBI repeatedly characterized its investigation in this case as an attempt to identify leakers who had been "inspired" by a specific individual – one whose activity was designed to criticize the government by shedding light on perceived illegalities on the part of the Intelligence Community.  In approximately the same timeframe, other leakers reportedly divulged classified information to make the government look *good* – by, for example, unlawfully divulging classified information about the search for Osama Bin Laden to the makers of the film *Zero Dark Thirty,* resulting in two separate Inspector General investigations.[3]  Yet the investigation in this case was not described as a search for leakers *generally*, or as a search for leakers who tried to glorify the work of the Intelligence Community.  Rather, it was described as a search for those who disclosed classified information because they had been "inspired" to divulge improprieties in the intelligence community.  This is concrete evidence that the

---

[3] *See* Jason Leopold and Ky Henderson, *Tequila, Painted Pearls, and Prada — How the CIA Helped Produce 'Zero Dark Thirty,'* Vice News, Sept. 9, 2015, *available at* https://www.vice.com/en_us/article/xw3ypa/tequila-painted-pearls-and-prada-how-the-cia-helped-produce-zero-dark-thirty (last accessed Oct. 10, 2019).

statutes at issue here allow the government *carte blanche* to engage in the sort of viewpoint-based prosecution that the Due Process Clause forbids.

Accordingly, the statutes charged here are unconstitutionally vague because the inchoate, unquantified harm necessary to sustain a conviction implicates all the dangers that animate the Due Process void-for-vagueness doctrine.

## III.   The Facial Overbreadth of the Provisions Charged Here Chills Core First Amendment Activity

When the government finally responds (at pp. 20-26) to the core argument in the Motion to Dismiss – First Amendment overbreadth – it again directs the Court principally to scienter.  Opp. at 22.  The existence of a scienter element, the government says, assures that the "unwitting" are not criminalized, thus accomplishing the "narrow[] and sesibl[e] tailoring" that the First Amendment requires.  *Id.*  But, again, the government's over-reliance on scienter results in it responding to an argument the defense has not made.

The chilling effected by the Espionage Act provisions charged here is not ameliorated by the scienter provisions, which ultimately require only that one know of the Executive's demand for secrecy.  That is, anyone who communicates information the government declines to declassify is guilty of acting with the requisite scienter.  And if the government *ever* misuses the classification system to shield unlawful or improper conduct, the Espionage Act statutes, even as judicially modified, leave journalists open to prosecution for communicating that government malfeasance to the public.  If one assumes that press activity is protected by the First Amendment where the public's need for the information is great and any potential

harm to national security is both remote and slight, then the statutes unambiguously chill protected First Amendment activity.  That is because journalists have no protection from prosecution under these provisions, save from prosecutorial discretion, even in the case of what would appear to be obviously protected activity. *See United States v. Stevens*, 559 U.S. 460, 480 (2010) ("the First Amendment . . . does not leave us at the mercy of noblesse oblige.  We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly.").

As set forth in the Motion to Dismiss, and expanded upon by the Reporters' Committee for Freedom of the Press in its amicus brief, these statutes are now used regularly in matters that chill protected activity, such that prosecutions that were unheard of when *Morison* was decided are now commonplace.  This renders moot *Morison's* examination of these issues.  The government does not appear to dispute that the test for invalidation under the overbreadth doctrine turns on historical evidence, but argues that the recent spate of media-leak prosecutions "is not as novel as the defense suggests," Opp. at 7, *by citing cases from the recent spate of media-leak prosecutions.  Id.* (citing cases from 2006, 2011, 2012 and 2013).  In other words, the government claims, prosecuting media leakers is not a recent development because the government has been doing it recently.  That the government resorts to such smoke-and-mirror arguments is telling.  The bottom line is that the historical evidence has substantially changed, and the overbreadth doctrine requires an analysis of that evidence, meaning that *Morison* does not control.

## CONCLUSION

For all the foregoing reasons, and those in the Motion to Dismiss and the amicus brief, the Superseding Indictment should be dismissed.

Respectfully Submitted,

DANIEL EVERETTE HALE
By Counsel,

Geremy C. Kamens
Federal Public Defender


                        /s/
Todd M. Richman
Va. Bar No. 41834
Cadence A. Mertz
Va. Bar No. 89750
Counsel for Mr. Hale
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0845
Facsimile: (703) 600-0880
Todd_Richman@fd.org

-13-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 11, 2019, I filed the foregoing via the CM/ECF system, which will electronically serve a copy upon all counsel of record.

           /s/

Todd M. Richman
Va. Bar No. 41834
Counsel for Mr. Hale
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0845
Facsimile: (703) 600-0880
Todd_Richman@fd.org
