IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:19cr59 |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL EVERETTE HALE, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S CONSOLIDATED REPLY TO DEFENDANT'S RESPONSE TO
MOTIONS CONCERNING CHALLENGES TO CLASSIFICATION AND
TO EXCLUDE CERTAIN EVIDENCE, ARGUMENT, OR COMMENT AT TRIAL

I.  Proper Classification of a Document is Not an Element of 18 U.S.C. § 798

Defendant Hale argues he should be permitted to probe whether the classified information at issue in the 18 U.S.C. § 798 charge was properly classified. He should not.

Based on the statutory language, to prove the charged information was in fact classified, the government must prove that "at the time of [the] violation," the information was "specifically designated by a United States Government Agency for limited or restricted dissemination or distribution." 18 U.S.C. 798(b). Whether the documents at issue in the Section 798 charge were properly classified is not an element of the crime. *United States v. Boyce*, 594 F.2d 1246, 1251 (9th Cir. 1979). "Under Section 798, the propriety of the classification is irrelevant. The fact of classification of a document or documents is enough to satisfy the classification element of the offense." *Id*.

*Boyce* is consistent with judicial interpretations of 50 U.S.C. § 783, another criminal statute that has the same "classified information" element as § 798.  For example, in *United States v. Fondren,* 417 Fed.Appx. 327 (4th Cir. 2011), the Fourth Circuit denied the appeal of a defendant convicted before Judge Hilton for disclosing classified information, in violation of 50 U.S.C. § 783.  In that case (and *citing Boyce*), Judge Hilton wrote that, "[w]hen proving the unlawful passage of classified materials, the fact of classification of a document or documents is enough to satisfy the classification element of the offense." *Fondren v. United States*, 63 F.Supp.3d 601, 608 (E.D. Va. 2014).[1]  As Judge Hilton concluded, Fondren "simply cannot defend himself from charges of illegally transmitting a classified report by arguing that the information should not have been classified."  *Fondren*, 63 F.Supp.3d at 608.

Judge Hilton's decision in *Fondren* followed the decision of the D.C. Circuit in *Scarbeck v. United States*, 317 F.2d 546 (D.C. Cir. 1962).  In *Scarbeck*, the D.C. Circuit held the government was not required to establish the propriety of a classification determination for purposes of 50 U.S.C. § 783, holding that the executive's determination is not reviewable as part of the criminal prosecution.  *Id*. at 557-560.  And, in *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980), the Fourth Circuit affirmed Judge Bryan's adoption of *Scarbeck'*s reasoning.

Truong Dinh Hung was charged with violating multiple statutes, including 18 U.S.C. § 793(e), and conspiracy to violate 50 U.S.C. § 783.  Truong and his co-defendant, Ronald Humphrey, challenged the propriety of the classification of the documents at issue.  Judge Bryan denied the motion.  Upon their convictions, the defendants appealed.  The Fourth Circuit affirmed Judge Bryan's rulings, writing "Most of their contentions were answered adequately in

---

[1] Internal quotations and citations are omitted throughout this pleading.

*Scarbeck v. United States*, 317 F.2d 546 (D.C.Cir.1962)." *Truong Dinh Hung,* 6229 F.2d at 920. By adopting the reasoning of *Scarbeck*, the Fourth Circuit instructed that defendants are barred from arguing that classified information was not classified properly.

As Judge Brinkema wrote, because "the classification system is the purview of the executive branch," courts should not "second-guess" the executive branch's decisions as to whether documents should be classified as "Secret" or "Top Secret." *United States v. Kiriakou*, No. 1:12-CR-127, 2012 WL 3263854, at *6 (E.D. Va. Aug. 8, 2012). This is so because courts are "ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area." *El Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007). Further, courts must avoid second-guessing an intelligence agency's decision to classify information "because they have only a limited knowledge of foreign intelligence matters." *United States v. Snepp*, 897 F.2d 138, 141 n.2 (4th Cir.1990).

In light of these principles, the Court in *Scarbeck* found the review of classified information by a jury to be an "absurdity," where a the defendant, a junior officer, could

> present proof that his superior officer had no justification for classifying the document, and c[ould] obtain an instruction from the court to the jury that one of their duties [wa]s to determine whether the document, admittedly classified, was of such a nature that the superior was justified in classifying it. The trial of the employee would be converted into a trial of the superior. The Government might well be compelled either to withdraw the prosecution or to reveal policies and information going far beyond the scope of the classified documents transferred by the employee. The embarrassments and hazards of such a proceeding could soon render [50 U.S.C. § 783] an entirely useless statute.

*Scarbeck*, 317 F.2d at 559-60. For the same reasons, this Court too should grant the government's motion in limine, and prevent the defense from questioning at trial whether the information at issue was properly classified.

3

      A.    *Villareal Silva* Does Not Support Any Conclusion that the
Court Should Review the Executive Branch's Classification Determinations

To support his argument that he should be able to probe whether information was properly classified, Hale relies on *United States v. Villarreal Silva*, 931 F.3d 330 (4th Cir. 2019) (Def. Mot. at 6, Dkt. 72.) In *Villarreal Silva*, the Court found that 8 U.S.C. § 1225(b)(1)(D), which permitted U.S. immigration officers to order individuals removed from the U.S. without an appeal, was unconstitutional, as applied in the context of 8 U.S.C. § 1326(a). *Id*. at 332-33.

According to Hale, in *Villareal Silva,* "the Fourth Circuit recently reiterated, when an ***[administrative determination]*** is alleged to be an element in a criminal prosecution, the defendant in that prosecution must, as a matter of due process, be able to challenge the elements … if he did not have a prior opportunity to do so." (Def. Mot. At 6, Dkt. 72) (emphasis added; "[administrative determination]" appeared in Hale's original pleading). In fact, the Fourth Circuit reiterated no such principle. Indeed, it has never "iterated" such a principle in the first place. To the contrary, the only reason that *Villareal Silva* even purports to support Hale's argument is that Hale engaged in a strategic redaction of what the Fourth Circuit actually wrote in that decision.

What the Fourth Circuit actually wrote in *Villareal Silva* was quite different from the spin that Hale put on it, by replacing the Fourth Circuit's words with his own. What the Fourth Circuit *actually* wrote was that, when an *expedited removal* is alleged to be an element in a criminal prosecution, the defendant must be allowed to challenge the validity of the removal:

> We conclude that when an ***expedited removal*** is alleged to be an element in a criminal prosecution, the defendant in that prosecution must, as a matter of due process, be able to challenge the element – *i.e.,* to contend that the removal was invalid – if he did not have a prior opportunity to do so.

*Id*. at 335 (emphasis added). Hale's case does not involve removal proceedings, and is very different from Villarreal Silva's. While an "expedited removal" surely is a *type* of

4

"administrative determination," it is a type that is different enough from a secrecy classification decision that the rules applicable to the former are very different from the rules that apply to the latter.

The underlying element of Villarreal Silva's case was the existence of an order specifically applicable to Villarreal Silva himself; he challenged the validity of the order for his own removal. In Hale's case, the underlying element is an executive branch decision of *general applicability*: the classification of information, which occurred prior to Hale stealing and leaking that information. Regardless of Villareal's individual due process right to challenge the propriety of the removal decision that was made with respect to him as an individual, Hale has no due process right to challenge the propriety of the classification of the information that he stole, where that classification decision had nothing to do with Hale, occurred before he stole the information at issue, and applied not just to Hale, but to everyone.

Instructive in this regard is *United States v. Hammoud*, 381 F.3d 316 (4th Cir. 2004) (*en banc*).[2] There, the Fourth Circuit held the defendant, who was charged with providing material support to a designated foreign terrorist organization ("FTO"), was not entitled to challenge the status of the organization as an FTO. *Id*. at 331.[3] Rejecting Hammoud's Fifth Amendment challenges, the Court found that while the organization's designation as an FTO was an element of the offense, the validity of the designation was not:

---

[2] The *en banc Hammoud* decision was vacated on *Booker* grounds, but reinstated in all other respects. 405 F.3d 1034 (4th Cir. 2005) (*en banc*).

[3] Although the statute designating FTOs, 8 U.S.C. § 1189(a)(8), explicitly prohibits a criminal defendant from questioning the validity of the issuance of such designation, that statutory prohibition does not affect any Constitutional challenge. Thus, the existence of that provision in Section 1189 is irrelevant to the analysis of whether Hale may, on constitutional grounds, contest an executive branch determination that information was classified.

5

> Here, Congress has provided that the fact of an organization's designation as an FTO is an element of § 2339B, but the validity of the designation is not. Therefore, Hammoud's inability to challenge the designation is not a violation of his constitutional rights.

*Id.* at 331.

The *en banc Hammoud* decision has been widely followed on this point. *See, e.g., United States v. Ali*, 799 F.3d 1008, 1019 (8th Cir. 2015) ("[W]e hold that it comports with due process to prohibit a criminal defendant from challenging the validity of the Secretary of State's designation of a foreign terrorist organization."), *United States v. Afshari,* 426 F.3d 1150, 1155–59 (9th Cir.2005) (due process does not require court review of an FTO determination during a § 2339B prosecution).

Even in his opinion dissenting (on other grounds) from the *en banc Hammoud* decision, Judge Gregory agreed with the *en banc* court that a defendant cannot challenge an administrative determination that does not involve a defendant's individual rights. "In short, while the fact of the Secretary's designation is an element of the offense, the designation's validity is not." *Hammoud,* 381 F.3d at 374 n.9. To support his conclusion, Judge Gregory cited *United States v. Mandel,* 914 F.2d 1215, 1221 (9th Cir.1990), a decision holding that, under the Export Administration Act, the Secretary's decision to control a commodity "does not involve the defendant's individual rights and is not an element of the charged offense." *Hammoud,* 381 F.3d at 374 n.9.

*Mandel*, indeed, further undermines Hale's argument. In *Mandel,* the defendant was charged with violating the Export Administration Act by exporting, without a license, advanced-technology electronics included on the Commerce Department's Commodity Control List ("CCL"). Pre-trial, Mandel sought information through discovery that would allow him to challenge whether the government had "followed the legislative mandate" in placing the items on

6

the CCL in the first place. *Mandel*, 914 F.2d at 1218. The district court granted his request, reasoning that judicial review of agency rulemaking was always available in criminal prosecutions. *Id*. at 1220.

The Ninth Circuit reversed, noting that review of an administrative act is required only when the act constitutes an element of the criminal offense charged, and *when the act affects the individual rights of the defendant*. *Id.* at 1221. Neither was true of Mandel. The court held the propriety of the determination was not an element of the offense, and the administrative act at issue was a rule of general applicability. *Id.* That distinction is the key distinction between the context of Hale and the context of *Villareal Silva*; the administrative determination in *Villareal Silva* affected the individual rights of the defendant, but the administrative determination in Hale did not.

The distinction explained in *Mandel* also can be seen in other contexts, in which defendants are barred from challenging pre-existing administrative determinations of general applicability. For example, in *United States v. Forrester*, 616 F. 3d 929 (9th Cir. 2010), the Ninth Circuit held the Attorney General's classification of ecstasy as a Schedule I controlled substance was not subject to substantive collateral attack in a criminal prosecution for conspiracy to manufacture and distribute ecstasy. *Id*. at 937. The defendant argued that ecstasy was wrongly classified, and urged the court to review its classification. *Id*. at 935. The Ninth Circuit rejected the argument, holding that "substantive collateral attacks on permanent scheduling orders are impermissible in criminal cases where defendants' sentences will be determined by those scheduling orders." *Id*. at 937. *See also United States v. Carlson*, 87 F.3d 440 (11th Cir. 1996) (same).

7

In *Adamo Wrecking Co. v. United States*, 434 U.S. 275 (1978), the Supreme Court held that defendants in criminal cases could not challenge the propriety of the issuance of regulations under the Clean Air Act. It explained:

> The narrow inquiry to be addressed by the court in a criminal prosecution is not whether the [EPA] Administrator has complied with appropriate procedures in promulgating the regulation in question, or whether the particular regulation is arbitrary, capricious, or supported by the administrative record. Nor is the court to pursue any of the other familiar inquiries which arise in the course of an administrative review proceeding. The question is only whether the regulation which the defendant is alleged to have violated is on its face an "emission standard" within the broad limits of the congressional meaning of that term.

*Id*. at 285. *See United States v. Ho*, 311 F.3d 589 (5th Cir. 2002) (defendant charged with a violation of the Clean Air Act could not challenge the propriety of a definition applicable to asbestos work standards). As the defendant was barred in *Adamo Wrecking*, Hale is barred here from challenging whether the classification authorities complied with appropriate procedures in classifying the documents he stole, or whether the particular classification decisions at issue here were supported by underlying facts. The sole question with respect to their classification is likely to be undisputed: whether, in fact, they were classified.

    B.    The Court Lacks the Expertise to Determine
           the Propriety of Classification Decisions

Even were *Villareal Silva* otherwise on point, Hale's situation is very different for another reason: classification decisions implicate national security concerns and foreign policy considerations that are not part of the decision-making process in a deportation hearing. As noted above, "courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications." *El Masri*, 479 F.3d at 305.

Whereas a court is well suited to determine whether a prior deportation hearing was fairly and properly conducted, it is ill suited to determine whether disclosure of a particular document may have a tendency to damage the national security of the United States. Resolution of such a question is quintessentially a matter of policy entrusted by the Constitution to the Congress and the President, for which there are no meaningful standards of judicial review. *See Mandel,* 914 F.2d at 1223 (courts are ill-suited to determine whether particular products should be export controlled).

"Political questions" are controversies which revolve around policy choices and value determinations constitutionally committed to the Congress or the Executive Branch, and are not subject to judicial review. *Id.* This Court should hold that the propriety of the classification determinations that were made with respect to the documents at issue in this case is not subject to challenge if, for no other reason, because it is an unreviewable political question.

In sum, Hale is flat wrong in arguing that *Villarreal Silva* has any relevance to question now before this Court. As noted above, the *Villarreal Silva* holding was specific to removal proceedings. Moreover, the underlying element of Villarreal Silva's case was a hearing based specifically on his own *individual actions*. In contrast, in Hale's case, the underlying element was an executive branch decision of *general applicability*—the classification of information—which occurred prior to Hale stealing and leaking it. Finally, federal courts are not well suited to review the propriety of executive determinations involving the classification of information.

    C.    <u>Consideration of Legislative History is Not Helpful Here</u>

In addition to *Villareal,* Hale bases his opposition to our motion on a strained interpretation of legislative history. In light of the clear authority from the case law set forth above, there is no call to resort to parsing the legislative history of the statutes involved.

The legislative history of § 798 is completely silent on whether the courts should determine whether information is properly classified. *See* H.R. Rep. No. 81-1895; S. Rep. No. 81-111. Nevertheless, Hale bases his argument on the suggestion of an old law review article (Def. Mot. at 5, Dkt. 72) with an imaginative understanding of how the justice system actually works. According to Hale's law review article, inclusion of two words ("in fact") in two congressional reports "*suggest*s" that the appropriateness of the classification under § 798 "is a question of fact for the jury." *Id.* In other words, law professors suggest that *juries* should determine whether the disclosure of classified documents might have a tendency to harm the national security of the United States. As a path to paralysis of the court system, that "suggestion" is fine; as support for Hale's position, it is unpersuasive.

The suggestion made by the authors of the law review article should be given no weight. Notwithstanding the impracticality of their suggestion, "[j]udicial investigation of legislative history has a tendency to become . . . an exercise in looking over a crowd and picking out your friends." *Exxon Mobil Corp. v. Allapattah Services, Inc.* 545 U.S. 546, 568 (2005). Indeed, reliance on such legislative history has the perverse effect of subverting Congress's will inasmuch as it "may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to secure results they were unable to achieve through the statutory text." *Id.*

"Classified information" is clearly defined in the text of Section 798, and the words *in fact* - - upon which Hale and the authors of the law review article rely - - do not appear in the definition provided in the statute. Further, *Scarbeck*, which takes a position diametrically opposed to those of the authors, was decided more than ten years before Hale's law review was

published, but was not considered by the authors. Accordingly, the Court should give no weight to Hale's law review article.

II. Hale Should be Precluded from Arguing that Documents Are Not Classified Because They Do Not Contain All Prescribed Classification Markings

Hale suggests that he should be permitted to question witnesses, and argue to the jury, that the charged information was not classified, because it did not contain "various markings, including the identity of the classifying agency and the name and position of the original classification authority who made the classification determination" as required under Executive Order 13526. (Def. Mot. 3, Dkt. 72) He should not be permitted to do so.

Section 1.6(f) of the Executive Order states that "[i]nformation assigned a level of classification under this or predecessor orders shall be considered as classified at that level of classification despite the omission of other required markings." Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). Therefore, the absence of the identity of the original classification authority, the origin of a document's agency and office, and the declassification instructions, as proscribed under Section 16(a)(2)-(5), *id.*, do not render a document unclassified. *See United States v. Dedeyan*, 584 F.2d 36, 41 (4th Cir. 1978) (even though "the classification procedure was not entirely followed in this case, the evidence shows that information … was secret information and related to the national defense").

Executive Order 13526 and Fourth Circuit case law do not require that, for information to be proved to have been classified, all markings must have been present and all classification procedures must have been followed. The Court, therefore, should prevent Hale from questioning witnesses and arguing to the jury that the charged information was not classified because it did not contain all of the markings specified in Executive Order 13526.

11

III.     Hale Misapprehends the Government's Motion *in Limine* to Bar Presentation
<u>of Evidence or Argument About Everybody Leaking Classified Information</u>

Hale opposes the government's request to preclude an "everybody leaks" defense, and claims that it is too broad. (Def. Mot. at 11, Dkt. 72). According to Hale, our motion would preclude him from presenting evidence of "specific instances of classified-information leaks [that] may be relevant to the extent they contain information similar to that at issue in this case." *Id.* Hale is wrong.

Through our motion, we do not seek a ruling that would prevent Hale from introducing evidence of an authorized release of the classified and unclassified information charged in the indictment prior to the time that he stole it. Instead, we seek a ruling that would bar him from arguing or introducing evidence that anyone else leaked any classified information other than:

(a)     the national defense information with which Hale is charged with leaking, in violation of Section 793; or

(b)     the classified information that is the subject of the Section 798 charge.

IV.     <u>Discovery</u>

As a final matter, we address Hale's request that the Court not rule on several motions *in limine* because his attorneys have had insufficient time to review "over five terabytes of discovery" that the government produced since the motions were filed. (Def. Mot. at 1, Dkt. 72.) While we do not dispute how much time defense counsel still needs to examine the information, the Court should know the discovery materials at issue have been available to the defense for months.

For instance, on July 2, 2019, the government produced digital forensic reports pertaining to Hale's personal devices and government devices he had used. The government also notified the defense that, upon request, we could make available to it forensic mirror copies of device

images. Then, on August 9, 2019, we provided defense counsel with a spreadsheet listing the various digital devices and electronic data seized to date (several of which were already known to the defense), and offered to make the forensic images and examinations available for review outside of a government facility if counsel provided external drives onto which the data could be copied.

In response to our August 9, 2019 offer, defense counsel provided us with external drives on August 26, 2019. On September 16, 2019, we returned to defense counsel one external drive, now containing classified forensic images for review in the defense's Secure Compartmented Information Facility (SCIF). With that external hard drive, we provided a letter reminding defense counsel that, upon their request, they could still review the remaining materials at a government facility even before we finished copying those remaining materials onto other external drives. The defense did not make such a request. Then, on September 25, 2019, we provided the two other external hard drives to the defense, so that they could have the remaining materials in their own SCIF or office space (depending on the classification status of the materials) without having to examine them in a government space.

In sum, the government first made the information available to the defense as of July 2, 2019, and, as a further step, later copied the information onto external hard drives provided by the defense for that purpose.

## Conclusion

For the reasons stated above, we ask the Court to grant the Government's Motions *in Limine* to prevent Hale from challenging the classification of the charged information, and to

exclude generalized evidence, unrelated to the specific charged information, that "everyone leaks."

                                        Respectfully submitted,

                                        G. Zachary Terwilliger
                                        United States Attorney

By:           /s/
                Gordon Kromberg
                Alexander P. Berrang
                Assistant United States Attorneys
                United States Attorney's Office
                2100 Jamieson Avenue
                Alexandria, Virginia 22314
                Phone: (703) 299-3700
                Fax: (703) 299-3981
                Email: Gordon.Kromberg@usdoj.gov
                Email: Alexander.P.Berrang@usdoj.gov

By:           /s/
                Heather M. Schmidt
                Senior Trial Attorney
                National Security Division
                United States Department of Justice
                950 Pennsylvania Avenue, NW
                Washington, D.C. 20530
                Tel.: (202) 233-2132
                Fax: (202) 233-2146
                Email: Heather.Schmidt@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on October 11, 2019, I electronically filed the foregoing Government's Consolidated Reply to Defendant's Response To Motions Concerning Challenges to Classification and to Exclude Certain Evidence, Argument, or Comment at Trial with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

                                              /s/
                                        Gordon D. Kromberg
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        2100 Jamieson Avenue
                                        Alexandria, Virginia 22314
                                        Phone: 703-299-3700
                                        Fax: 703-299-3981
                                        Gordon.kromberg@usdoj.gov