# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

## Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> DANIEL EVERETTE HALE, <br><br> *Defendant.* | Case No. 1:19-cr-59 <br> Hon. Liam O'Grady <br><br> **UNDER SEAL** |

## ORDER

### I. Background

The defendant, Daniel Hale, was indicted by a grand jury in the Eastern District of Virginia on March 7, 2019. Dkt. 1. On May 9, 2019, a Superseding Indictment was issued. Dkt. 12. The Superseding Indictment sets forth general factual allegations, and includes five counts: obtaining national defense information in violation of 18 U.S.C. § 793(c) (Count 1); retention and transmission of national defense information (Count 2), and causing the communication of national defense information (Count 3), both in violation of 18 U.S.C. § 793(e); disclosure of classified communication intelligence information in violation of 18 U.S.C. § 798(a)(3) (Count 4), and; theft of government property in violation of 18 U.S.C. § 641 (Count 5).

A jury trial has been scheduled for March 16, 2020, and discovery is ongoing. The parties filed numerous pretrial motions and this Court heard argument on several of them at a November 15, 2019 hearing. In addition, the Court has reviewed all the pleadings and exhibits. The motions are now ripe for decision.

1

## II. Discussion

### A. *Motions* in Limine, *for Judicial Notice, and for a Bill of Particulars*

There were six preliminary motions consisting of four motions *in limine*, a motion for the Court to take judicial notice, and a motion for a bill of particulars, which were scheduled for argument at the November 15, 2019 hearing.

#### *1. Three Motions Concerning Admissibility of Evidence*

The Government has moved to admit an anonymous writing as an admission of the Defendant, Dkt. 54, to exclude certain evidence, argument, and comment, Dkt. 56, and to allow redaction of certain exhibits, Dkt. 58. These motions pertain to the admissibility of evidence at trial. Because trial is months away and discovery is both voluminous and ongoing, they are premature. Accordingly, Dkt. 54, Dkt. 56, and Dkt. 58 are **DENIED WITHOUT PREJUDICE**. The Government may renew the motions at a more appropriate time if cause exists.

#### *2. The Unopposed Motion for Judicial Notice*

The Government moved this Court to take judicial notice of the system for classifying, safeguarding, and declassifying national security information as set forth in Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). Dkt. 49. That motion was unopposed. Dkt. 72. Accordingly, for the reasons stated by the Government, the motion is **GRANTED**.

#### *3. The Motion Concerning Challenges to Official Classification Determination*

The Government moved to preclude the defendant from challenging official classification determinations at trial. Dkt. 57. The defendant, in response, sought to challenge both the fact of a document's classification and the propriety of classification pertaining to documents which form the basis of Count 4. Dkt. 73. For the reasons stated below, the defense is precluded from

challenging both the fact of a document's classification based on the omission of certain required markings, and the propriety of classification.

First, the defendant may not challenge the fact of classification on the basis of omitted markings because classified documents retain their classification despite the omission of markings, even when the markings are required by the classification scheme. It is well settled that in the context of national defense, "the process of classification is part of the executive function beyond the scope of judicial review." *United States v. Marchetti*, 466 F.2d 1309, 1317 (4th Cir. 1980); *see also, e.g., United States v. Moussaoui*, 65 F. App'x 881, 887 n.5 (4th Cir. 2003) (declining to review classification decisions made by the executive branch). The classification scheme is governed by Executive Order 13526, which imposes certain identification and marking requirements upon classified information, including documents. Exec. Order No. 13526 § 1.6, 75 Fed. Reg. 707, 709-10 (Dec. 29, 2009). One such requirement is that, "[w]ith respect to each classified document, the agency originating the document shall . . . indicate which portions are classified." Exec. Order No. 13526 § 1.6(c), 75 Fed. Reg. 707, 710 (Dec. 29, 2009). The Executive Order goes on to mandate that "[i]nformation assigned a level of classification . . . **shall** be considered as classified at that level of classification **despite** the omission of other required markings." Exec. Order No. 13526 § 1.6(f), 75 Fed. Reg. 707, 710 (Dec. 29, 2009) (emphasis added). Thus, even when classified information or documents omit markings which are required by the Executive Order, they retain their classification level and classified status.

The defendant's argument that "the absence of required 'portion' markings" may render it "impossible . . . to apply § 1.6(f)" is therefore incorrect. Dkt. 72 at 3. Section 1.6(f) applies, pursuant to its text, despite the omission of markings which may be otherwise required. Accordingly, the defendant is precluded from arguing that documents which omit required markings are not classified.

3

Second, the defendant may not challenge the propriety of classification regarding Count 4, which alleges a violation of 18 U.S.C. § 798. The law is clear that it is the fact of classification, rather than the propriety of classification, which is an element of that offense.

Count 4 of the Superseding Indictment charges a violation of 18 U.S.C. § 798(a)(3). Section 798(a) proscribes "knowingly and willfully communicat[ing], furnish[ing], transmit[ting], or otherwise mak[ing] available to an unauthorized person, or publish[ing], or us[ing] . . . any classified information" which satisfies certain other requirements. An element of the offense is therefore "classified information." *Id.* That phrase is defined by the statute to "mean[] information which, at the time of a violation of this section, is, for reasons of national security, specifically designated by a United States Government Agency for limited or restricted dissemination or distribution." § 798(b).

The text of § 798 requires the information at issue to have been classified at the time of the violation. § 798(a). The statute does not require the information to have been properly classified. *See id.*; *see also United States v. Boyce*, 594 F.2d 1246, 1251 (9th Cir. 1979) ("Under section 798, the propriety of the classification is irrelevant. The fact of classification of a document or documents is enough to satisfy the classification element of the offense."); *cf. United States v. Truong Dinh Hung*, 629 F.2d 908, 920 (4th Cir. 1980) (adopting the reasoning of *Scarbeck v. United States*, 317 F.2d 546, 558 (D.C. Cir. 1962) which held in the context of a similar statute, that "[t]he [] inquiry is whether the prosecution was required to show that they were properly so classified. . . . [T]he answer to this question must be in the negative."); *Fondren v. United States*, 63 F. Supp. 3d 601, 608 (E.D. Va. 2014) (rejecting, in the context of a similar statute, the argument "that the information should not have been classified" because "[t]he plain language of the statute only requires that the information shall have been

classified."). Because the language of the statute is clear, and the propriety of classification is not an element, the defendant may not challenge the propriety of classification.

The defendant argues that legislative history shows Congress intended for defendants to challenge the propriety of classification. This argument is unpersuasive. First, the defendant points only to a single sentence which appears in two legislative reports. Dkt. 72 at 5. Moreover, "[l]egislative history is irrelevant to the interpretation of an unambiguous statute." *In re Moore*, 907 F.2d 1476, 1478-79 (4th Cir. 1990). The statute here unambiguously refers to "classified information," and further, it defines that phrase. § 798(a), (b).

Additionally, the defendant argues[1] that due process requires judicial review of classification decisions based on *United States v. Villarreal Silva*, 931 F.3d 330 (4th Cir. 2019). Dkt. 72 at 5-6. That case is inapposite and the defendant's reliance on it is misplaced.

There, the Fourth Circuit held a jurisdiction-stripping statute unconstitutional because

> when an expedited removal is alleged to be *an element in a criminal prosecution*, the defendant in that prosecution must, as a matter of due process, be able to challenge the element — *i.e.*, to contend that the removal was invalid — if he did not have a prior opportunity to do so.

*Villarreal Silva*, 931 F.3d at 335.

This case is distinguishable first because it does not pertain to removal proceedings and the *Villarreal Silva* holding was limited to removal proceedings. *See id.* Moreover, while a court is well suited to evaluate removal proceedings for fairness and propriety, classification decisions implicating national security and foreign policy are dissimilar. The Fourth Circuit has repeatedly observed that, in the context of classification decisions, "courts, of course, are ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the

---

[1] The defendant also raised First Amendment concerns regarding his ability to challenge the propriety of a classification determination in the context of § 798. Those concerns are addressed below, in the discussion of defendant's motion to dismiss on constitutional grounds.

5

review of secrecy classifications." *United States v. Marchetti*, 466 F.2d 1309, 1318 (4th Cir. 1972); *accord El-Masri v. United States*, 479 F.3d 296, 305 (4th Cir. 2007); *see United States v. Moussaoui*, 65 F. App'x 881, 887 (4th Cir. 2003) (declining to review executive branch classification decisions).[2]

Moreover, the administrative determination upon which the *Villarreal Silva* procedural due process claim was based is fundamentally dissimilar from classification decisions. There, the claim was that a removal order—an individualized determination specifically applicable only to an individual—was procedurally flawed. *See Villarreal Silva*, 931 F.3d at 334. As a result, the Fourth Circuit found a procedural due process violation. *Id.* Classification decisions, on the other hand, are made regarding information, not individuals. As an element of a crime, the classification of information is an executive decision of general applicability.[3] As such, *Villarreal Silva* does not apply to these facts.

Accordingly, the Government's motion *in limine* concerning challenges to official classification determinations, Dkt. 57, is hereby **GRANTED**. The defendant is precluded from

---

[2] *See also, e.g., United States v. Snepp*, 897 F.2d 138, 141 n.2 (4th Cir. 1990) (explaining that "Courts must avoid second-guessing the CIA's decision to classify information because they have only a limited knowledge of foreign intelligence matters. What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context. As a result, the issues upon judicial review would seem to be simply whether or not the information was classified and, if so, whether or not, by prior disclosure, it had come into the public domain.") (internal citations, quotation marks, and alteration omitted).

[3] *Cf. United States v. Hammoud*, 381 F.3d 316, 374 (4th Cir. 2004) (en banc) (Gregory, J., dissenting) (in the context of Constitutional challenges to criminal statute prohibiting the provision of material support to a designated terrorist organization ["FTO"], where the defendant is statutorily prohibited from challenging the FTO designation, and agreeing with the majority that "while the *fact* of the Secretary's designation is an element of the offense, the designation's *validity* is not.") *cert. granted, judgment vacated*, 543 U.S. 1097 (2005), *opinion reinstated in part*, 405 F.3d 1034 (4th Cir. 2005).

6

challenging the fact of classification based on the omission of portion markings, and in the context of 18 U.S.C. § 798, the propriety of classification.

### 4. Motion for a Bill of Particulars

The defendant moved, under Federal Rules of Criminal Procedure 7 and 12, to require the Government to provide a bill of particulars. Dkt. 50. The decision to grant or deny a motion for a bill of particulars is left within the sound discretion of the trial court. *United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973).

The purpose of a bill of particulars "is to fairly apprise the defendant of the charges against him so that he may adequately prepare a defense and avoid surprise at trial." *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985) (citing *United States v. Schembari*, 484 F.2d 931 (4th Cir. 1973)). The aim "is not to provide 'detailed disclosure of the government's evidence in advance of trial' but to supply 'any essential detail which may have been omitted from the indictment.'" *Anderson*, 481 F.2d at 690 (quoting *Dillen v. Wainwright* 449 F.2d 331, 332 (5th Cir. 1971)). An indictment requires only "each essential element of the offense be alleged together with sufficient additional facts to allow the indictment to be used as proof in bar of a subsequent prosecution for the same offense." *United States v. Duncan*, 598 F.2d 839, 848 (4th Cir. 1979).

An indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The alleged facts "should be sufficiently detailed to apprise the defendant of the charge against him so that the [sic] may prepare his defense." *Duncan*, 598 F.2d at 848. Sufficient factual detail may be achieved "through the use of a bill of particulars or discovery." *Id.*; *see also United States v. Perry*, 30 F. Supp. 3d 514, 523 (E.D. Va. 2014) ("In considering whether to grant a defendant's motion

7

seeking a bill of particulars, it is appropriate for the district court to inquire into the information that has already been provided by the government during discovery.").

The Superseding Indictment here contains sufficient detail to enable the defendant to effectively prepare a defense and avoid unfair surprise at trial.[4] Each count identifies dates within which the defendant allegedly committed the crime charged. Each count also identifies dates that the documents at issue were both printed and published. The specific documents, and the defendant's access to those documents, are identified. The indictment specifies that the offenses occurred within this District and goes further by providing facts pertaining to the defendant's locations and activities, where documents were allegedly printed, and where a document was ultimately located. Furthermore, the indictment lays out the dates and locations of certain communications between the defendant and other actors, as well as both electronic and in person contacts with reporters. Moreover, discovery in this case has been extensive, and more than sufficient to develop the factual detail of the case. *See* Dkt. 72 at 1 (noting the Government has produced over five terabytes of discovery since September 16, 2019).

"[A]s the Fourth Circuit has made clear, a bill of particulars should 'not be used to provide detailed disclosure of the government's evidence in advance of trial.'" *United States v. Doan*, 184 F. Supp. 3d 271, 283 (E.D. Va. 2016) (quoting *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir. 1985)). Here, all the essential facts constituting the charged crimes are alleged in the indictment, and more. Discovery is both sizeable and ongoing. In light of the factual detail set forth in the indictment, and the discovery which is available to the defendant, the motion for a bill of particulars, Dkt. 50, is hereby **DENIED WITHOUT**

---

[4] The defendant argued that Count 1 was deficient because it did not specify who was referenced through the use of "any person." Dkt. 50 at 2. The issue is moot because the Government has identified the defendant as the person referred to by "any person" in Count 1. Dkt. 68 at 7.

8

PREJUDICE. The defendant may renew this motion if it believes discovery is lacking in a particular area.

### B. Motions to Dismiss

The defendant has filed four motions to dismiss, and the Court will address each in turn.

#### 1. The Motion to Dismiss Count 5

Count 5 of the Superseding Indictment alleges a violation of 18 U.S.C.§ 641. Section 641 criminalizes "steal[ing] . . . or knowingly convert[ing] to his use or the use of another, or without authority, sells, conveys or disposes of any record . . . or thing of value of the United States or of any department or agency thereof . . . ." The defendant argues that this Court should dismiss Count 5 because the statute "does not reach the conduct" which allegedly occurred here. Dkt. 51 at 1.

The defendant is charged with conversion and conveyance of governmental documents of value to the United States. Dkt. 12 at 16. The motion acknowledges that binding Fourth Circuit precedent exists on the issues presented. Dkt. 51 at 1. First, "[t]he mere fact that one has stolen a document in order that he may deliver it to the press, whether for money or for other personal gain, will not immunize him from responsibility for his criminal act." *United States v. Morison*, 844 F.2d 1057, 1077 (4th Cir. 1988). Thus, to the extent the defendant argues § 641 does not apply due to his relationship with news media, his argument fails. Further, the Fourth Circuit has squarely held both "that conversion and conveyance of governmental information can violate § 641," and that documents are "things of value and tangible property of the United States." *United States v. Fowler*, 932 F.2d 306, 310 (4th Cir. 1991). Because those holdings encompass the alleged conduct in this case, Count 5 will not be dismissed and the motion, Dkt. 51, is **DENIED**.

9

## 2. The Motion to Dismiss Multiplicitous Counts

Pursuant to Fed. R. Crim. P. 12(b), the defendant moves to dismiss three of the Superseding Indictment's Counts 1 through 4, because he argues they are "restatements of the same illegal act." Dkt. 52 at 1.

Multiplicity is charging a single offense in several counts. *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993). The "danger in multiplicitous indictments is that the defendant may be given multiple sentences for the same offense." *Id.* Yet a single act may constitute distinct offenses. *Blockburger v. United States*, 284 U.S. 299, 304 (1932). "If 'the same act or transaction constitutes a violation of two distinct statutory provisions, the test to . . . determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.'" *Rutledge v. United States*, 517 U.S. 292, 297 (1996) (quoting *id.*). Where "each crime charged contains an element that the other does not," the offenses are not multiplicitous. *United States v. Terry*, 86 F.3d 353, 356 (4th Cir. 1996).

Here, Counts 1 through 4 are not multiplicitous. Between Count 1 and the other Counts, each contains at least one element that the other does not. Count 1 requires as an element, and Count 2 does not require, that "Hale did so for the purpose of obtaining information respecting the national defense." Count 2 has as an element, and Count 1 does not, that "Hale willfully retained the document and failed to deliver it . . . or Hale willfully communicated, delivered, and transmitted the document to a person not entitled to receive it." Count 1 requires, but Count 3 does not require, that "Hale obtained the document for the purpose of obtaining information respecting the national defense." Count 3 has two elements that Count 1 does not: that "Hale's possession of a document was unauthorized," and that "Hale willfully communicated, delivered, or transmitted such a document to a person not entitled to receive it, or attempted or caused such

10

a document to be so communicated, delivered, or transmitted." Finally, Count 1 has an element that Count 4 does not: "Hale obtained the document for the purpose of obtaining information respecting the national defense." Count 4 also has an element that Count 1 does not: "The classified information concerned the communication intelligence activities of the United States."

Similarly, as between Count 4 and Counts 2 and 3, each contains an element absent in the other. Count 2 requires as an element, and Count 4 does not, that "Hale's possession of a document was unauthorized." Count 4 has as an element, and Count 2 does not, that "The classified information concerned the communication intelligence activities of the United States." Count 3 has an element that Count 4 does not, namely that "Hale's possession of a document was unauthorized." And finally, and Count 4 requires, while Count 3 does not require, that "The classified information concerned the communication intelligence activities of the United States."

The question remains regarding Counts 2 and 3, which charge multiple violations of the same statute. Although they charge the same elements, they allege different facts. "Even assuming multiplicity, [] the Court agrees with the government that the proper remedy is to vacate any multiplicitous convictions after trial." *United States of America v Livingston*, No. 1:15-CR-201, 2016 WL 1119060, at *1 (E.D. Va. Feb. 23, 2016) (compiling cases). Accordingly, the Court declines to determine the multiplicity of Counts 2 and 3 at this early stage. The motion is **DENIED WITHOUT PREJUDICE**, and the defendant may renew the motion as to Counts 2 and 3 after trial if cause exists.

### *3. The Motion to Dismiss on Constitutional Grounds*

The defendant moved to dismiss Counts 1 through 4 on constitutional grounds. Dkt. 53. He has challenged the Espionage Act Counts, which charge violations of 18 U.S.C. § 793(c), (e), and 18 U.S.C. § 798, as facially overbroad and void for vagueness. He has also challenged

Count 5, theft of government property in violation of 18 U.S.C. § 641, as overbroad as applied to him. The Fourth Circuit has previously considered these issues, and the defendant's arguments to depart from binding precedent are unpersuasive.

In *United States v. Morison*, the Fourth Circuit was asked to invalidate 18 U.S.C. § 793(e) on the same grounds as those raised here. 844 F.2d 1057 (4th Cir. 1988). A defendant who transmitted classified pictures to a periodical publisher brought vagueness and overbreadth challenges to § 793. *See Morison*, 844 F.2d at 1060-62. The court found "no basis . . . for the invalidation of the statutes for either vagueness or overbreadth." *Id.* at 1073. The validity of *Morison* has not been called into question, and this Court is bound by it. *Cf. United States v. Rosen*, 445 F. Supp. 2d 602, 613 (E.D. Va. 2006) ("The Fourth Circuit has also considered and rejected vagueness challenges to § 793 and related espionage statutes in other cases" and compiling cases), *amended*, No. 1:05-CR-225, 2006 WL 5049154 (E.D. Va. Aug. 16, 2006), *aff'd*, 557 F.3d 192 (4th Cir. 2009). Accordingly, the vagueness and overbreadth challenges to § 793(e) fail.

*Morison* did not involve a § 793(c) charge, but the decision applies to that statute as well. The Fourth Circuit's determination that § 793(e) is not vague was based upon the statutory scienter requirement and the judicial gloss narrowing the definition of "relating to the national defense." *See Morison*, 844 F.2d at 1071-1073. Moreover, as an individual well-versed in "the regulations concerning the security of secret national defense materials," the court found that the *Morison* defendant "knew that he was dealing with national defense material." *Id.* at 1073. Therefore, the court determined that because of "the scienter requirement . . . bulwarked with the defendant's own expertise in the field of governmental secrecy and intelligence operations, the language of the statutes, 'relating to the national security' was not unconstitutionally vague." *Id.*

12

(quoting 18 U.S.C. § 793(d), (e)).

Under the analysis set forth in *Morison*, both § 793(c) and § 798 survive the defendant's vagueness challenge because each contains a scienter requirement, definite terms, and the defendant had actual notice.[5] First, as to scienter, in *Morison* the Fourth Circuit considered the scienter of § 793(e), which requires a single scienter: willfulness. Section 793(c), on the other hand, requires two scienters: both a purpose, and a knowledge level. The "knowingly and willfully," scienter requirement of 798(a) is also stricter than the one considered in § 793(e).

Second, regarding definiteness, courts have consistently found the terms within the Espionage Act to be sufficiently definite. *See, e.g., United States v. Dedeyan*, 584 F.2d 36, 39 (4th Cir. 1978) (declaring "relating to the national defense" not to be "vague in the constitutional sense."); *Rosen*, 445 F. Supp. 2d at 645 (explaining "§ 793 . . . is constitutionally permissible because (1) it limits the breadth of the term 'related to the national defense' to matters closely held by the government for the legitimate reason that their disclosure could threaten our collective security; and (2) it imposes rigorous scienter requirements as a condition for finding criminal liability."). The Fourth Circuit has found the phrase "national defense," as it is used within the Espionage Act, to be sufficiently definite to satisfy constitutional requirements. *See Morison*, 844 F.2d at 1071-72. The *Morison* court examined that phrase in the context of § 793(e), but it is also present in § 793(c), which the defendant challenges here. That challenge is precluded by *Morison*. Furthermore, § 798 is limited by its statutory text to punish acts involving "classified information," which is narrower and more definite than national defense

---

[5] Even if *Morison* did not apply to § 798, the vagueness challenge would fail because "[a] 'scienter requirement alone tends to defeat' vagueness challenges to criminal statutes." *United States v. Saunders*, 828 F.3d 198, 207 (4th Cir. 2016) (quoting *United States v. Jaensch*, 665 F.3d 83, 90 (4th Cir. 2011)).

13

information.

Finally, the defendant in this case is like the defendant in *Morison* because his training, experience, and expertise in government secrecy and intelligence operations put him on notice that he was dealing with national defense information and classified materials. Therefore, *Morison* applies to the vagueness challenges to § 793(c) and § 798 here, and those challenges fail.

In addition, the *Morison* analysis precludes the defendant's overbreadth challenge to § 793(c) and § 798(a). Section 793(c) prohibits acts regarding "anything connected with the national defense." As the defendant concedes, the definition of national defense information, an element of § 793 prosecutions, "has been narrowed by precedent to require that the information be 'potentially damaging to the United States,' and 'closely held.'" Dkt. 53 at 20 n.27 (quoting *Morison*, 844 F.2d at 1071-72). "This narrowing of the definition of 'national defense' information or material removed any legitimate overbreadth objection to the term." *Morison*, 844 F.2d at 1076. Section 798, which can only apply to specifically designated "classified information," is narrower still. Accordingly, the Fourth Circuit's overbreadth holding in *Morison* also applies to § 793(c) and § 798.

Finally, the defendant has also challenged the constitutionality of 18 U.S.C. § 641. The Fourth Circuit has held "that 'in view of the statute's plainly legitimate sweep in regulating conduct, it is not so substantially overbroad that any overbreadth that may exist cannot be cured on a case by case basis.'" *United States v. McAusland*, 979 F.2d 970, 976 (4th Cir. 1992) (quoting *United States v. Girard*, 601 F.2d 69, 72 (2d Cir. 1979)). Moreover, "the First Amendment may not be used . . . either to enable the governmental employee to excuse his act of theft or to excuse him, . . . from his contractual obligation." *Morison*, 844 F.2d at 1077.

14

Accordingly, this motion to dismiss, Dkt. 53, is **DENIED**.

### 4. The Motion to Dismiss for Selective and Vindictive Prosecution

Pursuant to Fed. R. Crim. P. 12(b)(3)(A)(iv) the defendant has moved to dismiss because he alleges his prosecution is selective and vindictive. Dkt. 55. In the alternative, he has asked this Court to order discovery. *See id.*

First, the defendant argues that he is being selectively prosecuted. "A selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *United States v. Armstrong*, 517 U.S. 456, 463 (1996).

In the alternative, he requests discovery on selective prosecution. The standard to show a claim of selective prosecution is "a demanding one," and there is a presumption "that the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims." *Id.* "[T]o dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present 'clear evidence to the contrary.'" *Id.* at 465 (quoting *United States v. Chem. Found.*, 272 U.S. 1, 14-15 (1926)). The threshold showing to require discovery is "a credible showing of different treatment of similarly situated persons." *Id.* Courts "'require some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent." *Id.* at 468 (quoting *United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974)).

Here, the defendant has failed to meet the lower standard of a credible showing of similarly situated persons being treated differently. His argument is that case law does not reveal any prosecutions "for leaking NDI that led to positive coverage of the drone program." Dkt. 55 at 6. This merely constitutes a showing that perhaps some other NDI leaks were not prosecuted.

15

But the fact of non-prosecutions is consistent with the exercise of prosecutorial discretion within constitutional constraints. Accordingly, on its own, this showing is insufficient to require discovery. *See Armstrong*, 517 U.S. at 469 (rejecting the view that "a defendant may establish a colorable basis for discriminatory effect without evidence that the Government has failed to prosecute others who are similarly situated to the defendant," and adopting the requirement that a defendant "produce some evidence that similarly situated defendants . . . could have been prosecuted, but were not.")

Instead, a credible showing—sufficient to entitle the defendant to discovery—requires some evidence. *Id.* The defendant relies upon a single citation to a blog post for the proposition that "[t]here is at least some evidence that . . . the government has engaged in selective leading." Dkt. 55 at 6. The cited source, however, does not provide any evidence of defendants who could have been prosecuted but were not. Moreover, this Court has not been made aware of any instance in which a similarly situated defendant could have been, but was not, prosecuted because the NDI involved in that defendant's case led to positive coverage of the Government or its programs. Because there has been no credible showing of a discriminatory effect or intent, there has been no credible showing of an unconstitutional exercise of prosecutorial discretion. The defendant's arguments regarding selective prosecution therefore fail.

Second, the defendant argues his prosecution is vindictive. "To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus." *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001). An improper vindictive motive may be presumed upon a showing "that the circumstances 'pose a realistic likelihood of "vindictiveness."'" *Id.* (quoting *Blackledge v. Perry*, 407 U.S. 21, 27 (1974)).

Such a presumption shifts the burden to the government to justify its conduct. *Id.* "[C]ourts must nonetheless be cautious not to intrude unduly in the broad discretion given to prosecutors in making charging decisions. Indeed, a prosecutor's charging decision is presumptively lawful." *Id.* at 315 (citing *Armstrong*, 517 U.S. at 456).

The defendant again requests, in the alternative, discovery based on vindictiveness. Before courts allow discovery regarding "the government's prosecutorial decisions, the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct." *Id.* This rigorous standard is identical to the standard for selective prosecution claims. *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000); *accord Wilson*, 262 F.3d at 315-316.

Here, the defendant has identified no objective evidence of animus toward the defendant and therefore fails to overcome the presumption of lawful prosecution charging decisions. He has also, for the same reason, failed to meet the credible showing standard which would entitle him to discovery.

Accordingly, the motion to dismiss for selective and vindictive prosecution, or in the alternative for discovery, is **DENIED**.

### III. Conclusion

For the reasons stated above and for good cause shown, it is hereby **ORDERED** that the defendant's motion for judicial notice, Dkt. 49, is **GRANTED**;

the defendant's motion for a bill of particulars, Dkt. 50, is **DENIED WITHOUT PREJUDICE**;

the defendant's motion to dismiss Count 5 of the Superseding Indictment is **DENIED**;

the defendant's motion to dismiss multiplicitous counts, Dkt. 52, is **DENIED**

17

WITHOUT PREJUDICE;

the defendant's motion to dismiss the indictment based on the First Amendment and Due Process Clause, Dkt. 53, is **DENIED**;

the Government's motion to admit an anonymous writing as an admission, Dkt. 54, is **DENIED WITHOUT PREJUDICE**;

the defendant's motion to dismiss for selective and vindictive prosecution, Dkt. 55, is **DENIED**;

the Government's motion *in limine* to exclude certain evidence, argument, or comment at trial, Dkt. 56, is **DENIED WITHOUT PREJUDICE**;

the Government's motion *in limine* concerning challenges to official classification determinations, Dkt. 57, is **GRANTED**, and;

The Government's motion *in limine* to allow certain redactions, Dkt. 58, is **DENIED WITHOUT PREJUDICE**.

It is **SO ORDERED**.

November 27, 2019
Alexandria, Virginia

Liam O'Grady
United States District Judge