**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 1:19-cr-59 |
| v. ) | |
| ) | Hon. Liam O'Grady |
| DANIEL EVERETTE HALE, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MEMORANDUM
REGARDING *UNITED STATES V. SQUILLACOTE*
AND THE DEFINITION OF NATIONAL DEFENSE INFORMATION**

COMES NOW the Defendant, Daniel Everette Hale, by counsel, and submits this Memorandum regarding the definition of the statutory term "information relating to the national defense" (also known as "National Defense Information" or "NDI"). That definition is critical to several of the charges in this case and to the determinations now before the Court under Section 6 of the Classified Information Procedures Act. Specifically, the government has argued – most recently when opposing defense requests to admit evidence under CIPA – that *United States v. Squillacote*, 221 F.3d 542 (4th Cir. 2000), precludes the Court or the factfinder from considering the following two categories of information in determining whether information constitutes NDI: i) information in the public domain related, but not identical, to the charged information; and/or ii) information that has come into the public domain through anything other than an official, lawful disclosure. The government is correct that *Squillacote* precludes both categories of information from consideration with respect to the "closely held" prong of the NDI definition. But *Squillacote* and the other cases cited by the government just as clearly demonstrate that the universe of evidence relevant to whether a disclosure is potentially damaging

to the United States – the second prong of the NDI definition – is not so cabined. Rather, the law unambiguously permits the fact-finder to consider both categories of information in determining whether information would be potentially damaging to the United States if released.

The government's argument that the evidence relevant to NDI status is limited to prior official disclosures of information identical to the charged NDI is not only contrary to precedent, but it would also render half of the Fourth Circuit's definition of NDI superfluous. That is, if the only evidence relevant to whether a disclosure is "potentially damaging" to the United States were prior official and lawful disclosures of information identical to the charged NDI, that same evidence would respond to whether the information was "closely held." In fact, a prior official and lawful disclosure of the information alleged to be NDI would irrefutably establish that the alleged NDI was *not* closely held. In that case, there would be no reason ever to reach the other half of the definition – whether unauthorized disclosure of the information was potentially damaging. But the law in this Circuit is that information must satisfy both elements to constitute NDI, and the Fourth Circuit could not have intended one of the two to be meaningless. Accordingly, even if the government's argument did find some support in the cases it cites – which it does not – the result would still be contrary to the law of this Circuit because it would nullify half of the definition of NDI established by binding Fourth Circuit precedent.

## ARGUMENT

The starting point for understanding the definition of NDI is the definition itself. Statutorily, it is laughably overbroad. For example, the first three counts in this case are charged under 18 U.S.C. §§ 793(c) & (e), each of which merely requires

the offense to involve a "document . . . relating to the national defense." The statute does not define what it means to "relate to the national defense." Nor does it require the document to be secret, to be potentially harmful if released, or even to be a United States government document. So, for example, a tourist map of the Washington area showing the location of the Pentagon would qualify.[1] The Fourth Circuit has, as a result of the statutory vagueness, approved the following two-prong definition of the term NDI which, combined with the statutory willfulness element, the Court has found sufficient to avoid statutory overbreadth and vagueness: "First, [the government] must prove that the disclosure of the photographs would be potentially damaging to the United States or might be useful to an enemy of the United States. Secondly, the government must prove that the documents or the photographs are closely held in that [they] ... have not been made public and are not available to the general public." *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988).[2]

A review of the cases demonstrates that, in each case upon which the government relies for the proposition that the factfinder may consider only prior lawful disclosures of information identical to that which the defendant is alleged to

---

[1] Each of these sub-sections separately requires a *mens rea* requiring the defendant to believe he was doing something unlawful, which would presumably exclude such an innocent disclosure from violating the statute. But the *mens rea* elements do not purport to define the term NDI. Also, § 793(e) in some cases limits the type of information that may qualify as NDI (to information the defendant believes could be used to the injury of the United States). But that limitation is irrelevant here, because it applies only when a defendant is alleged to have disclosed intangible "information" rather than, as here, documents. *See* 18 U.S.C. § 793(e).

[2] The classification of information is not dispositive as to whether the information is NDI. *See, e.g., United States v. Rosen*, 599 F. Supp. 2d 690, 694 (E.D. Va. 2009) ("NDI, it is worth noting, is not synonymous with 'classified'; information that is classified by the executive branch of government may or may not qualify as NDI.").

have disclosed, the discussion was expressly limited to the "closely held" prong of the definition and not to the "potentially damaging" prong. Moreover, in several of the cases, including Judge Ellis's recent Espionage Act trial in *United States v. Mallory*, the Court expressly permitted the jury to consider – for purposes of the "potentially damaging" prong – information in the public domain that was: i) relevant but not identical to the NDI charged in the case; and ii) in the public domain by virtue of non-official disclosures. Accordingly, the government's contention, in response to defendant's reliance on *United States v. Rosen*, 487 F.Supp.2d 703, 711 (E.D.Va. 2007) (allowing the defense to challenge NDI status with non-identical and non-officially disclosed public domain information), that Judge Ellis in *Mallory* walked back the position he had taken in *Rosen* is nonsense.

First, *Squillacote*. The Fourth Circuit in the last few pages of its lengthy opinion in *Squillacote* addressed the defendant's contention "that the proper inquiry [in determining whether information constitutes NDI] is whether the information is available to the general public, regardless of who made the information available." *United States v. Squillacote*, 221 F.3d at 576. Thus, the defense took issue with a portion of the NDI instruction given at trial, which limited the jury's inquiry to information "lawfully available to the general public." *Id.* Tellingly, though, the opinion's discussion of this issue began excerpting "in pertinent part" the trial court's jury instruction defining NDI, and concluded the discussion by excerpting "in relevant part" the *Morison* court's definition of NDI – and in both cases included only the "closely held" prong of the definition. In other words, the *Squillacote* court excised – as neither "pertinent" nor "relevant" to the issue before it – the "potentially damaging" prong of the definition in both instances. *Compare id.* at 576 (excerpting

-4-

the "pertinent part" of jury instruction given at trial) *with Brief of the United States in United States v. Squillacote*, 1999 WL 33618066 at * 63-64 (quoting the entire jury instruction defining NDI given at trial, and showing that the opinion quoted only the "closely held" prong of the two-prong jury instruction);[3] *compare also Squillacote*, 221 F.3d at 579 (excerpting the "relevant part" of the *Morison* definition of NDI) *with Morison*, 844 F.2d at 1071-72 (showing that the *Squillacote* court included only the "closely held" portion of *Morison's* two-prong definition of NDI).[4]  Indeed, the

---

[3] The following are the two elements of the jury instruction given at trial, quoted from the government's brief, with the portion excluded from the *Squillacote* opinion as not "pertinent" to the issue before the court in bold:

> **First, [the government] must prove that the disclosure of the material would be potentially damaging to the United States or might be useful to an enemy of the United States.**
>
> **And second, it** must prove that the material is closely held by the United States government.
>
> Where the information has been made public by the United States government and is found in sources unlawfully -- Sources lawfully available to the general public, it does not relate to the national defense.
>
> Similarly, where sources of information are lawfully available to the public and the United States government has made no effort to guard such information, the information itself does not relate to the national defense.

[4] The following is the *Morison* court's two-prong definition of NDI, with the portion excluded from the *Squillacote* opinion as not "relevant" to the issue before the court in bold:

> **there are two things that the government must prove. First, it must prove that the disclosure of the photographs would be potentially damaging to the United States or might be useful to an enemy of the United States. Secondly,** the government must prove that the documents or the photographs are closely held in

-5-

*Squillacote* court not only excised the "potentially damaging" prong of the NDI definition as irrelevant to the issue before it, but it also never even mentioned that element. The only discussion of "potential damage" or "injury to the United States" in *Squillacote* appears in its discussion of the heightened scienter requirement (not relevant here) in the statute at issue in *Gorin v. United States*, 312 U.S. 19 (1941). *See Squillacote*, 221 F.3d at 577.

Lastly with respect to *Squillacote*, it is also worth noting that the defendant's argument there – that "information available to the public can never be considered [NDI]," 221 F.3d at 575 – is entirely different than the issue raised by Mr. Hale. The argument presented here recognizes that there may well be cases where information in the public domain is insufficiently specific, or of unknown origin, such that the government will be able to establish that a defendant's disclosure constitutes NDI despite similar (or even the same) information being available to the public. Mr. Hale's argument is simply that information in the public domain (even if not the result of an official disclosure, or identical to the NDI charged in the case) may be considered by the factfinder in evaluating whether the charged disclosure had the potential to damage the United States. Because *Squillacote* related entirely to a different prong of the NDI definition than the argument raised here, it simply does not address – much less foreclose – the issue raised by Mr. Hale.

Moreover, the additional cases cited by the government in support of its contention that non-identical public domain information is irrelevant to both prongs of the NDI inquiry say no such thing. In fact, they establish the opposite. For

---

that [they] ... have not been made public and are not available to the general public.

example, the government relies on *United States v. Abu-Jihaad*, 600 F.Supp.2d 362 (D.Conn. 2009). *Abu-Jihaad*, however, stands for the diametrically opposite proposition than that for which the government cites it. The opinion the government relies upon is a ruling on a post-trial motion for a judgment of acquittal, in which the defendant argued that no reasonable jury could have found the disclosed information to constitute NDI because the public domain information he introduced at trial supposedly defeated the NDI element as a matter of law. 600 F.Supp.2d at 387. The court, however, denied the motion for judgment of acquittal, holding: i) that the disclosed information included detail not present in the public-domain information, and ii) that a reasonable jury could have found that the additional detail was potentially damaging to the United States based on its potential to assist in planning an attack on American forces in a way that the public domain information could not. *Id.* at 388-89. Thus, far from holding that public domain information is irrelevant to the NDI determination unless identical to the charged NDI, the *Abu-Jihaad* court allowed the defense to admit in evidence similar but not identical information to challenge whether the information was "potentially damaging." It simply held that, viewing the evidence in the light most favorable to the government (as it was required to do on such a motion), the evidence presented by the government was nonetheless sufficient to support a conviction. *Abu-Jihaad*, therefore, adds nothing to the government's argument that only lawful disclosures of identical NDI are admissible to challenge NDI status. In fact, the *Abu-Jihaad* court admitted in evidence exactly what the government claims to be irrelevant.

The government acknowledges that Judge Ellis in *United States v. Rosen*, 487 F.Supp.2d at 711-12, offered a lengthy discussion regarding the use of public domain

information, even if non-identical to the charged NDI, to challenge the "potentially damaging" element of NDI status. But the government's claim that Judge Ellis retreated from that position in *United States v. Mallory* is absurd. Apparently, the government speculates based on the presence of the phrase "lawfully available" in the *Mallory* jury instruction defining NDI that the Court excluded all evidence of public domain information (other than official disclosures of the charged NDI) from consideration at trial. As with the government's *Squillacote* argument, it ignores that this language appeared only with respect to the "closely held" element and was entirely absent from the portion of the instruction regarding the "potentially damaging" element (the last paragraph, beginning with "Second"):

> To prove that documents, writings, notes, or information relate to the national defense, there are two things that the Government must prove:
>
> **First,** the Government must prove that the material is closely held by the United States Government. Where information has been made public by the United States government and is found sources lawfully available to the general public, it's not closely held and as such does not relate to the national defense.
>
> Similarly, where the information is lawfully available to the public and the United States Government has made no effort to guard such information, the information itself does not relate to the national defense.
>
> Classified information does not become lawfully available by virtue of having been leaked. In determining whether material is closely held, you may consider whether it has been classified by appropriate authorities and whether it remained classified on the date or dates pertinent to the indictment.
>
> **Second,** the Government must prove that the disclosure of the material would be potentially damaging to the United

> States or might be useful to a foreign nation or an enemy of the United States.

*See United States v. Mallory*, 1:17-cr-154 (E.D.Va), Trans. of Proceedings (June 7, 2018, p.m.), at 1202-03 (relevant pages attached as Exh. 1) (emphasis added).

But it is not just the jury instructions that belie the government's argument. In fact, the government's assertion that public domain evidence was excluded from consideration in *Mallory* is simply false. A review of the record shows that he court in *Mallory* admitted plentiful evidence of public domain information – both information that came from official disclosures of information different from but related to the charged information, and information that came from non-official disclosures. For example, many of the government's claims of "potential damage" in *Mallory* were based on a claim that a list of topics in the charged NDI would alert foreign nations to the fact that the United States government had an intelligence interest in those topics. The defense was permitted to cross-examine the government's expert on that claim by pointing to *other* official disclosures, not identical to the charged NDI, that the defense admitted to show that foreign nations would already know that those topics were of interest to American intelligence, negating any potential damage from the charged disclosure:

> Q. Now without stating the title or words from this document, do you recognize that it's a report of a U.S. government agency?
>
> A. I do, sir.
>
> Q. And it's a public unclassified report, right?
>
> A. Yes.
>
> Q. Published in 2016?

> A. Yes, it is.
>
> Q. And made generally available on the internet?
>
> A. Yes, it was. . . .
>
> Q. Please look at page 3. And again, I'm not asking you to read it out loud, but I'm going to ask you to review it to yourself. There's an entry, a little more than halfway down the page for a country you talked about on direct. Do you see that?
>
> A. I do.
>
> Q. Now I'd like you to read the first three sentences there.
>
> A. I have done so. . . .
>
> Q. It's fair to say the United States certainly acknowledges openly that it has an interests [sic] in those topics discussed there, right?
>
> A. Yes, it does.

*See United States v. Mallory*, 1:17-cr-154 (E.D.Va), Trans. of Proceedings (June 5, 2018) at 949-50 (relevant pages attached as Exh. 2).

Similarly, in the testimony of the defendant's expert in *Mallory*, the defense was permitted to elicit the expert's opinion about potential damage to the United States based on public domain information, even where that information did not come from official government disclosures. For example, in response to the government's claim that some of the charged NDI would alert a foreign country to the fact that the United States had an intelligence interest in that country, the defense expert opined as follows:

> Q. Are you aware -- or what, if anything, are you aware of Foreign Country A with respect to the United States interests in that country?

>A. Well, I think it's clearly a topic you can find in
>
>>relevant media, in the press, it's of interest politically and even to most people outside the beltway are somewhat interested. So it's not surprising that the United States would be interested in Country A.

*See* Exh. 2 at 1029.

In light of the fact that the foreign country would easily know of the United States' interest in it from many sources, including non-official sources like "relevant media" and "the press," the expert opined that the disclosure with which the defendant was charged was not potentially damaging to the United States:

>Q. So based on your understanding on what's in the public record, what, if anything, would a foreign country do if they received a document with these words next to Number 2? Would they change their behavior in any way?
>
>A. I would think they would do nothing that they're not already doing. . . .
>
>Q. . . . What is your overall assessment as to the potential damage or risks to national security from the release of this document?
>
>A. I don't believe that this document would cause injury to the United States or an advantage to a foreign country . . .

*Id.* at 1030-31.

Significantly, this evidence and opinion was not only admitted in *Mallory*, but it came in at trial without objection by the government or the Court. That is because, like here, the scope of evidence that could be admitted to challenge the government's evidence on NDI status had been subject to pretrial litigation and rulings by the Court, in which the Court carefully considered whether such evidence could be admitted, and for what purpose. And, as both the jury instruction given in *Mallory*

-11-

and the trial testimony show, the court ruled that public domain information – regardless of whether it was identical to the charged NDI, and regardless of whether it could be traced to an official government disclosure – was inadmissible to challenge the "closely held" prong of NDI status but admissible to challenge the "potentially damaging" prong. The government's contention that *Mallory* somehow stands for the proposition that such evidence is inadmissible to challenge NDI status, therefore, is directly contrary to the facts.

## CONCLUSION

For all the foregoing reasons, this Court should reject the government's unsupported and erroneous contention that, in evaluating whether the government has met its burden to establish the NDI nature of the information charged in this case, the factfinder may only consider prior, official and lawful disclosures of the precise information Mr. Hale is charged with disclosing. That limitation is relevant to the "closely held" prong of NDI status, but has no relevance to the "potentially damaging" prong. As already noted, applying such a limitation to both prongs of the definition would not only contravene precedent – including the cases on which the government relies – but would also render the "potentially damaging" prong of the NDI definition surplussage. The only evidence that could ever defeat that prong, under the government's contorted reading of the cases, would also categorically defeat the "closely held" element, rendering the two prongs of the definition redundant to one another.

Respectfully Submitted,
DANIEL EVERETTE HALE
By Counsel,

Geremy C. Kamens
Federal Public Defender


_____/s/_____
Todd M. Richman
Va. Bar No. 41834
Cadence A. Mertz
Va. Bar No. 89750
Counsel for Mr. Hale
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0845
Facsimile: (703) 600-0880
Todd_Richman@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 17, 2020, I will file the foregoing via the CM/ECF system, which will electronically serve a copy upon all counsel of record.

                                              /s/
                                      Todd M. Richman
                                      Va. Bar No. 41834
                                      Counsel for Mr. Hale
                                      1650 King Street, Suite 500
                                      Alexandria, Virginia 22314
                                      Telephone: (703) 600-0845
                                      Facsimile: (703) 600-0880
                                      Todd_Richman@fd.org