**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Alexandria Division**

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | Criminal No. 1:19-CR-59 |
| ) | |
| v. ) | The Honorable Liam O'Grady |
| ) | |
| DANIEL EVERETTE HALE, ) | |
| ) | |
| *Defendant*. ) | |

**GOVERNMENT'S UNCLASSIFIED RESPONSE TO DEFENDANT'S MEMORANDUM
REGARDING *UNITED STATES V. SQUILLACOTE* AND THE DEFINITION OF
NATIONAL DEFENSE INFORMATION**

In 2014, Defendant Daniel Hale stole and disclosed without authorization a set of documents containing highly sensitive classified information. The stolen documents at issue concerned a range of matters. Yet, not everything in those documents will be relevant to the issue of whether Hale stole and disclosed national defense information (NDI). This is because, pursuant to Section 10 of the Classified Information Procedures Act (CIPA), we have designated discrete portions of those documents as NDI. Moreover, at trial, we will prove not only that the designated NDI was closely held, but also the particular ways in which Hale's theft and disclosure of the designated NDI potentially damaged the national security of the United States.[1]

For purposes of CIPA, Hale has noticed his intent to use at trial certain items of classified information that concern the unauthorized disclosure of classified information similar to the NDI

---

[1] As explained below, this Response is filed in conjunction with the Government's Classified Response to Defense's Memorandum Regarding *Squillacote* and the Definition of National Defense Information. The latter filing specifically details some of the potential harm we expect to establish at trial.

designated in this case. Hale wants to use these noticed items to counter our evidence of the potential damage resulting from the theft, retention, and disclosure of the designated NDI. Hale concedes that, under *United States v. Squillacote*, 221 F.3d 542 (4th Cir. 2000), these items of classified information are irrelevant to the "closely held" prong of the definition of NDI.[2] (Def.'s Mem. at 1, Dkt. 149.) He argues instead that they must be relevant to the other component of NDI—*i.e.*, the "potentially damaging" prong—or else the closely held and potentially damaging prongs would be redundant. (*Id.* at 12.) Hale's argument might have some cache if he were seeking to admit items of classified information that concerned prior unauthorized disclosures *identical* to the designated NDI. But, that is not the case. Hale wants to use at trial items of classified information that concern unauthorized disclosures that are, at most, similar to, but not the same as, the designated NDI.

Hale takes issue with our argument that *Squillacote* forecloses defendants from introducing at trial similar-but-not-the-same information for purposes of contesting the potentially damaging prong. As explained below, in reflecting upon Hale's reading of

---

[2] The Fourth Circuit in *Squillacote* found that "a document containing official government information relating to the national defense will not be considered available to the public (and therefore no longer national defense information) until the *official* information in that document is lawfully available." 221 F.3d at 578. The *Squillacote* court reasoned that, in light of *Gorin v. United States*, 312 U.S. 19 (1941), and *United States v. Heine*, 151 F.2d 813 (2d Cir. 1945), "the central issue is the secrecy of the information, which is determined by the government's actions," 221 F.3d at 577, and the "proper[] focus[] [for] the jury's attention [is] on the actions of the government when determining whether . . . documents [are] related to the national defense," *id.*

The Fourth Circuit further explained that "mere leaks of classified information are insufficient to prevent prosecution for the transmission of a classified document that is the official source of the leaked information." *Id.* at 578. Therefore, a defendant does not violate 18 U.S.C. § 793 by providing information obtained "'from sources that were lawfully available to anyone who was willing to take the pains to find, sift and collate it,'" *Id. at* 577. (quoting *United States v. Heine*, 151 F.2d 813, 815 (2d Cir. 1945)).

*Squillacote*, we agree that it is possible to interpret *Squillacote* as a decision about only the closely held prong. That does not mean, however, that *Squillacote* is not instructive here. It is very much so.

Moreover, even if the Court were to find *Squillacote* not illuminative in this case, the fact remains that this Court already has considered and rejected the relevancy argument that Hale reprises here. On October 22, 2019, Hale moved to compel the production of a number of documents and information, including instances of information in the public domain that was "the same or substantially similar" to the NDI that Hale is alleged to have stolen and disclosed. (Def.'s Mot. to Compel at 5–6, Dkt. 86.) Yet, on December 3, 2019, this Court unambiguously rejected Hale's substantial similarity theory of relevance. (Order, Dkt. 98.) This Court explained that the categories of documents Hale had sought to compel were, "to the extent they relate to NDI which is not charged in the Superseding Indictment, . . . irrelevant." (*Id.* at 3.) This Court also reasoned that Hale had "failed to identify any leaks, disclosures, or indication that the charged NDI was in the public domain prior to the charged crimes," and held that this "proposed substantial similarity requirement is an unworkable standard." (*Id.* at 3–4.).

Despite this unambiguous rejection of a similarity theory of relevance, Hale has decided to revive it ten months later in the context of CIPA. Accordingly, as we argued in our Section 6(a) Reply, Hale is essentially asking this Court to reconsider its December 3, 2019 ruling. The Court should not do so. The Court's ruling was correct ten months ago, and remains correct today.

**ARGUMENT**

A motion for reconsideration should be denied when it is "nothing more than a request that a district court change its mind." *United States v. Williams*, 674 F.2d 310, 313 (4th Cir.

3

1982).  Indeed, the Fourth Circuit has recognized just three grounds for reconsidering an earlier judgment.  They are: (a) accommodation of an intervening change in the controlling law; (b) accounting for new evidence not previously available; and (c) correcting a clear error of law or preventing manifest injustice.  *Hooker v. United States*, 200 F. App'x 237, 237 (4th Cir. Sept. 19, 2006) (per curiam) (describing *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998)).

The only possible ground for revisiting this Court's December 3, 2019 decision at this stage in the litigation is correction of a clear legal error.  Yet, Hale has not made such an argument to date.  Perhaps this is because he recognizes that the straightforward conclusion this Court reached in December 2019 was, at its core, premised on a straightforward analysis of the Federal Rules of Evidence.  (*See* Dec. 3, 2019 Order at 3) (deeming prior unauthorized disclosures of classified information other than the designated NDI irrelevant even if substantially similar).  To hold otherwise would invite open-ended diversions into prior unauthorized disclosures and public speculation, which would distract the jury from the core of this case: whether the narrow NDI that Hale is alleged to have stolen and disclosed was closely held and potentially damaging to the United States.

Hale instead argues at length that *Squillacote* does not prevent defendants from contesting the potentially damaging element of NDI by adducing evidence of prior unofficial disclosures even if those disclosures are not identical to the NDI at issue.  (Def.'s Mem. at 6.) According to Hale, a contrary reading of *Squillacote* would render the potentially damaging prong of NDI superfluous.  (*Id.* at 12.)  This is because, as Hale concedes, *Squillacote* bars juries from considering for purposes of the closely held prong of NDI classified information that is not identical to the NDI at issue or that entered the public domain through anything other than an

4

official, lawful disclosure. (*Id.* at 1.) Hale contends that applying the same limitation to the potentially damaging prong eliminates any daylight between the two prongs of NDI because "[t]he only evidence that could ever defeat [the potentially damaging] prong . . . would also categorically defeat the 'closely held' element . . . ."[3] (*Id.* at 12).

In considering Hale's argument on *Squillacote*, we agree with Hale that it is possible to interpret *Squillacote* as a decision about only the closely held prong. (*Id.* at 4–6.) Yet, a narrower reading of *Squillacote* does not help Hale. He is still wrong that this Court should deem as relevant to the potentially damaging prong classified information that concerns unauthorized disclosures that are similar, but not identical, to the designated NDI. This is so as a matter of logic and in light of the concerns the Fourth Circuit expressed in *Squillacote*.

The nub of Hale's argument is that both prongs of NDI must serve a purpose, and therefore prior disclosures of similar-but-not-the-same information must be admitted or else the potentially damaging prong would be rendered "surplusage." (*Id.* at 12.) Hale is right that both

---

[3] Hale also argues against our interpretation of *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362 (D. Conn. 2009), and *United States v. Mallory*, 1:17-CR-154 (E.D. Va.). We make two points in response.

First, neither case appears to have grappled directly with the issue presented here, nor is it clear the extent to which the parties actually argued the relevance of prior unauthorized disclosures to the potentially damaging prong. So, it is unpersuasive for Hale to claim that *Abu-Jihaad* and *Mallory* definitively favor his position over ours.

Second, we note that Hale mistakenly contends that we made an assertion regarding *Mallory* that we did not. Hale claims that we "assert[ed] that public domain evidence was excluded from consideration in *Mallory*." (Def.'s Mem. at 9.) We made no such assertion. Moreover, Hale's recounting of *Mallory* reiterates the non-dispositive nature of that case. He claims that "the court ruled that public domain information—regardless of whether it was identical to the charged NDI, and regardless of whether it could be traced to an official government disclosure—was inadmissible to challenge the 'closely held' prong of NDI status but admissible to challenge the 'potentially damaging' prong." (*Id.* at 12.) Yet, such a ruling is not evident in the jury instruction that Hale quotes nor has Hale identified a particular instance in which the *Mallory* court was asked to consider the particular issue presented here.

5

elements of NDI have a role to play. But, at the same time, that does not mean a defendant can put forward any evidence he wishes to contest the potentially damaging prong.

Consider, for instance, a case in which Defendant A disclosed NDI in 2020 that was *identical* to that which Defendant B disclosed without authorization in 2015 (but that has never been the subject of an official and lawful disclosure). It may well be that, as a result of the 2015 disclosure, the repeated disclosure of the same information in 2020 might no longer be harmful—even though it indisputably was still "closely held." The prior disclosures from 2015 thus would be arguably relevant at trial.

The facts here, however, are different. That is, Hale might be able to use classified information concerning unauthorized disclosures prior to his conduct in 2014 to argue at trial that his subsequent theft and disclosure of the *same* NDI in 2014 did not potentially damage the United States, even though the NDI at issue indisputably was still closely held in 2014. In such a counterfactual, the potentially damaging prong would not be "redundant" to the closely held prong. (*Id.* at 12.) Accordingly, the reason the two prongs of NDI in Hale's case seem redundant for purposes of CIPA is because the facts make them so: Hale has not noticed classified information concerning unauthorized disclosures that involve the exact same NDI and that predate his conduct in 2014.

The fallacy of Hale's similarity theory of relevance is laid plain by a close reading of *Squillacote*. Animating the Fourth Circuit's decision in *Squillacote* were the second-order effects of the defendants' requested jury instructions. The Fourth Circuit declined to find "that the presence in the public domain of snippets of unattributed and unverified information similar to that contained in official documents closely held by the government prevents a prosecution based on the transmission of the document itself." 221 F.3d at 579. The *Squillacote* court

6

reasoned that a contrary rule "would effectively require the government to prove, at least as to some piece of information contained in the document, that no person anywhere in the world had ever publicly speculated about that information," which is the "kind of 'proof of a negative' [that] would unduly hamper the government's ability to protect sensitive information and would render successful prosecutions in cases involving closely-held documents nearly impossible." *Id.*

This same logic applies equally to the potentially damaging prong. After all, if the Court were to rule that Hale can use the items of classified information he has noticed regarding prior *similar* unauthorized disclosures for purposes of contesting potential damage, then the kind of adverse effects that the Fourth Circuit expressed concern about in *Squillacote* would result. For example, adopting Hale's similarity theory of relevance has no limiting principle. The defense would be able to present an infinite spectrum of evidence *other* than the NDI designated, and to argue that the potential harm from such infinite spectrum somehow detracts from the harm actually linked to the particular NDI designated in this case. The Court and the jury would then have to engage in subjective and philosophical line drawing exercises as to how sufficiently similar prior leaks of classified information are to the NDI at issue. They even would have to decide how to determine similarity in the first place; whether the issue was one of whether the information was "similar" in its specifics to the details of the designated NDI at issue, or "similar" in the potential damage the information would risk creating, or "similar" in some other way.

Likewise, a ruling that Hale's similarity theory of relevance controls here could result in the government being unable to prosecute the theft and unauthorized disclosure of highly sensitive government information. This is because we would have no ability to limit the

disclosures of classified information we are required to make to such defendants or to the classified information defendants would be permitted to disclose at trial. After all, if the gates are open for the defendant to present the harms triggered by classified information *other* than the NDI specified, then there is no logical limit to the information that the defendant can present and likewise no logical limit to the information that the defendant would be entitled in discovery. In short, as this Court wrote ten months ago, "the defendant's proposed substantial similarity requirement is an unworkable standard."[4] (Dec. 3, 2019 Order at 3.)

Hale, in short, is wrong about the redundancy of the two prongs of NDI in this case. The admissibility of many of the items of classified information that Hale has noticed turns on nothing more than a straightforward relevance determination. This Court, of course, already has made that determination, rejecting a "substantial similarity" test as unworkable. *Id.* Pursuant to an analysis under Rules 403 and 404, that ruling was clearly correct when it was made last year, and it is clearly correct today.

(CONTINUED ON NEXT PAGE)

---

[4] At times, Hale seems to have abandoned his proposed substantial similarity test for purposes of CIPA and instead argued that it is sufficient if prior unauthorized disclosures are merely similar to the designated NDI. Certainly if substantial similarity is unworkable, then mere similarity is even more so.

The issue Hale has raised, ultimately, is fact-dependent. Hale's arguments on the extent to which the designated NDI has been disclosed previously are greatly undercut upon considering the particular potential damage posed by the narrow NDI designated in this case under Section 10 of CIPA. Accordingly, we have filed with the Court a copy of the expert notice, which is classified, that we provided to defense counsel on September 17, 2020, and a short classified filing that draws attention to some key aspects of the NDI. As the Court will see, the generalized nature of the information Hale seeks to introduce is wholly irrelevant to the specific potential damage posed by the disclosure of the NDI designated in this case.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: October 23, 2020   By:   /s/
Alexander P. Berrang
Gordon D. Kromberg
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
Email: Alexander.P.Berrang@usdoj.gov
Email: Gordon.Kromberg@usdoj.gov

By:   /s/
Heather M. Schmidt
Senior Trial Attorney
National Security Division
United States Department of Justice
950 Pennsylvania Ave., NW
Washington, D.C. 20530
Tel.: (202) 233-2132
Fax: (202) 233-2146
Heather.Schmidt@usdoj.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 23, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

/s/
Alexander P. Berrang
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3981
