**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **No. 1:19-cr-59** |
| **v.** | ) | |
| | ) | **Hon. Liam O'Grady** |
| **DANIEL EVERETTE HALE,** | ) | |
| | ) | |
| **Defendant.** | ) | **Trial: Dec. 1, 2020** |

## MOTION TO CONTINUE TRIAL DATE

COMES NOW the defendant, Daniel Hale, through counsel, and moves this Honorable Court for a relatively brief continuance of the trial in this matter for the reasons set forth below. The defense believes it can be prepared for trial in early February or thereafter. In support of this Motion, defendant states as follows:

1.     A jury trial of this matter is currently scheduled to begin on December 1, 2020, less than a month from now.

2.     The parties were last before this Court for a CIPA hearing on October 13, 2020. That date is significant for two pertinent reason: First, during that hearing the government announced for the first time that it would have new discovery highly relevant to the defense that would have to be produced in a classified setting. The government made that production on October 23 and 26, 2020. On October 27, the government made an additional classified production. The defense is in the process of reviewing these additional productions. Second, after the October 13, 2020, CIPA hearing, as he was returning from work, Mr. Hale's motorcycle was hit by a car. Mr.

Hale suffered a broken ankle as well as numerous other injuries.  His motorcycle, which is his principal mode of transportation, was totaled.  Mr. Hale's ankle required surgery, which was performed on October 30, 2020.  He expects to be on crutches and then in a supportive boot for weeks.  He also may need a regular course of physical therapy.  Between the physical limitations and the damage to his motorcycle, Mr. Hale's ability to get around has been seriously impeded by this unfortunate accident. The defense has concerns about his ability to reliably and safely travel to court for a trial in just a few weeks, as well as whether he would be able to engage in physical therapy as needed if the trial goes forward on schedule.  Further, Mr. Hale has been prescribed opiate pain medication that, since October 14, has impacted his ability to focus on the very serious issues a defendant he must confront in this particularly fraught period in his case.

3.     As well, the additional discovery produced at the eleventh hour has created a significant hurdle to the defense's preparation.[1]  First, the additional discovery goes to the heart of one of the defenses counsel were exploring.  While this was almost certainly the government's aim, it is unclear why the government waited until a month before trial to turn this material over when the case has been under investigation for six years.  Nevertheless, it is a substantial amount of new material counsel must review themselves and discuss with Mr. Hale so that he can make

---

[1]  It is unheard of, in counsel's experience, for classified discovery to be produced after CIPA Sections 5 and 6 proceedings have occurred.

informed decisions about this case.[2]  Second, to the extent that counsel must now turn to reviewing this new discovery, it takes attention away from the other numerous tasks that must be accomplished to prepare for a jury trial.

4.     Further, the defense also must prepare for trial in light of the Court's ruling on the government's CIPA § 6 motion, which appears to have foreclosed the use of any of the classified information identified in the defense's CIPA § 5 notice. However, although the Court's order has issued, the opinion underlying the Court's order has not; as a result, the defense is unaware of the reason for the Court's rulings. *Cf.* CIPA (18 U.S.C. App. III) § 6(a) ("[a]s to each item of classified information, the court shall set forth in writing the basis for its determination.")  Because those rulings are based on relevance – the reasoning for which would apply equally to unclassified evidence the defense may seek to adduce at trial – counsel at this time has no way of knowing how the Court's rulings may foreclose certain defenses it intends to pursue, or unclassified evidence it intends to use.

---

[2] The government's late-coming productions likely resulted from the defense's CIPA-required disclosure of the details of its trial strategy in response to the government's motion under CIPA § 6.  But those defense disclosures relied on plainly relevant data and print jobs produced by the government more than a year ago—and likely known to the government for longer still.   However long it had been aware of that information, the government appears not to have sought out the additional discovery until mid-October 2020.  This lackadaisical approach to uncovering facts relevant to the heart of the case does not inspire confidence that the government has diligently gathered and brought forward evidence favorable for the defense, as, of course, it must under *Brady v. Maryland*, 373 U.S. 83 (1963), and related case law.  *See also* Due Process Protections Act, Pub. L. N. 116-182, 234 Stat. 894 (Oct. 21, 2020) (amendment Federal Rule of Criminal Procedure 5 to incorporate reminder of government's *Brady* obligations into proceedings on first appearance of criminal defendant).

5.      Finally, and perhaps most importantly, the country is in the throes of the most significant increase in coronavirus cases since the pandemic's onset more than eight months ago.  Nationwide new cases are nearing – and expected to top 100,000 – per day in the coming weeks.  Indeed, the past week saw a new record in coronavirus diagnoses nationwide, topping the previous weekly record by more than 10 percent.[3]  Although there have been some encouraging advances in how the virus is treated, it is no less virulent or more preventable now than when the pandemic began.  Indeed, the nation saw over 1,500 deaths in a single day this week for the first time in nearly six months.[4]  Its threat to the orderly course of Mr. Hale's trial cannot be understated.  First, it is a considerable safety risk for all involved, including the Court, staff, jurors, attorneys, and witnesses.  Some of us may be generally healthy, but plenty of others who will be involved in this trial may suffer from underlying conditions – or live with those who do – that could pose a very real threat to their health or life, or that of a loved one, if they contract the virus.  In a situation where the virus was receding and new cases were dwindling, measures might be put in place to effectively contain or curtail contagion over the course of a week or more in close quarters.  But the virus is not receding.  Rather, it is gaining strength.  The

---

[3]  *See* https://coronavirus.jhu.edu/region/united-states (as of November 5, 2020, over 629,000 cases have been diagnosed in the United States, topping the previous record of 569,350 in a single week).

[4]  *See* https://www.washingtonpost.com/graphics/2020/national/coronavirus-us-cases-deaths/?itid=sf_coronavirus_subnav (showing 1,528 deaths on November 3, more than any date since May 14, with the exception of two outlier days in between when there were isolated spikes in reported deaths due to changes to reporting methodology on those dates).

United States is in the middle of by far the most widespread outbreak yet – although case spiked in April and again in late July/August, those numbers pale compared to the recent upturn.[5]  The impact of a coronavirus infection during the course of Mr. Hale's trial would be enormous.  Even the possibility of an infection could force the suspension of proceedings while the positive case or symptomatic individual recovers or is cleared to return to the courtroom.  The length of such a suspension could be days or even weeks, depending on the nature of the suspected case and the parties' schedules.

6.      Second, it is not merely those present in the courtroom who could cause disruption to the trial.  Many of those involved have children who are attending school remotely, straining parental resources.  Others may have children in school who, if they contract symptoms that *could* be indicative of coronavirus, would suddenly have to be kept home for a lengthy period without parental resources to accommodate such a disruption.  But further, if the family member of any person involved in a trial begins to show symptoms linked to the coronavirus or is exposed to a known positive

---

[5] At their peak (prior to the instant increase in cases), new cases reported daily nationwide reached the 30,000s in April and the 70,000s in late July, as compared to nearly 100,000 per day now.  *See* NY Times, Covid in the U.S.: Latest Map and Case Count (as of Nov. 4, 2020), available online at <nytimes.com/interactive/2020/us/coronavirus-us-cases.html> ("NY Times Covid website").

Moreover, the recent uptick is not solely or even primarily the result of better detection, because both the hospitalization rate and death rate are increasing almost as dramatically as the increase in the infection rate.  *See* https://www.washingtonpost.com/graphics/2020/national/coronavirus-us-cases-deaths/?itid=sf_coronavirus_subnav (while new cases rose 17 percent in the past week, deaths and hospitalizations each rose nearly 15 percent).

case, it is highly likely that that the trial would have to cease while the person's Covid status is determined.

7.      The government has estimated that Mr. Hale's trial could last two weeks.  The risk of such an exposure occurring during a two week trial involving dozens of individuals during the midst of the nation's largest coronavirus outbreak yet is substantial, and dramatically greater than the risk that would occur in a short, one- or two-day trial.  And the disruptive effect will be magnified by the complexity involved in a trial dealing with classified information, in which hard-copy binders of classified exhibits will likely have to be repeatedly handed to, and collected from, jurors, witnesses and court staff.

8.      Such risks, however, are unnecessary in this case.   There is no particularized need to go to trial on December 1.  The government investigated this case for five years before bringing an indictment, underscoring a lack of urgency.  The case itself has been ongoing for more than year, and if the government was concerned about speed, it should not have waited until one month before trial to dump a significant and highly relevant set of classified productions on the defense.  And, Mr. Hale, who is out of custody and subject to pretrial supervision, has waived and is further willing to waive his speedy trial rights.  To the extent the government would like to contend that the *public* also has a right to a speedy trial, the defense submits that the public's right to access the trial would be better served by waiting until the current Covid outbreak has subsided rather than forcing those who wish to attend to jeopardize their health.

9.     Third, the current Covid outbreak will adversely affect Mr. Hale's Sixth Amendment right to an impartial jury representing a fair cross-section of the community.  The pandemic has impacted courts' ability to convene a representative cross-section of the community, and more broadly to conduct criminal jury trial proceedings.[6]  In June, Chief Judge Davis emphasized the need for a jury that is "selected from a fair cross-section of the community," and noted "the reality that many individuals, including those in communities disproportionately impacted by the COVID-19 pandemic, do not have child care, to include morning care or afternoon care, while school is not in session in Virginia.  Furthermore, the COVID-19 pandemic has rendered many grandparents or other family members/friends with medical conditions unable to safely assist with child care so that a summonsed parent can appear in this Court[.]"[7]  At the time the Chief Judge issued these general orders, the

---

[6] *See e.g.*, *United States v. Young*, No. 19-cr-00496-CMA, 2020 WL 3963715 (D. Colo. July 13, 2020) (ordering a 60-day continuance in part because "the Court would be obligated to candidly inform potential jurors of the danger associated with their service. As a consequence, it is highly likely that, even if a jury is eventually selected, it would not reflect an adequate cross-section of society because any individual who is at a heightened risk of harm from the virus—or anyone who might live with or frequently associate with such a person—would likely be excused for cause.") (collecting cases where courts granted continuances due to COVID-19 under 18 U.S.C. § 3161(h)(7)(A)); Melanie D. Wilson, *The Pandemic Juror*, 77 WASH. & LEE L. REV. ONLINE 65, 82-83 (2020) ("Given that the virus is harming people of color in disproportionate numbers … resuming jury trials during the pandemic may exacerbate racial disparities in jury pools and create trial juries that do not otherwise represent the community."), available at <https://scholarlycommons.law.wlu.edu/wlulr-online/vol77/iss1/6>.

[7] *See* General Order No. 2020-19 (June 30, 2020) at 13-16, 20-21; Gen. Order No. 2020-02 at 3-4 (Mar. 13, 2020) (noting "the Court's anticipated reduced ability to obtain an adequate spectrum of jurors").  *See also Nat'l Assoc. of Criminal Defense Lawyers, Criminal Court Reopening and Public Health in the COVID-19 Era* at 8 (June 2020) ("courts cannot ensure that juries reflect a fair cross section of the

7-day average of cases in Virginia was increasing to a high of 1,195 infections per day in late May before trending back down.[8]  The 7-day moving average now is 1,324, as of November 3, and increasing.[9]  Moreover, matters will only deteriorate with the onset of flu season.[10]

10.     The defense has discussed continuing the trial date with counsel for the government, who would agree to a one-week continuance but oppose anything further.  Government counsel report that scheduling conflicts would render them unavailable until March 2021.  Government counsel's chief objection appears to be that the case has been going on long enough.  The defense agrees; Mr. Hale certainly would like to be done with this.  But speed should not trump Mr. Hale's right to effectively-prepared counsel and to an impartial jury.  Nor should it trump the health and safety of all involved.  Nor, of course, did the government's desire for speed cause it to move the case any faster during the four-plus years between the time it finished investigating the case and when it finally brought charges.

---

community given varying rates of infection, mortality, and fear in subsets of our society defined by race, socio-economic status, and perhaps even political affiliation"), available at <https://nacdl.org/getattachment/56802001-1bb9-4edd-814d-c8d5c41346f3/criminal-court-reopening-and-public-health-in-the-covid-19-era.pdf>.

[8] NY Times Covid website, Virginia Covid Map and Case Count, available at <https://www.nytimes.com/interactive/2020/us/virginia-coronavirus-cases.html>.

[9] *See id.*

[10] *See* Marla Broadfoot, *Coronavirus and the Flu: A Looming Double Threat*, Scientific American (Sept. 6, 2020), available at <https://www.scientificamerican.com/article/coronavirus-and-the-flu-a-looming-double-threat/>.

11.    A continuance to early February or thereafter would allow the defense to prepare effectively and give Mr. Hale time to heal to a point where he is sufficiently physically recovered, more mobile and less affected by his medication.  It is true, however, that the risks posed by COVID-19 may not recede as predictably.  This fact could counsel for a slightly longer delay, but the defense is not seeking such a delay.

Respectfully Submitted,

DANIEL EVERETTE HALE
By Counsel,

Geremy C. Kamens
Federal Public Defender


_____/s/_____
Todd M. Richman
Va. Bar No. 41834
Cadence A. Mertz
Va. Bar No. 89750
Counsel for Mr. Hale
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0845
Facsimile: (703) 600-0880
Todd_Richman@fd.org

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 5, 2020, I filed the foregoing via the CM/ECF system, which will electronically serve a copy upon all counsel of record.

_____/s/_____
Todd M. Richman
Va. Bar No. 41834
Counsel for Mr. Hale
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0845
Facsimile: (703) 600-0880
Todd_Richman@fd.org
