IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:19-cr-59 |
| | ) | |
| DANIEL EVERETTE HALE | ) | |

Government's Opposition to Motion to Continue Trial Date

Eighteen months ago, Daniel Hale was arrested for stealing and disclosing national defense information without authorization. He has been preparing for the charges lodged against him ever since. Now, barely four weeks before trial, he moves for a lengthy continuance. He has no good reason for his motion, and it should be denied.

A.   Hale's Motorcycle Accident

Hale first argues that the trial should be continued because, on October 13, 2020, he suffered a broken ankle and other injuries in a motorcycle accident. Motion to Continue Trial Date ("Hale's Motion") at 1-2. That accident, while unfortunate, is not grounds to delay a trial scheduled for six weeks later. Over the past 18 months, Hale has had ample time to prepare for trial, and even now, he has nearly four weeks more to engage in additional preparation.

B.   Production of Discovery in October 2020

Hale next argues that the government provided him with additional discovery only last month. *Id.* at 2-3. As this Court knows, the production of discovery documents is an ongoing process before every complicated trial. In any event, the bulk of the discovery production of which Hale now complains consists simply of the same documents that he received in discovery long ago, but that are now formatted slightly differently.

Most of last month's productions concerned a discrete anomaly - - brought to the attention of the government by Hale in September 2020 - - that occurred in the course of the government's printing out of documents in connection with the investigation long ago.  Defense counsel represented that they found color and shape discrepancies between (a) the documents produced in discovery by the government that purported to be what Hale printed at NGA; and (b) the documents that the Reporter published.  Accordingly, defense counsel represented that they intended to argue that, based on the existence of those discrepancies, the Reporter's source must have been someone other than Hale.

Upon learning of the defense's interpretation of the significance of the discrepancies, we investigated the issue promptly.  We found that Hale's printing activity at NGA generated electronic binary computer files that, when rendered into hard-copy documents, show the content of the documents Hale printed.  Hard-copy documents resulting from those binary computer files were printed early in the investigation, and were provided to the defense long ago.  Last month, we found that the discrepancies that the defense identified are products only of how the electronic binary computer files were converted into the paper documents that were produced to defense in discovery in the first place.

To clarify the confusion caused by the method by which we initially converted the electronic binary computer files intto paper documents for discovery, we provided to Hale last month (a) the electronic versions of the binary computer files of the documents that Hale printed at NGA; (b) copies of those electronic binary computer files as rendered by two particular viewers (software that enables humans to view binary computer files); and (c) copies of those electronic binary computer files as printed when the binary files were sent to a printer without them first being opened in any viewer.

These three renderings of the electronic binary computer files - - produced to Hale last month - - show that the formatting discrepancies that appeared between (a) the published versions of the documents; and (b) the hard copies of those documents that the government provided in discovery long ago (to represent the NGA's electronic capture of what Hale printed at NGA), resulted only from the idiosyncrasies of the software that the government used years ago to render into paper form the electronic computer files in the first place.  In short, with software that more accurately renders the electronic computer files into paper copies of those files, they show that the documents that Hale printed were identical to the documents that were published.

In any event, even absent a continuance, by the time of trial, Hale will have had the October 2020 discovery productions for more than a month.  In other words, he will have had ample time to digest this discovery production.[1]

C.      This Court's Reasoning in Granting the Government's CIPA § 6 Motion

Hale's third argument is based on what he claims is this Court's failure to explain its reasoning for the grant of the Government's motion under CIPA Section 6(a).  *Id.* at 3.  Hale's desire to see this Court's reasoning on the CIPA Section 6 motion, however, is no reason to continue the trial; after all, he has no right to an interlocutory appeal of that ruling.  We suspect that, in seeking that reasoning, Hale's actual agenda is to obtain another opportunity to revisit this

---

[1] Hale appears to accuse the government of providing discovery at the "eleventh hour" *for the purposes of* creating "a significant hurdle to his preparation for trial." Hale's Motion at 2 ("while this was almost certainly the government's aim. . . ").  We hope this invective was merely the result of an errant omission of the word "not" - - but we respond to it in case it was *not* a typo. Once defense counsel, in September 2020, characterized the formatting anomalies as important, we investigated them promptly.  As we represented in Court at the hearing on October 13, 2020, it was not until October 9, 2020, that we were able to determine the cause for the rendering issues with the binary files.  Further, we provided this discovery promptly after receiving it from the NGA.  In any event, characterization of the timing of the disclosure - - more than a month before trial - - as occurring "at the eleventh hour" presupposes the existence of a very slow clock.

Court's ruling from December 3, 2019, barring him from seeking to undercut the government's proof of harm by introducing evidence of disclosures that were not identical to the classified national defense information that was disclosed by Hale, but *similar* to it. Dkt. 98, at p. 3 (ruling that "to the extent [these materials] relate to NDI which is not charged in the Superseding Indictment, they are irrelevant. Furthermore, the defendant's proposed substantial similarity requirement is an unworkable standard"). Accordingly, we suspect that Hale hopes that, in its decision on the Section 6 motion, this Court will back away from that earlier ruling. Hale already has had two bites at that same apple; his desire to obtain a third is no grounds for a continuance.

D. The Problems Posed by COVID

Hale's fourth argument is the one to which he devotes the bulk of his pleading - - and the one that he terms as the most important. In short, Hale argues that the trial should be continued because the existence of the coronavirus inhibits his ability to obtain a fair trial. *Id.* at 4-8. We sympathize with the limitations that Hale will encounter as a result of the pandemic, but they are ones with which everyone in our society must deal. Indeed, if Hale is entitled to a continuance because of the coronavirus, then virtually every defendant is - - and the justice system would grind to a halt. Inasmuch as other defendants are required to go to trial during this difficult time, Hale must as well.

We cannot help but point out that, if the existence of the coronavirus justifies a continuance now, there is no guarantee that conditions will be better months from now. To the contrary, they may be the same, or even be worse. We know that we can conduct a trial now. As a result, we should do so now.[2]

---

[2] Hale argues that one reason the trial should not be held now is that "hard copy binders of classified exhibits will likely have to be repeatedly handed to, and collected from, jurors,

E.  <u>The Government Cannot Try This Case in February</u>

Hale accurately represented to the Court that we oppose his motion to the extent that he seeks a continuance of more than one week - - and that if this matter is continued, undersigned counsel will not be available for a trial in this matter until March.  We cannot help but be disappointed, therefore, that, nevertheless, Hale proposed a trial date for February.  To repeat, we are ready for trial in December - - but if it must be continued, then, as a result of other commitments, we cannot try this case in January or February.

<u>Conclusion</u>

For the reasons stated above, the defendant's motion should be denied.  The trial should not be continued.  If it needs to be continued, it should be continued for no more than a week.  And, if it must be continued more than a week, it should not be scheduled before March 2021.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

By:    /s/
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov

---

witnesses, and court staff."  Hale's Motion at 6.  As we have repeatedly represented, however, the government's exhibits will be declassified for the trial - - so contrary to Hale's claims, no binders of classified exhibits will be handed to or collected from jurors (or anyone else) at trial.

5

CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2020, I electronically filed the foregoing Government's Opposition to Motion to Continue Trial Date with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

/s/
Gordon D. Kromberg
Assistant United States Attorney
Virginia Bar No. 33676
Assistant United States Attorney
Attorney for the United States
2100 Jamieson Avenue
Alexandria, VA  22314
(703) 299-3700
(703) 837.8242 (fax)
gordon.kromberg@usdoj.gov