IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) No. 1:19-cr-59 |
| | ) |
| **DANIEL EVERETTE HALE,** | ) Hon. Liam O'Grady |
| | ) |
| Defendant. | ) |

**REPLY IN SUPPORT OF MOTION FOR A DAUBERT HEARING WITH RESPECT TO GOVERNMENT EXPERT ON VALUE OF PROPERTY**

COMES NOW the Defendant, Daniel Everette Hale, by counsel, and files this brief reply in support of his Motion for a *Daubert* Hearing with Respect to Government Expert on Value of Property (ECF No. 154). The government's Opposition (ECF. No. 162), by failing to respond to any of the arguments raised in the Motion, effectively concedes them. Instead, the government responds almost entirely to arguments not made in the Motion, such as defending Dr. Lang's qualifications. Because the government has no substantive response to the arguments actually made – indeed, the government offers not a single word defending the intellectual rigor of the analysis it proposes to admit as expert testimony – this Court should grant the Motion, hold a *Daubert* hearing, and exclude the government's proposed expert testimony.

The government, first, spends several pages defending Dr. Lang's expertise, primarily talking about how he has studied the characteristics of those who have committed espionage, such as how many people they told of their activities, or how many had exhibited "concerning behavior or changes in behavior prior to the

perpetrators' arrests." ECF No. 162 at 4-5. The Motion for a *Daubert* Hearing, however, is about Dr. Lang's analysis on the value of leaked classified documents in this case, not about his qualifications generally, or his prior work examining the personal traits of those who commit espionage, which is of course far afield from the subject of his proposed testimony. The government thus spends the entire first six pages of its filing (up until the second section that begins with a "B" heading," which should apparently be a "C," on page 7) responding to qualifications that were not challenged in the Motion.

In a similar vein, the government props up and shoots down another argument the defendant did not raise: that Dr. Lang's testimony fails to meet the factors cited by *Daubert* for evaluating scientific testimony. *See* ECF No. 162 at 5-6 (citing cases for the proposition that "motions to prevent the presentation of expert testimony are uniformly rejected when they attempt to measure applied social sciences in the same way as physical sciences.") The Motion for a *Daubert* Hearing, however, went to lengths to explain that it was *not* raising such an argument. It never, for example, cited the fact that Dr. Lang's work had not been peer reviewed or independently tested, or complained of the lack of information regarding its error rate. Instead, the Motion made clear that:

> even where the substance of an expert's testimony does not lend itself to evaluation under the specific factors set forth in *Daubert* for evaluating scientific testimony, the Court's gatekeeping function must nonetheless "ensure the reliability and relevancy of expert testimony [by] mak[ing] certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that

>   characterizes the practice of an expert in the relevant field."

ECF No. 154 at 6 (citing and quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 147, 152 (1999)).

Tellingly, after eliding the issue by establishing the uncontested proposition that Dr. Lang's testimony should not be evaluated under the scientific criteria listed in *Daubert*, the government never deals with the issue actually raised in the Motion –whether the proposed testimony is supported by sufficient "intellectual rigor" to satisfy Fed. R. Evid. 702. On that point, the government is essentially silent. It never responds, for example, to the fact that Dr. Lang's analysis is weighted heavily toward cases that are so factually distinct as to be meaningless to the facts of this case – the value of software sold in violation of export regulations, or the amount a Cold War adversary paid a spy for decades of high-level spying. Nor does the government explain the supposed intellectual rigor behind Dr. Lang's decision to exclude from his analysis cases *most like* the instant case – where the exfiltration was not financially motivated. It may be that there is no way to meaningfully include such cases (given the lack of evidence of value), but Dr. Lang does not even mention them or consider how the cases he excluded are different from the cases he studied, or how those differences might affect valuation in a way meaningful to the facts of *this* case. As set forth in the Motion, such cases are likely to involve different types of documents than cases in which a person steals documents for monetary gain, and the differences are likely to be highly relevant to valuation. *See* ECF No. 154 at 9. The fact that Dr.

Lang's analysis excludes any discussion of these cases casts doubt on the reliability and intellectual rigor of the analytical process he employed.

In sum, Dr. Lang's proposed testimony is too untethered from the facts of this case to be of use to a jury. To return to the real-estate analogy mentioned in both Dr. Lang's report (ECF No,. 154-1 at 3) and in the Motion (ECF No. 154 at 1), his report is neither akin to a valuation of a particular property – in which the particulars of the property are analyzed against comparable properties in the same geographical area to give an approximate value of the subject property – or to a report educating the jury about the real estate market in the region in question. Such a report would set forth not only the range of prices at which properties have recently sold, but also the factors that distinguish real-estate transactions at the high end of that range (e.g., brand new 100,000 square foot office buildings in the most expensive part of town) from the least (e.g., run-down one-bedroom condominiums in the least expensive part of town). Either type of report would pass the helpfulness-to-the-jury test because it would help the jury apply the expert's opinion to the valuation question before it. But where, as here, an expert simply provides a raw average valuation without explaining the spectrum of cases that make up that average or what factors would support a value above or below that average, the testimony is not helpful to the jury. And that is particularly true where, as here, the expert's average is based on a set of cases that excludes those most like the instant case and is weighted heavily toward cases most *unlike* the instant case.

Rule 702, as well as *Daubert* and its progeny, place upon this Court the duty to evaluate an expert's proposed testimony pre-trial and to preclude expert testimony from admission if it does not meet the legal standard. Dr. Lang's proposed report, which neither purports to address the facts of this case nor to educate the jury on the factors that could influence its valuation of the documents in question, is not supported by intellectual rigor and should be excluded.

Respectfully Submitted,

DANIEL EVERETTE HALE
By Counsel,

Geremy C. Kamens
Federal Public Defender

/s/ Todd M. Richman
Todd M. Richman [Va. Bar No. 41834]
Cadence A. Mertz [Va. Bar No. 89750]
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0845
Facsimile: (703) 600-0880
Todd_Richman@fd.org

Emma K. Dinan [Admitted pro hac vic]
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001

*Counsel for Mr. Hale*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 16, 2020, I filed the foregoing via the CM/ECF system, which will serve a copy electronically upon all counsel of record.

                                        /s/ Todd M. Richman
                                        Todd M. Richman [Va. Bar No. 41834]
                                        1650 King Street, Suite 500
                                        Alexandria, Virginia 22314
                                        Counsel for Mr. Hale
                                        Telephone: (703) 600-0845
                                        Facsimile: (703) 600-0880
                                        Todd_Richman@fd.org