**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | No. 1:19-cr-59 |
| | ) | |
| DANIEL EVERETTE HALE, | ) | Hon. Liam O'Grady |
| | ) | |
| Defendant. | ) | Sentencing: July 13, 2021 |

## MOTION TO COMPEL PRODUCTION OF EVIDENCE OF ACTUAL HARM

Defendant, Daniel Hale, respectfully moves this Court to compel the production of any damage assessment performed by the intelligence community or any other U.S. government agency and any other evidence of actual harm—or lack thereof—resulting from Mr. Hale's offense conduct. The defense is entitled to this information pursuant to Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963), and related case law, which extend the government's production obligations to sentencing material. The government has refused to produce the responsive documents.[1]

As explained herein, these materials pertain directly to harm allegedly caused by Mr. Hale's actions, a question central to the issues this Court must consider at sentencing—distinct from the existence of *potential* for harm that is an element of the offense under *United States v. Morison*, 844 F.2d 1057, 1071-72 (4th Cir. 1988). *See* 18 U.S.C. § 3553(a) (requiring sentencing courts to consider, among other things,

---

[1] The defense's discovery request and the government's response are attached hereto as Exhibit A.

"the nature and circumstances of the offense, . . . the need for the sentence imposed to reflect the seriousness of the offense, . . . and to provide just punishment for the offense, . . . [and] the need to avoid unwarranted sentence disparities").  While the seriousness of the offense of conviction is not in question, the presence or absence of actual harm is an aggravating or mitigating fact pertinent to this Court's task at sentencing.  Thus, the requested materials are squarely relevant to sentencing, and it is elementary that the rules of discovery apply.  *See Brady*, 373 U.S. at 88 (holding government's suppression of favorable evidence was prejudicial to defendant where "sole claim of prejudice goes to the punishment imposed").

Accordingly, this Court should compel the government to produce any damage assessments prepared in response to the leak or publication of classified information caused by Mr. Hale, and any other documents, such as emails or memoranda, that address or relate to actual harm or the lack of any actual harm caused by Mr. Hale's conduct.

## I.     Background in brief.

On March 31, 2021, Mr. Hale pled guilty to Count 2 of the Superseding Indictment, which charged him with retaining and transmitting national defense information in violation of 18 U.S.C. § 793(e).  In his plea hearing, Mr. Hale admitted to retaining the classified documents identified in Count 2 and thereafter communicating those documents to the reporter, described in the Superseding Indictment, who then published them.  Mr. Hale also admitted to writing an anonymous chapter of the reporter's book in which he explained why he leaked the

subject classified information.  This Court scheduled Mr. Hale's sentencing for July 13, 2021.

All parties appear to agree that Mr. Hale's guilty plea to Count 2 likely will support the same advisory Sentencing Guidelines range as would result if Mr. Hale were convicted of all five counts in the Superseding Indictment.  No doubt the government at sentencing will argue that Mr. Hale should be punished as fulsomely as possible.

## II.  The "damage assessment" requirement.

Intelligence Community Directive 732 establishes a "policy for the conduct of damage assessments in response to the unauthorized disclosure  . . . of classified national intelligence."  *See* Intelligence Community Directive 732, Office of the Dir. of Nat'l Intelligence, at 1 (June 27, 2014), attached as Exhibit B.[2]  The policy requires that "[d]amage assessments shall be conducted when there is an actual or suspected unauthorized disclosure or compromise of classified national intelligence that may cause damage to U.S. national security."  *See id*.  The damage assessments ordered by the Directive are different and distinct from equity reviews or harm analyses such as have been previously discussed in this case.[3]  *See id*. at 3.  Damage assessments as defined by Directive 732 must "[evaluate] the impact of the disclosure or

---

[2] Also available online at <https://www.dni.gov/files/documents/ICD/ICD% 20732.pdf>.

[3] In the guilt phase of this case, "harm analyses" or "equity reviews" were referred to with respect to the government's burden of proving whether the information Mr. Hale released had *potential* for harm and therefore was "national defense information," as that term is legally defined.  *See, e.g.*, Motion to Compel Prompt Disclosure of Harm Analysis, Dkt. No. 106.

compromise of the classified national intelligence" and include "[a]n estimate of actual or potential damage to U.S. national security." *See id*. at 2.

But even apart from Directive 732 issued in 2014, Intelligence Community members have had a practice of conducting damage assessments whenever an unauthorized disclosure of classified information occurred. *See* Declaration of Harry P. Cooper, Jr. ¶¶ 7, 10, attached as Exhibit C. That is because, whether harm occurred, the nature of that harm, and what remedies may be required are critical questions that must be answered after an unauthorized disclosure of classified information. *See id*. ¶ 10. As a result, members of the Intelligence Community typically compile a damage assessment as a matter of course following an unauthorized disclosure of classified information. *See id*. If the agency or department determines that no harm or damage occurred, it is possible no formal assessment would issue. *See id*. ¶ 11. If no damage assessment is prepared after an unauthorized disclosure of classified information or national intelligence, it is reasonable to conclude that no damage occurred. *See id*.

## III.   The actual harm caused by an offense is a fact a sentencing court must consider under § 3553(a).

A sentencing court can consider an almost unlimited universe of information. *See, e.g.*, *United States v. Tucker*, 404 U.S. 443, 446 (1972) ("It is also true that before making [the sentencing] determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come."). Unlike at a trial, at a sentencing "[n]o limitation shall be placed on the information concerning the background,

4

character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

There are, however, certain things a sentencing court *must* consider. *See* 18 U.S.C. § 3553(a). Most relevant here, these include:

- the nature and circumstances of the offense;

- the need for the sentence imposed to reflect the seriousness of the offense;

- the need for the sentence imposed to provide just punishment for the offense;

- the need to avoid unwarranted sentence disparities.

*See* 18 U.S.C. § 3553(a). That is, regardless of whether the government focuses its sentencing argument on the harm resulting from the offense, a sentencing court must consider actual harm because it is central to each of these statutorily required sentencing factors. Of course, where no harm resulted from the offense conduct, the sentencing court must consider that, too, for the same reason.

That a sentencing court should consider aggravating and mitigating facts about the nature of the offense conduct and its seriousness does not suggest that the offense itself was not serious. Even for the most serious offenses there may be aggravating facts and mitigating facts that a sentencing court must consider. For example, there is no dispute that an act of terrorism is among the most heinous of offenses. But even where the offense of conviction is an act of terrorism, it is clear that a sentencing court should at least consider whether the act resulted in harm to 30 victims, three victims or no victims. The quantum of harm that actually resulted

5

is necessarily relevant to the sentencing court's task, even where all parties agree—as they do here—that the offense conduct is inherently serious.

## IV. Because any damage assessments—and whether they exist at all— bear directly on the consequence of Mr. Hale's offense, they are relevant and material to sentencing and the government must produce them.

The government's discovery obligations unquestionably extend to information relevant and material to sentencing. *Brady* itself was a sentencing case. *See* 373 U.S. at 88 (holding government's suppression of favorable evidence was prejudicial to defendant where "sole claim of prejudice goes to the punishment imposed"); *id*. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment."). *See also Basden v. Lee*, 290 F.3d 602, 611 (4th Cir. 2002) (rejecting as "meritless" the government's contention that *Brady*'s application to sentencing is not clearly established in federal law); *United States v. King*, 628 F.3d 693, 704 (4th Cir. 2011) (vacating count and remanding on defendant's "plausible showing" that withheld evidence "contained evidence material to his sentence"). *Cf. United States v. Carucci*, 183 F.R.D. 614, 614 (S.D.N.Y. 1999) (Rakoff, J.) ("By operation of Rule 1, Fed. R. Crim. P., [Rule 16] unless otherwise limited, applies to all criminal proceedings (including sentencing)."); *United States v. Catalan Roman*, 376 F. Supp. 2d 108, 113-14 (D.P.R. 2005) (Rule 16 applies to sentencing proceedings). In short, if the government is in possession of evidence relevant or material to Mr. Hale's sentencing, it must produce that evidence to the defense. "Relevant" in a sentencing context means that the information has "any tendency to make the

existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." *Tennard v. Dretke*, 542 U.S. 274, 284-85 (2004).

For Mr. Hale's sentencing, whether actual harm resulted from his conduct is central, just as it would be in nearly any criminal sentencing. The quantum of harm bears directly on the nature and seriousness of the offense, what would constitute just punishment, and the existence or lack of sentencing disparities. *See* § 3553(a). Indeed, in *United States v. Sterling*, the government relied on the nature of the harm that actually resulted from the defendant's actions as an aggravating factor at sentencing. *See* Govt Sentencing Memo, No. 1:10-cr-485-LMB, Dkt. No. 464, at 1-4. *See also id.* at 16-17 (government argued that details of actual harm "underscore[d] the serious and aggravated *nature* of the defendant's criminal conduct" (emphasis added)). Further, in cases where a defendant's conduct harmed someone else, that victim has the right to speak and the sentencing court must consider the extent of restitution that may be owed. *See id.*

Particularly relevant here, the quantum of harm may provide a meaningful way to distinguish Mr. Hale from or compare him to other defendants convicted of similar conduct, for example, Mr. Sterling. *See* 18 U.S.C. § 3553(a)(6) (citing "need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct"). It is difficult to imagine that two otherwise similarly situated defendants convicted under § 793(e) would be treated

identically where Defendant A's conduct resulted in grave harm to national security or individuals while Defendant B's conduct resulted in no harm.

In the *Sterling* case, for example, the government emphasized that the defendant's conduct—which it described as "motivated by pure vindictiveness"—actually damaged national security and endangered two CIA assets, their families, and others, citing this harm as a basis for the Court to impose a "severe sentence." *See id*. at 2-4, 23. Ultimately, the Court sentenced Mr. Sterling to 42 months. No. 1:10-cr-485-LMB, Dkt. Nos. 472 & 473. It goes without saying that at Mr. Hale's sentencing, the defense would seek to differentiate Mr. Hale's conduct from Mr. Sterling's, not only via their different motivations but also by the difference in the actual harm that resulted. He cannot do so if the government is not compelled to produce information about any actual harm that resulted from his own conduct.

Moreover, this Court must consider the sentences imposed on defendants charged with similar offenses in order to avoid unwarranted sentencing disparities. The Court cannot meaningfully do so if it does not have the information to determine whether Mr. Hale's conduct is similar or disparate to that of other defendants.

To be clear, the defense does not intend to suggest that a lack of harm would mean Mr. Hale's offense conduct was not serious. Whether the offense is serious is a different question than the one before this Court at sentencing, which is to determine where Mr. Hale's offense conduct sits in the spectrum of Espionage Act violations.

For this reason, it does not matter whether the government intends to make an issue of actual harm at Mr. Hale's sentencing: The law requires this Court to

consider the nature and seriousness of the offense and any possible sentencing disparities, among other factors.  This Court cannot fairly assess the nature and seriousness of Mr. Hale's conduct and how it compares to that of other leakers without at least considering the quantum of harm that actually occurred.  Certainly, if no damage occurred or, at least, no damage assessment issued, the defense would have a right to point to that fact as mitigating at sentencing and use it to distinguish Mr. Hale from others convicted under § 793(e).  To do that, however, Mr. Hale must first know whether there was any harm and how much.  Rule 16 and *Brady* require that the government produce this information.

Accordingly, the defense respectfully moves this Court to compel the government to produce any damage assessments performed as a result of Mr. Hale's release of classified information, and any other evidence pertaining to the preparation of damage assessments following the unauthorized disclosures at issue in this case and the existence or lack of actual harm that resulted from Mr. Hale's offense conduct.

Respectfully Submitted,

DANIEL EVERETTE HALE
By Counsel,

Geremy C. Kamens
Federal Public Defender

/s/ Cadence Mertz
Todd M. Richman
Va. Bar No. 41834
Cadence A. Mertz
Va. Bar No. 89750
Assistant Federal Public Defenders

Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0840
Facsimile: (703) 600-0880
Cadence_Mertz@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 17, 2021, I filed the foregoing via the CM/ECF system, which will electronically serve a copy upon all counsel of record.

/s/ Cadence Mertz
Cadence A. Mertz
Va. Bar No. 89750
Assistant Federal Public Defender
Office of the Federal Public Defender
1650 King Street, Suite 500
Alexandria, Virginia 22314
Telephone: (703) 600-0840
Facsimile: (703) 600-0880
Cadence_Mertz@fd.org