```
                UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF VIRGINIA


  UNITED STATES OF AMERICA        :
                                  :
            Plaintiff,            :   Criminal Action
                                  :   No. 1:19-cr-59
  v.                              :
                                  :
  DANIEL EVERETTE HALE,           :   November 10, 2020
                                  :   9:37 a.m.
                                  :
                                  :
            Defendant.            :   Washington, D.C.
                                  :
  ............................... :
```

**TRANSCRIPT OF MOTION HEARING PROCEEDINGS
BEFORE THE HONORABLE LIAM O'GRADY,
UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:   **Gordon D. Kromberg, Assistant U.S. Attorney**
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
(703)299-3700
Email: Gordon.kromberg@usdoj.gov

**Alexander Patrick Berrang, Assistant U.S. Attorney**
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
Email: Alexander.P.Berrang@usdoj.gov

For the Defendant:   **Todd M. Richman, Assistant Federal Public Defender**
Office of the Federal Public Defender (Alexandria)
1650 King St, Suite 500
Alexandria, VA 22314
(703) 600-0800
Email: Todd_richman@fd.org

*Scott L. Wallace, RDR, CRR, Official Court Reporter*

```
APPEARANCES:  Cont.

For the Defendant:         Cadence Mertz, Assistant Federal
                           Public Defender
                           Office of the Federal Public
                           Defender (Alexandria)
                           1650 King St
                           Suite 500
                           Alexandria, VA 22314
                           703-600-0800
                           Email: Cadence_mertz@fd.org

Court Reporter:            Scott L. Wallace, RDR, RMR, CRR
                           Official Court Reporter
                           United States District Court
                           401 Courthouse Square
                           Alexandria, VA  2231-5798
                           Office: 703.549.4626
                           Cell: 202.277.3739
                           Email: Scottwallace.edva@gmail.com
```

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

```
 1              MORNING SESSION, NOVEMBER 10, 2020
 2    (9:37 a.m.)
 3         THE COURTROOM CLERK:  Criminal Number 2019-59, United
 4    States of America versus Daniel Everette Hale.
 5         Counsel, please note your appearances for the record.
 6         MR. KROMBERG:  Good morning, Your Honor.  Gordon Kromberg
 7    and Alex Berrang for the United States.
 8         THE COURT:  All right.  Good morning.
 9         MR. RICHMAN:  And good morning, Your Honor.  Todd Richman,
10    Cadence Mertz and Emma Dinan for Mr. Hale, and Mr. Hale is not
11    present.  We've submitted a written waiver of his appearance.
12         THE COURT:  Right.  And good morning to each of you.  And
13    I've received a waiver, and I think it's in good order, so we'll
14    excuse Mr. Hale from the hearing this morning.  I've read the
15    motion to continue and also the government's response, and,
16    Mr. Richman or Ms. Mertz, I'll hear anything else that you would
17    like to say at this time.
18         MR. RICHMAN:  Thank you, Your Honor.  I'll try to cover --
19    there are a few additional facts I wanted to mention.  I will
20    note just with respect to Mr. Hale's physical condition, he is --
21    it is a very serious injury.  It's the tibia and fibula.  I
22    believe it is on two bones on the bottom of the leg above the
23    ankle.  It's a very serious injury.  We had an employee at our
24    office have that same injury, and she was bedridden for about
25    eight weeks not working.  We, you know, spoke to him yesterday,
```

1  and his -- he had temporarily run out of his opiate pain
2  medications and reported that without being on opiates he was
3  essentially bedridden. He was in so much pain, he couldn't
4  concentrate or do anything. And, of course, when he's on
5  opiates, it's not a great -- it's not great for his ability to
6  concentrate and work with counsel, so that is substantial in and
7  of itself.
8          THE COURT: He had surgery after the break?
9          MR. RICHMAN: He did have surgery on the 30th, I believe
10 it was, of October, and he is meeting with the surgeon later this
11 week when he's going to be advised about things like physical
12 therapy. He doesn't -- he hasn't yet been told anything.
13         Again, I know just from knowing generally about that
14 injury it's usually fairly intensive physical therapy, so he
15 would likely be going to physical therapy several days a week
16 during the time he's supposed to be in trial. So, those are one
17 category of things that we think are substantial in and of
18 themselves.
19         There's new discovery that we have received. I'll note
20 that we received more just last night. I haven't even had a
21 chance to look at it. I haven't even had a chance to absorb the
22 letter that we received late last night describing what else we
23 were getting, but, you know, in addition to that, we've gotten
24 just in the last few weeks over a thousand pages of unclassified
25 discovery, several hundred pages of classified discovery,

1 classified electronic discovery that's of a type that really
2 wouldn't be of any use to us unless we were able to get a
3 forensic examiner who has clearance and can get in the SCIF to
4 help us look at it.
5     We're not -- we're not sure -- I don't want to represent
6 that that's something that we necessarily would want to do, but
7 it's something that we haven't even thought about doing with the
8 current trial date. It's not feasible to get a classified
9 forensic examiner in the SCIF on such short notice.
10     THE COURT: So you're talking about testing the
11 government's representations about how these hard copy documents
12 came out, and that it was different software and different
13 binary --
14     MR. RICHMAN: Exactly. And I will also say that the
15 classified hard copies they've produced of the documents, you
16 know, the government says, well, they don't really require any
17 analysis by us, they're just identical copies of what was printed
18 out before. I mean, keep in mind they thought that what they
19 produced to us before was identical to what was published, and it
20 wasn't, so we can't trust that either. That requires hours of
21 our time in the SCIF to do analysis.
22     So, again, it's not stuff that's just technical in nature
23 that requires no -- that's just a formality. It's stuff that
24 requires work on our part, including work in the SCIF, which is,
25 you know -- which requires us to be here physically.

*1*  And then, an additional thing, of course, and a third
*2*  general category is the whole concern about COVID, and there's a
*3*  couple new things I wanted to mention here, and largely this is
*4*  because of facts that have changed just in the days since we
*5*  filed our motion.
*6*  I mean, for one thing, the national hospitalization rate
*7*  hit a new record yesterday for a number of people hospitalized in
*8*  the country for COVID, so there's no question it's not just a
*9*  situation where testing is catching more less serious cases.
*10* There are also more serious cases than there have ever been.
*11* And, in addition to that, one of the things we tried to
*12* make clear in the motion but I think is really important is,
*13* unlike a one- or two-day trial, this trial is expected to be
*14* about two weeks.  Any, any trial participant who starts
*15* developing symptoms who lives with somebody who starts developing
*16* symptoms or is told that they've had a contact with somebody who
*17* may be positive will suddenly require a likely interruption of a
*18* trial, and that, you know, if we're a week or week and a half
*19* into a trial and suddenly there has to be, you know, a ten-day
*20* interruption, I'm not sure if we could go forward and if we're
*21* going to end up in a mistrial.
*22* And then there's one additional fact I didn't bring up
*23* because the facts on it have changed in just the last few days,
*24* and this is -- I bring it up not only because it relates to me
*25* personally, but I think it's also illustrative of what will

happen with jurors and other people.  My wife is employed as a special education teacher with Alexandria City Public Schools.  For months Alexandria has been talking about when they're going to start bringing people, students back for in-person instruction.  They've been bantering different dates about, and just in the last week it has crystallized that they say they want to bring back some students beginning on November 30th, the day before our trial date starts.  The group they want to bring back first are special ed students, so as of today, just as of yesterday, actually, we learned that she may be going back to work four days a week full-time -- well, almost full time because it would be four days a week beginning the day before our trial date.  I say that -- I take it with a grain of salt because all of these plans were hatched at a time when, you know, four, six weeks ago they were putting the details together for this, and now they're just rolling it out right as the case numbers are skyrocketing.  So, I personally doubt they will go back November 30th, but if they do, we will be in a situation where my wife and I suddenly both have employment that requires us to be out of the house.  We have an eighth-year-old son.  We don't have any childcare.  We can't have a grandparent come or grandparents -- our parents are in their 80s.  We would both be working outside of the house.  We're not comfortable with having a grandparent come live with us when we're both working out in the community, so I literally don't -- and I say this.  I don't know if this is

```
 1   going to be an issue because I don't know if she'll go back
 2   November 30th, but if she does, I generally don't know what we
 3   will do for childcare.  You know, an eighth-year old can't be
 4   home alone all day.
 5           So, as I said, I think that is something that's
 6   illustrative of people in the community with the uncertainty.
 7   And I think it would be one thing for me or a juror or somebody
 8   else to work around that if it's a day or two; it's an entirely
 9   different animal if you're talking about having to work around it
10   for two full weeks.
11           So, for all those reasons, Your Honor -- and let me add
12   one additional thing.  I would also submit that there are
13   defendants who are in custody who want their trial.  There are
14   civil litigants who have a need for resolution.  This case, the
15   defendant's not in custody, he's not demanding a speedy trial.
16   The government until recently has not acted as if it was
17   important to bring this case to trial quickly.  We have seen the
18   investigative files.  This is not me just talking, you know,
19   generally, but we've seen the investigation really occurred in
20   2014 and 15.  There's essentially nothing after 2015, and then
21   the case is charged in 2019.
22           So, the government essentially sat on this and did nothing
23   for four years.  So, for them to now say that a difference of a
24   couple months is terribly important to them, I just don't think
25   that that is supported by their own behavior over the last five
```

```
 1  years.
 2         So, in light of all that, Your Honor, I would submit that
 3  it would be appropriate to continue the trial.  There's limited
 4  capacity for trials here, and to use this whole time for a trial
 5  where the defendant is not in custody and not demanding a speedy
 6  trial, I just don't think it's appropriate.
 7         THE COURT:  All right.  Thank you, Mr. Richman.  All
 8  right, Mr. Kromberg, Mr. Berrang.
 9         MR. KROMBERG:  Your Honor, the first thing I would note is
10  that the discovery that was provided last night was a letter,
11  Hey, things we gave you months ago, you should know that it
12  contains this in case you didn't find it.  So, it's not a matter
13  of us giving him something last night, other than the courtesy of
14  trying to help, which apparently doesn't do well in this
15  particular instance.
16         Mr. Richman's argument is that we should never have this
17  trial unless the pandemic ends.  That cannot be the result,
18  Judge.  We all have to struggle through it.  The idea that the
19  government sat on its hands for years is ridiculous.  Having been
20  the prosecutor on the case since the beginning, I can tell you
21  that we were struggling throughout to try to deal with the very
22  complex problems posed by the theft of information impacting many
23  different components of the intelligence community.  We have put
24  the case together, witnesses are ready, they're coming from
25  around -- there are people coming from around the country.  We're
```

*1* ready to go.  If it was a time certain that we could say, Yes, in
*2* March this will all be over, the COVID problem will be done with,
*3* that would be different, but there is no reason to believe it's
*4* going to be different or that it's going to be better.  We have
*5* -- either the justice system grinds to a halt or it doesn't.
*6* This trial, they've had 18 months to prepare.  It's ready.
*7*          THE COURT:  How would the defense test your theory, your
*8* findings that the software that you've used now that more
*9* accurately renders the electronic computer files into paper
*10* copies that match is accurate information or not?
*11*          MR. KROMBERG:  Well, first, Judge, I would say that I
*12* think that the question has been framed wrong.  They came up with
*13* the issue that, Oh, my gosh, there are discrepancies here.  Every
*14* one of us who ever uses a printer knows that if you send the same
*15* document to two different printers, it comes out two different
*16* ways.  And so what happened here is, Oh, these are discrepancies,
*17* so now we've provided the -- we provided it in a way that you can
*18* see that this way, if you put it out on the so-called direct
*19* print, it comes out one way, and if you send it to a different
*20* viewer, it comes out a another way.  It may well be that there
*21* are still discrepancies, but the point is that discrepancies
*22* arise from the mere act of sending an electronic binary file to a
*23* piece of hardware, and it gets rendered differently.
*24*          So, I don't think the question should be, can they
*25* replicate what was done; I think the question is, is it true or

*1* is it not true that when you send a file to a viewer, the file
*2* may be changed?  That, I don't think, should even need -- I mean,
*3* that seems obvious -- excuse me, Judge.
*4*     (Brief pause in proceedings.)
*5*     Mr. Berrang points out to me that we provided the two
*6* viewers so the defense could load the viewers onto the machine,
*7* print out the files, and see how they come out.  They will come
*8* out the way that they came out when we printed them through those
*9* viewers.
*10*     It's not a matter of needing to look at the code.  Print
*11* out the file and see what comes out.
*12*     THE COURT:  All right.  Go ahead.  I interrupted you.
*13*     MR. KROMBERG:  No, no.  I would just say, Judge, when I
*14* first started in the U.S. Attorney's Office, I was here before
*15* Judge Bryan, and Mr. Yamamoto came and said that his client was
*16* very, very sick and could not go to trial, and Judge Bryan said,
*17* Mr. Yamamoto, I don't care if your client is on a gurney, we're
*18* going to trial on Monday.
*19*     THE COURT:  Well, whether Judge Bryan was correct about
*20* that, it was a different day, and I was here as well, as you
*21* know.  Well, I am concerned about the defense's ability to check
*22* your representations about the differences in the hard copies
*23* having come from using different software and the binary computer
*24* files, but it appears from your and Mr. Berrang's responses that
*25* the defense has the ability to test the accuracy of whether there

1  really are substantial other differences that would allow them to
2  allege that there were different printing jobs done, and that,
3  perhaps, someone else is responsible, although, again, we would
4  get back into the relevance of that, as we've discussed in other
5  hearings, but they ought to have an opportunity to test that, and
6  at this late date and without Mr. Hale's availability -- and he
7  has suffered a severe injury -- I think that the December 1st
8  trial date is, you know -- will unfairly prejudice their ability
9  to fully prepare. I don't want to continue the case until March.
10 When is the government unavailable? We could start the case on
11 January 11th, for instance. You're out January and February?
12         MR. BERRANG: Your Honor, the issue that I have is I have
13 a six co-defendant trial before Judge Ellis that's supposed to
14 start on January 19th. It's slated currently to run through the
15 29th, but I think the reality of doing a six co-defendant trial
16 in a pandemic era makes us unlikely that we'll wrap it up by the
17 29th, and I'm sure that case will continue into the first week of
18 February.
19         MR. KROMBERG: I would also add, Judge, that the case
20 agent will be either -- will be away on -- through long
21 prescheduled things that she cannot get out of during the month
22 of February.
23         THE COURT: So you'd agree to a one-week continuance to
24 the second week in December; is that right?
25         MR. KROMBERG: That is correct, Judge.

*1*       THE COURT: Mr. Richman, why doesn't that work? I don't
*2* want to continue this case until March. I don't see a need for
*3* that. The case has been going on a long time, and you've had
*4* most of the discovery for a significant amount of time. You've
*5* had the opportunity to test different theories of defense and --
*6*       MR. RICHMAN: I understand that. I think if the Court --
*7* I will note that the government says that you can just load this
*8* stuff up and look at it. They did it with the assistance of a
*9* computer specialist, they didn't do it themselves. For us to
*10* even get a computer specialist in the SCIF is a prolonged
*11* process. When I did it in a previous case a year or two ago, it
*12* took six months or so to find one that's clear that the
*13* government would permit to work on the defense side since almost
*14* all of them that are cleared are working as contractors on the
*15* government's side. And, you know, and then to get the approvals
*16* done in order to get the person into the SCIF. And so we can
*17* try, but to realistically be able to consult with such a person
*18* and have all the approvals done, have the person get access to
*19* the SCIF and look at the materials and then consult with us, you
*20* know, I don't think it's realistic that we can do that and have
*21* an answer in time to be useful at trial if trial is four weeks
*22* from now.
*23*       So, I do think that's, you know -- so, I don't think four
*24* weeks from now does give us sufficient time. So, you know, if
*25* that's Your Honor's decision, we'll do our best, but I don't

1  think it's sufficient.  I also, you know, do have concerns about
2  our ability in other respects.  Like I said, I don't even know
3  about my personal situation, but I'll try to figure that out.
4  But we would ask for longer, at least into January, but I
5  understand there are conflicts, so --
6       THE COURT:  All right.  Well, I'll continue the case until
7  December 7th at 10:00 with a jury, and you keep me apprised of a
8  decision as to whether you're going to seek an expert to validate
9  or invalidate the government's stated explanation for the
10 differences in the hard copies, whether you're going to pursue
11 that any further.  And I have a daughter who's a special ed
12 teacher in Arlington County, and they're vacillating on what
13 they're doing in Arlington just like the City of Alexandria, and
14 I have another daughter who teaches in Fairfax, and they've got a
15 different plan, and it's moving -- every week it seems like they
16 come up with a different plan, so please keep me apprised of your
17 personal conflicts.
18      MR. RICHMAN:  And that is part of our problem.  If they
19 told us two months ago it was definitely November 30th, we could
20 have been making plans, but we still generally don't know whether
21 she's supposed to be back full-time on November 30th.
22      THE COURT:  I know it's very frustrating.  All right.
23 Well, your exception is noted to not giving a longer continuance,
24 but I don't want to continue the case until March.  We're able to
25 conduct jury trials here, especially with single defendants, and

```
 1  I think we can do so within the required social distancing.  If
 2  that changes, then we'll hear from the governor and Chief Judge
 3  Davis, but as of now I think we're still in a position to move
 4  forward.  So, continue to evaluate where you are in the defense
 5  preparation and keep us apprised of that.  All right.  And our
 6  memorandum order in Section 6 materials is coming out as soon as
 7  it's reviewed for content, and so it should be to you very
 8  shortly.
 9          MR. KROMBERG:  Thank you, Your Honor.
10          MR. RICHMAN:  Thank you Your Honor.
11          THE COURT:  All right.  Thank you, counsel.
12          (Proceedings adjourned at 10:00 a.m.)
```

**C E R T I F I C A T E**

I, Scott L. Wallace, RDR-CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Scott L. Wallace          5/24/21
-----------------------------  ----------------
**Scott L. Wallace, RDR, CRR          Date**
**Official Court Reporter**