UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>DANIEL EVERETTE HALE,<br><br>Defendant. | Case No. 1:19-CR-0059-LO<br><br>PROPOSED AMICUS CURIAE ON BEHALF OF CAIR FOUNDATION |

**PROPOSED AMICUS CURIAE BRIEF ON BEHALF OF CAIR FOUNDATION**

The Council on American-Islamic Relations ("CAIR" or "CAIR Foundation") respectfully submits this amicus curiae brief in the above-captioned matter to offer information that CAIR believes will be relevant in determining Mr. Hale's sentence.

### Interest of Amicus Curiae

The Council on American-Islamic Relations is a non-profit, grassroots civil rights and advocacy organization. CAIR is America's largest Muslim civil liberties organization, with affiliate offices nationwide. Its national headquarters is located on Capitol Hill in Washington, D.C.

Since its establishment in 1994, CAIR has worked to promote a positive image of Islam and Muslims in America. Through media relations, lobbying, education and advocacy, CAIR works to make sure a Muslim voice is represented. Through its work, CAIR seeks to

1

empower American Muslims and encourage their participation in political and social activism.

CAIR has represented hundreds of Muslim Americans who have been placed on the U.S. Government's Selectee and No-Fly Lists. As this Court is aware[1], the consequences to an individual of being selected for these lists range from disruption of travel plans and humiliating public searches and interrogation to not being able to board an aircraft that traverses U.S. airspace. These lists, which have grown exponentially since after September 11, 2001, were essentially black boxes: no one knew how the selection process worked, and the administrative mechanism for seeking to be removed from the lists was similarly opaque.

The 2013 Watchlisting Guidance, a U.S. Government publication, spelled out the criteria and procedures through which U.S. persons are placed on the federal government's many secret lists. This document is unclassified, but the U.S. Government had never agreed to make it available so that persons caught up in the lists and their representatives could come to understand the process.

Daniel Hale disclosed this document, and by doing so, provided CAIR and other advocacy groups around the United States a wealth of information about the criteria for inclusion on these lists. The availability of this information enabled CAIR to present focused claims on behalf of its clients, whose lives had been disrupted by being placed on the lists. Mr. Hale's disclosure catalyzed legal challenges to various watchlists across the country.

## Argument

Numerous Muslim Americans have sought legal assistance from CAIR after finding that they had been placed on any of the various secret lists the federal government maintains.

---

[1] *Long v. Barr*, 451 F. Supp. 3d 507 (E.D. Va. 2020).

Frequently, these clients of CAIR have told CAIR that they were contacted by federal agents and told that if they would serve as informants, they would be removed from the list. This pattern, repeated over and over in CAIR's clients' accounts, suggests that people were being designated for the lists arbitrarily and without reference to any meaningful threat. But the criteria for inclusion on these lists were unknown, and the process to request removal was completely opaque.

Daniel Hale's disclosure of the unclassified 2013 Watch- listing Guidance[2] revealed that the criteria for inclusion are circular and illogical: a person can be watch listed if he or she is suspected of being a suspected terrorist (§3.12.1). Suspected of being suspected deprives this criterion of any meaning or connection to facts; indeed, the person can be listed on the basis of completely uncorroborated information (§3.6), as long as the information hasn't already been determined to be unreliable (§3.7).

The review process does not require "concrete facts" and encourages the reviewer to give "due weight" to the nominator's experience (§3.5). This *ipse dixit* deference amounts to a *de facto* presumption in favor of listing; the built-in incentives are to add people to the lists, not to promote accuracy.

With the unclassified 2013 Watchlist Guidance in hand CAIR was able to present focused claims on behalf of its clients, and the information contained in the document provided a roadmap for productive discovery requests. As a result, these legal challenges have achieved much success.

---

[2] Available at https://theintercept.com/document/2014/07/23/march-2013-watchlisting-guidance/.

Each of the CAIR clients discussed below was removed from the No Fly List after CAIR filed an action on his or her behalf:

- Adis Kovac is a Muslim U.S. citizen who learned that he had been placed on the NFL when he attempted to board a flight on October 17, 2014. He was thereafter barred from flying and repeatedly interrogated about his Islamic beliefs. He filed a redress request through the Department of Homeland Security but received no response. CAIR filed suit on his behalf in 2018 in the United States District Court for the Northern District of Texas and on July 18, 2019, Kovac was removed from the NFL.

- Yonas Fikre is a Muslim U.S. citizen who was placed on the NFL. FBI agents offered to remove him if he agreed to become a government informant but he refused. Fikre was detained, interrogated and tortured in the United Arab Emirates for 106 days. Upon his return to the United States, he sought redress through the Department of Homeland Security without success. CAIR brought suit on his behalf and the government removed him from the NFL.

- Yaseen Kadura is a Muslim U.S. Citizen who learned he was on the NFL when he attempted to board a place on September 22, 2012. Agents of Homeland Security investigations informed Kadura that it was virtually impossible for him to get off the list unless he agreed to be an informant. On November 30, 2012 he filed a request for redress through the Department of Homeland Security but received no response. CAIR filed

4

suit on his behalf on August 14, 2014 and he was removed from the NFL in January 2016.

- Donald Thomas, a Muslim U.S. citizen, tried to board a flight to Malaysia on April 27, 2016 but was told that he was on the NFL. He was surrounded by TSA agents including one with a dog. Thomas was actually told to contact CAIR about his status on the NFL. Mr. Thomas filed a redress request through the Department of Homeland Security but did not receive a meaningful response. After CAIR filed an action on his behalf, he was removed from the NFL.

- Saadiq Long is a Muslim U.S. citizen and an Air Force veteran. He learned he was on the No Fly List in 2012, when he attempted to fly from his home oversees to Oklahoma to visit his gravely ill mother. Because of his status on the No Fly List, Mr. Long has been detained and abused in Qatar and Turkey, he has been denied permits and licenses Long needs for his career as a truck driver, and foreign governments have revoked and denied him visas. After years of litigation, the federal government informed Long on September 18, 2020 that they had removed from the NFL.

- Zijad Bosnic is an U.S. citizen and a Muslim residing in Florida. On March 1, 2017, Mr. Bosnic appeared at the Sarajevo International Airport in Bosnia to board his flight back home to the United States after spending time with his family. Mr. Bosnic was not permitted to board his flight. When he asked why, he was referred to the U.S. Embassy in Sarajevo. The Embassy advised him that they had no information regarding why he was

being denied boarding. He was advised to fill out a Department of Homeland Security redress complaint which he immediately did. After several months, Mr. Bosnic was finally permitted to return to his home in Florida but he remained on the watch list and was subjected to additional interrogation and invasive searches every time he attempted to travel. After CAIR filed suit on his behalf, he was finally removed from the watch list.

- Mahad Mohallim is a U.S. citizen and Muslim who resides in Minnesota. Commencing in 2015, Mr. Mohallim was placed on the watch list, which caused him to be subjected to extensive delay, humiliating and intrusive searches every time he tried to travel by air. In July 2018, the federal government repeatedly prohibited Mr. Mohallim from boarding a flight to the United States because of his status on the No Fly List. After CAIR filed suit on Mr. Mohallim's behalf, he was removed from the watch list.

- Hashem Nader Sehwail is a U.S. citizen and a Muslim residing in Florida. On January 21, 2018 Mr. Sehwail appeared at the Istanbul Airport in order to board his flight back home to the United States after visiting his family in Palestine. He was denied boarding. When he asked why, he was referred to the U.S. Embassy, which informed him that they had no information about why he was denied boarding. After multiple delays and after CAIR filed suit on his behalf, Mr. Sehwail was finally permitted to return to his home in the United States and was removed from the NFL.

Each of the CAIR clients discussed above was removed from the watchlist or the NFL after CAIR filed an action on their behalf. Many of these removals were done by the

government with the purpose of mooting the lawsuit brought by CAIR. *See, e.g., Fikre v. FBI*, 904 F.3d 1033 (2018) (rejecting mootness claim); *Long v. Pekoske*, No. 20-1406, Dkt. 29 (4th Cir. Oct. 5, 2020) (motion to dismiss based on mootness).[3] There are hundreds of others who were similarly situated and have been similarly benefited. As a matter of inference from the actions of the Government after suit was filed, it seems clear that these U.S. persons were placed on the list without justification, as a result of the perverse incentives provided by the Watchlisting Guidance inclusion criteria. Removal freed each of them from the Kafkaesque constraint imposed by a government that had extrajudicially designated them as worthy of permanent suspicion. In each case, their removal was a just result, and the ability to achieve that result was aided immeasurably by the availability to CAIR of the Watchlisting Guidance.

In sentencing Mr. Hale, we ask the Court to consider the public benefit achieved through the disclosure of this unclassified document by Mr. Hale.

Respectfully submitted,

CAIR LEGAL DEFENSE FUND

BY:   /s/ Lena Masri
LENA F. MASRI
GADEIR I. ABBAS*
JUSTIN SADOWSKY
453 New Jersey Ave, SE
Washington, DC 20003
Phone: (202) 488-8787

*Mr. Abbas is licensed in VA, not in D.C.*
*Practice limited to federal matters.*

---

[33] As a general rule, the Government does not disclose watchlist (as opposed to NFL) status, but many plaintiffs' travel problems went away after filing suit. *See, e.g., Elhady v. Kable*, 993 F. 3d 208, 221-22 (4th Cir. 2021); *see also id.*, Petition for Rehearing at 15 (Dkt. 76) (May 14, 2021).

PROFETA & EISENSTEIN

BY: /s/ Jethro M. Eisenstein*
45 Broadway, Suite 2200
New York, New York 10006
Phone: (212) 577-6500

*Pro Hac Motion Pending*