# EXHIBIT G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA

### Alexandria Division

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **No. 1:19-cr-59** |
| **v.** | ) | |
| | ) | **Hon. Liam O'Grady** |
| **DANIEL EVERETTE HALE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DECLARATION OF HARRY P. COOPER, JR.

1. My name is Harry P. Cooper, Jr.  From 1988 to 2017, I was employed by the Central Intelligence Agency, reaching the rank of SES-3/Flag, which is the equivalent of a 2-Star General.  In my time at the CIA, I held numerous executive-level positions focused on the management of classified and controlled unclassified information.

2. I was the CIA Executive Expert for Classification. The Director of the CIA designated me as an Original Classification Authority.  That means that I trained the Agency's top-tier executives, including the Director, on classification. I also made classification decisions based on my personal knowledge and experience rather than using guidance prepared by others.

3. I also formulated classification policy, prepared classification guides, and served as the information security policy architect in the Agency's new Data Office.

4. Prior to this role, I was the Senior Agency Official, appointed by the CIA Director to implement Presidential Executive Order 13556, which lays out the policy for the handling of Controlled Unclassified Information ("CUI"). In that capacity, I helped draft the regulations governing CUI.

5. Positions I held included Chief of Declassification Review and the Group Chief for Classification Management.

6. I hold a top secret security clearance.

7. I have been engaged by the defense to review the evidence in this case and have done so (including the lettered documents that are the subject of the Superseding Indictment and that were disclosed by Mr. Hale without authorization).

8. After having carefully reviewed each of the documents supporting the charges in this case, it is my opinion, based on my training and experience, that some of the documents meet the relatively low bar for classification as "National Defense Information." It is also my opinion, however, that the disclosure of these documents, at the time they were disclosed and made public, did not present any substantial risk of harm to the United States or to national security. I came to this conclusion for three distinct reasons.

9. First, the vast majority of the information disclosed in this case was tactical in nature. Tactical information is information regarding operations and activities in the day or days preceding or following such operations. The secrecy of tactical information is critical within the first few days of its existence, and

justifies the use of Top Secret markings at the time of publication.  In this case, the information was not taken by the defendant until about two years after the events reported.  Tactical information has a very short shelf-life in terms of its ability to harm national security, and the material in this case was exfiltrated by the defendant long after its ability to cause substantial harm to national security had passed.

10. Second, my review of the documents revealed that the information disclosed by the defendant was largely incremental in nature.  In other words, the documents relate to topics on which much was already publicly known, in 2014, about the United States' activities, capabilities and vulnerabilities.  The documents contain some granular detail that added to what was already known publicly about those topics, but because the information was incremental in nature and generally at least two years old by the time the documents were released, it is my opinion that their disclosure did not risk substantial harm to national security.

11. Third, it is my opinion that the documents at issue in this case were not only out-of-date, but they principally included relatively high-level information. Because of that, adversaries would be unlikely to take any particular action in response to learning the information in the documents.  No technical details of weapons systems were revealed, and adversaries would assume that any vulnerabilities in United States' systems discussed in the documents had been

addressed in the interim, such that knowledge of those vulnerabilities a few years after they were reported would be of minimal use to an adversary.

12. I further understand that the government has alleged that some of the documents at issue in this case were published on terrorist websites and/or otherwise published by our adversaries.  Such publication further supports my conclusions, because it suggests that the adversaries treated the documents as trophies rather than as something that would give a tactical advantage, given that publication would reduce to zero any tactical advantage that the documents might otherwise have given.  In short, an adversary who has gained a tactical advantage by receiving secret information would never publicize their possession of it.

*      *      *

I affirm that the contents of this declaration are true and correct to the best of my knowledge.

_H. Cooper, Jr._
Harry P. Cooper, Jr.

Signed this <u>19th</u> day of July, 2021.